HOWARD C. KIM, ESQ. (SBN 10386)
E-mail: howard@hkimlaw.com
DIANA S. CLINE, ESQ. (SBN 10580)
E-mail: diana@hkimlaw.com
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
E-mail: jackie@hkimlaw.com
JESSE N. PANOFF, ESQ. (SBN 10951)
E-mail: jesse@hkimlaw.com
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a government-sponsored entity; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Fannie Mae,<br><br>Plaintiffs,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada Limited Liability Company; SUN CITY ALIANTE COMMUNITY ASSOCIATION, a Nevada Non-Profit Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.: 2:14-cv-02046-JAD-PAL<br><br>**SFR INVESTMENTS POOL 1, LLC's MOTION TO DISMISS COMPLAINT [DKT. NO. 1]** |

Pursuant to FRCP 12(b)(6), SFR Investments Pool 1, LLC ("SFR") files this Motion to Dismiss. It is based upon the attached memorandum of points and authorities and the filed pleadings and papers.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.   INTRODUCTION**

This case concerns a deed of trust ("DOT") on a Las Vegas house. Compl., 4:10-11. Federal National Mortgage Association ("Fannie") allegedly owned the DOT but on September 6, 2008, the DOT purportedly became Federal Housing Finance Agency's ("FHFA") property. *Id.* at 2:20, 4:15-16, 7:24-25, 8:1. Eventually, non-payment of association dues caused Sun City

- 1 -

Aliante Community Association ("Association") to non-judicially foreclose the house, selling it to SFR. *Id.* at 6:6-10. According to the Complaint, 12 U.S.C. § 4617(j)(3) prohibited Association from doing so without FHFA's consent. *Id.* at 6:17-18, 7:26-28, 8:19, 9:1-2. In fact, all of Plaintiffs' claims implicate 4617(j)(3) and "consent." *Id.* The Complaint, however, should be dismissed with prejudice because Plaintiffs' claims are facially implausible; they have not pled "factual content that allows the court to draw the reasonable inference that [SFR] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the "factual content" allows this Court to draw "the reasonable inference that" Plaintiffs' invocation of 4617(j)(3) violates procedural due process and exceeds FHFA's statutory powers.

## II.  PLAINTIFFS' ALLEGATIONS

### A.  Beverly buys a House & Joins Association

On November 17, 2006, Maureen Beverly ("Beverly") bought a house in Association's community, doing so with a $233,776.00 DOT. Compl., 4:9-14. Pulte Mortgage LLC was the trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary. *Id.* The DOT included a Planned Unit Development Rider, which stated Beverly's house was governed by covenants, conditions, & restrictions ("CC&Rs"). *Id.* at Ex. 2, 16. Association's CC&Rs were recorded February 20, 2003. *Id.* at 4:27-28.

### B.  Fannie Purchases the DOT & Enters Conservatorship

Less than one month after Beverly bought her house, Fannie purchased the DOT from Pulte. *Id.* at 4:15-16.[1] Congress—on July 30, 2008—created FHFA to oversee Fannie. *Id.* at 2:16. FHFA's Director subsequently placed Fannie into conservatorship, naming FHFA as conservator. *Id.* at 2:20-21. During conservatorship, MERS assigned its beneficial interest in the DOT to Fannie; the assignment was recorded June 28, 2011. *Id.* at Ex. 4.

### C.  Beverly Becomes Delinquent, Causing Foreclosure

In early 2011 Beverly stopped paying Association dues. *Id.* at Ex. 6. Association

---

[1] The purchase's terms are unspecified and the Complaint did not attach or reference a recorded document memorializing Fannie's acquisition. Compl., 4:15-16. Also, on June 6, 2007, Beverly transferred her interest to a trust bearing her name. *Id.* at 4:16-20.

recorded a Notice of Delinquent Assessments on July 6, 2011, a Notice of Default on July 13, 2012, and a Notice of Sale on July 3, 2013. *Id.* at Ex. 5; Ex. 6; Ex. 7. On July 26, 2013, SFR bought the house for $12,500.00 during Association's foreclosure auction. *Id.* at 6:10; Ex. 8. The deed vesting title in SFR was recorded August 5, 2013, and stated "all requirements of law have been complied with[.]" *Id.* at 6:6-10; Ex. 8.

### D. Fannie's Foreclosure, SFR's Lawsuit, & Plaintiffs' Complaint

Beverly stopped paying her mortgage. *Id.* at 6:20; Ex. 9. In turn, Fannie recorded a Notice of Default and a Notice of a July 1, 2014, Sale. *Id.* at 6:20-26. SFR sued Fannie in state court on June 11, 2014. *Id.* at 6:28. Two weeks later, SFR obtained an injunction against Fannie, preventing it from selling SFR's house. *Id.* at 7:3-4. SFR ultimately dismissed the case without prejudice. *Id.* at 7:5-6. Next, Plaintiffs filed the underlying Complaint, suing SFR for quiet title and "preliminary injunction." *Id.* at 7:7-28 – 8:1-13, 8:24-28 – 9:1-17. Plaintiffs aver SFR bought the house at Association's sale and now claims ownership free and clear of the DOT. *Id.* at 6:7, 7:17, 9:1-2. The Complaint references SFR's property rights, including the right to: sell, transfer, encumber, free and clear ownership, the extinguishment of the DOT, and an interest superior to Fannie. *Id.* at 8:1-5, 8:12-13, 8:23, 9:1, 9:3, 9:14-15, 9:22, 10:1-3. These rights are recognized and protected by Nevada law. *Id.* at 6:6-8, 7:17, 8:1-5. Nevertheless, the Complaint alleges FHFA has significantly altered or extinguished these rights by not "consenting" to them via 4617(j)(3). *Id.* at 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. All of Plaintiffs' claims involve 4617(j)(3) and "consent." *Id.* at 6:17-18, 7:26-28, 8:19, 9:1-2.

### III. LEGAL ARGUMENT

### A. Motion to Dismiss Standard

A complaint must contain allegations that state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such content must "show that the pleader is entitled to relief." FRCP 8(a)(2). Absent this showing, dismissal is appropriate. *Iqbal*, 556 U.S. at 680-81. Lastly, references to a pleading's exhibits do not convert a motion to

- 3 -

dismiss into one for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B. Claims are Implausible because of Due Process

Claims for quiet title and "preliminary injunction" necessitate allegations about superior title. NRS 40.010. A litigant must aver her interest is superior to her opponent's interest. *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). But, if allegations of superior title reveal an impediment or bar to relief, then the corresponding causes of action are facially implausible because there has not been a "[s]howing that the pleader is entitled to relief[.]" FRCP 8(a)(2); *Twombly*, 550 U.S. at 555-57. Instead, the allegations "show" the pleader is not entitled to relief, warranting dismissal. *Iqbal*, 556 U.S. at 677-80. Here, Plaintiffs' allegations reveal a constitutional impediment to relief; 4617(j)(3) and FHFA's invocation of that statute deprived SFR of its property rights without due process of law. Compl., 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. Indeed, the Complaint chronicles a procedural due process violation by identifying SFR's protected property interests, recounting FHFA's deprivation of those rights, and disclosing the absence of any procedural safeguards. *Id.* This constitutional violation─delineated by Plaintiffs' averments and ascertainable from the Complaint's face─precludes Plaintiffs from showing they are "entitled to relief."

#### 1. SFR's Property Interests

The Fifth Amendment prohibits the federal government from depriving a person of her property without due process of law. U.S. CONST. amend. V. So, due process' first element is the existence of a property interest. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). State law creates property rights, such as maintaining control over one's home and being free of governmental interference. *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993). Additional interests are the right to unrestricted use and enjoyment, receive rents, encumber, and transfer. *Id.* Here, Plaintiffs allege SFR purchased a house and received a deed "[s]tating that SFR had prevailed at an HOA lien foreclosure sale[.]" Compl., 6:7-8; Ex. 8. Through this acquisition, SFR claims the right to: sell, transfer, encumber, free and clear ownership, extinguishment of the DOT, and an interest superior to Fannie. *Id.* at 8:1-5, 8:12-13, 8:23, 9:1, 9:3, 9:14-15, 9:22, 10:1-3. As the Complaint states, Nevada law recognizes and

protects these rights. *Id.* at 6:6-8, 7:17, 8:1-5; *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014). Thus, Plaintiffs' allegations disclose SFR's property interests.

### 2.  *FHFA Deprived SFR of its Property*

Due Process' second component is deprivation of property by the government. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Deprivation occurs when the government significantly alters or eliminates rights recognized by state law. *Paul v. Davis*, 424 U.S. 693, 710-11 (1976); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Here, Plaintiffs aver 4617(j)(3), coupled with FHFA's refusal to give "consent" under that statute, significantly altered and nullified SFR's property rights. Compl., 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. For example, Plaintiffs note that pursuant to Nevada law (i.e. NRS Chapter 116), Association's foreclosure extinguished competing interests, meaning SFR owns the house free and clear. *Id.* at 8:1-3. Yet, because FHFA did not "consent" to Association's sale or SFR's property rights, 4617(j)(3) avowedly prohibits the extinguishment of Fannie's DOT, a considerable alteration and elimination of SFR's rights. *Id.* at 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. Instead of having superior title—a right recognized by Nevada law—SFR purportedly has an interest in the house inferior to Plaintiffs. *Id.* at 8:1-13. Gone too are SFR's rights to sell, encumber, or transfer the house, all because of 4617(j)(3) and FHFA's refusal to "consent." *Id.* at 9:3, 9:14, 10:1. Hence, the Complaint delineates how FHFA deprived SFR of its property.

### 3.  *FHFA is a Government Actor*

In order to implicate due process, there must be a government actor, an aspect of due process' second element. *Brentwood*, 531 U.S. at 295. On the one hand, FHFA is "an agency of the federal government[.]" Compl., 7:22. On the other hand, FHFA is "also the Conservator for Fannie[.]" *Id.* at 7:22-23. This duality is significant because FHFA insists when it acts as conservator it is a private party. *Herron v. Fannie Mae*, 857 F.Supp.2d 87, 93-96 (D. D.C. 2012). The rationale is as follows: under *Lebron*'s "control" test, Fannie is a private entity. *Id.* (applying *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 400 (1995)). And, because FHFA is Fannie's conservator, FHFA "steps into the private shoes" of Fannie, transforming FHFA into a private actor. *Herron*, 857 F.Supp.2d at 93-96. Assuming *arguendo* FHFA-as-conservator is

private via *Lebron*, such a conclusion is not dispositive. *Brentwood*, 531 U.S. at 302-03. Rather, Supreme Court jurisprudence instructs no single government actor standard is determinative. *Id.* If FHFA-as-conservator is a government actor under another test, then that status applies, irrespective of *Lebron*. *Id.*

Here, FHFA is a government actor through the joint activity test, which has two prongs. First, a property deprivation is caused by the exercise of a government-created right or authority. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). Second, an avowedly private entity acted with a government official who provided overt and significant assistance. *Id.* In this case, the first element is satisfied because SFR's property deprivation was caused by FHFA's invocation of 4617(j)(3), a government-created statutory authority. Compl., 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. This authority is used to promote what FHFA-as-conservator calls its "central duty": to preserve and conserve Fannie's assets. Ex. A, 8:16; Ex. B, 2:28 – 3:1-2. As for the second prong, when FHFA-as-conservator acts to preserve and conserve, it does so with at least two government officials, both of whom give overt and significant assistance to FHFA. These officials are FHFA's General Counsel and Director.

FHFA's General Counsel is Alfred M. Pollard, who has held that position since FHFA's inception. Ex. B, 2:12-13. When FHFA-as-conservator acts to preserve and conserve Fannie's assets─as it allegedly did here─Mr. Pollard provides overt and significant assistance. For instance, Mr. Pollard is part of a team within FHFA that assesses how various externalities will impact Fannie's assets. Ex. C, 2:9; Ex. D, 8:¶¶19-20. He offers legal and policy advice to FHFA-as-conservator concerning how it can preserve and conserve Fannie's interests. Ex. F, ¶7. Mr. Pollard conducts an "exhaustive process" to understand whether state initiatives coincide with the duty to preserve and conserve. Ex. C, 2:8. This process consists of communicating with stakeholders, such as politicians, industry leaders, consumer groups, government agencies, and trade associations; Mr. Pollard even testifies before local legislatures to answer questions about and articulate FHFA-as-conservator's positions regarding preservation and conservation. Ex. C; Ex. D; Ex. G (Statement); Ex. H. After evaluating threats to the conservatorship, offering advice, and disseminating the conservator's position, Mr. Pollard helps FHFA-as-conservator act to

preserve and conserve Fannie's assets. Ex. B; Ex. D, 8:¶20; Ex. I; Ex. K. Consider a letter Mr. Pollard sent to Fannie's general counsel. Ex. I. The correspondence was on the conservator's behalf, cited 4617, and directed Fannie to perform specific risk-avoidance measures. *Id.* Likewise, Mr. Pollard has knowledge about whether FHFA-as-conservator consents to association non-judicial foreclosures. Ex B. Mr. Pollard states "[a]t no time did FHFA, as Conservator, consent to Fannie Mae's interest in the property being extinguished by the HOA Sale[.]" *Id.* at 2:25-26. Indeed, "consent" "[w]ould violate FHFA's statutory mandate as Conservator to preserve and conserve [Fannie's] assets." *Id.* at 3:1-2. All told, when FHFA-as-conservator refused to "consent" to Association's sale and to SFR's property rights, it did so with Mr. Pollard's overt and significant assistance. The same holds for FHFA's Director.

FHFA's Director is Melvin L. Watt who, along with Mr. Pollard, provides overt and significant assistance to the conservator's preservation and conservation activities. Ex. L. As Director, Mr. Watt makes policy decisions on FHFA's behalf, "which frequently concern how the conservatorships should proceed on a wide variety of fronts[.]" *Id.* at 2:¶4. In Mr. Watt's estimation, Congress gave the conservator "unfettered ability" to develop and implement policy solutions, *id.* at 5:¶11, which may explain why "Agency personnel be able to execute the critical missions of the conservatorships insulated from interference by outside parties." Ex. M, A22:¶6. Either way, when the conservator develops, implements, and alters policy, Mr. Watt is overtly and significantly involved. Ex. L. For example, he changes conservator policies, *id.* at 6:¶13, delegates authority to Mr. Pollard, Ex. M, A30, and deliberates with other FHFA government officials about topics related to preservation and conservation. Ex. L, 2:¶4. In short, Mr. Watt "[d]irect[s] the operations of the conservatorships in the manner I believe to be in the best interests of the conservatorships and the Agency." *Id.* at 6:¶13. Such operations include preserving and conserving Fannie's assets, the very issue permeating the Complaint and, according to FHFA, animating 4617(j)(3). *Id.* at 6:¶14. At bottom, FHFA-as-conservator is a government actor because government officials (Mr. Pollard and Mr. Watt) provided it with overt and significant assistance in invoking 4617(j)(3) and refusing to "consent" to SFR's property interests or Association's foreclosure sale. *Lugar*, 457 U.S. at 937.

- 7 -

### 4. *FHFA Deprived SFR of its Property without Due Process of Law*

Due Process' last element is the deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). This factor focuses on the constitutional sufficiency of procedures, often described as "notice and an opportunity to be heard." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). More precisely, when a statute is challenged on due process grounds, a court determines whether that law's procedures comport with due process. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195 (2001). Here, 4617(j)(3) is bereft of any procedures. Though it speaks of FHFA's "consent," 4617(j)(3) lacks a process to obtain "consent." 12 U.S.C. § 4617(j)(3). Similarly, there is no procedure for challenging FHFA's refusal to "consent." *Id.* The law simply states "[n]o property of the Agency shall be subject to . . . foreclosure, or sale without the consent of the Agency[.]" *Id.* Yet, due process' "root requirement" is "an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis in original and internal citation omitted).

In this case, FHFA did not give SFR an opportunity for a hearing before FHFA deprived SFR of its protected property interests; "consent" to these rights was simply denied. Compl., 6:17-18, 7:16-28 – 8:1-13, 8:19, 9:1-17. To make matters worse, 4617(j)(3) does not give SFR a post-deprivation remedy. 12 U.S.C. § 4617(j)(3). No process exists for SFR to contest FHFA's refusal to "consent," the agency's significant alteration and negation of SFR's property rights. To the contrary, FHFA believes 4617(f) insulates its actions as conservator from judicial review. Ex. M, A22:¶6 (alluding to 4617(f)); *see also Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 992 (9th Cir. 2013) (construing 4617(f) within property-assessed clean energy context). The absence of pre-deprivation procedures coupled with the lack of a post-deprivation remedy establishes FHFA deprived SFR of its property rights without due process of law. *Zinermon*, 494 U.S. at 132, 139. In passing, and regarding the issue of notice, if procedures for protecting property interests are arcane or not publicly available, then due process requires notice of such procedures. *City of W. Covina v. Perkins*, 525 U.S. 234, 242 (1999). Here, no procedures for obtaining FHFA's "consent" are "publicly available." Thus, due process requires FHFA to provide notice of

procedures for protecting one's interests. *Id.* As no such notice was given, due process was violated. *Id.* Ultimately, Plaintiffs' averments do not show they are "entitled to relief." FRCP 8(a)(2). Instead, the Complaint's allegations demonstrate FHFA deprived SFR of its property rights without due process of law, a bar to relief. Such a bar makes Plaintiffs' claims implausible.

### C. FHFA uses 4617(j)(3) Beyond FHFA's Statutory Powers

The Ninth Circuit has determined FHFA-as-conservator's powers are "broad, but not infinite[.]" *Sonoma*, 710 F.3d at 994. One limiting principle is the conservator cannot act "[b]eyond or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." *Id.* at 992 (quoting *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997)). So, the aforementioned due process deprivation demonstrates FHFA-as-conservator acted beyond its constitutionally permitted powers. *Id.* This is so because Congress cannot authorize FHFA─as regulator, supervisor, or conservator─to act unconstitutionally. *Id.* The Complaint also shows FHFA acted beyond its statutory powers, further rendering Plaintiffs' claims implausible.

Particularly, FHFA's invocation of 4617(j)(3) is premised on its power to "[t]ake such action as may be . . . **appropriate** to . . . preserve and conserve the assets and property of [Fannie]." 12 U.S.C. § 4617(b)(2)(D)(ii) (emphasis added); *see also* Ex. B, 2:28 – 3:1-2 (denial of "consent" to association sale due to conservator's duty to preserve and conserve). To be "appropriate," FHFA's actions cannot be inconsistent with the Director's principal duties, one of which "[s]hall be . . . to ensure that . . . [Fannie] complies with . . . guidelines . . . issued under this chapter and the authorizing statutes." 12 U.S.C. § 4513(a)(1)(B)(iii). Notably, Fannie's Selling Guide (a "guideline") states Fannie "allows a limited amount of regular common expense assessments (typically known as HOA fees) to have priority over [Fannie's] mortgage lien[.]" Ex. O. In Fannie's estimation, "[t]he six-month period is clear and provides discrete and measurable risk exposure for mortgage lending[.]" Ex. P. Due to this priority, Fannie "requires servicers to protect the priority of [Fannie's] mortgage lien[.]" Ex. Q. Despite these "guidelines," the Complaint alleges FHFA's refusal to "consent" means Fannie's DOT has priority over SFR's interests in the house and over Association's lien. Compl., 8:13, 9:1, 10:2. But this is directly at odds with Fannie's Selling Guide and inconsistent with the Director's

- 9 -

"principal duty" to ensure compliance with Fannie's "guidelines." 12 U.S.C. § 4513(a)(1)(B)(iii). Such inconsistency illustrates FHFA's invocation of 4617(j)(3) is not an "appropriate" action to "preserve and conserve" Fannie's assets. As a result, FHFA has acted beyond its statutory powers, making its claims implausible.

### D.   SFR is a Bona Fide Purchaser under Plaintiffs' Allegations

A claim lacks plausibility when the alleged misconduct has "an obvious alternative explanation," *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567, or a "more likely explanation." *Iqbal*, 556 U.S. at 681. Here, Plaintiffs aver Association's sale and SFR's property rights violate 4617(j)(3) because FHFA did not "consent." This avowed misconduct, however, has an "alternative explanation": SFR is a bona fide purchaser ("BFP"). In fact, Plaintiffs tacitly concede a BFP can trump Fannie's DOT, doing so in their "preliminary injunction" claim. Compl., 9:9. Regardless, a purchaser is a BFP if she buys property for value and without notice of a superior or competing interest. *Berge v. Fredericks*, 591 P.2d 246, 247 (Nev. 1979).

Here, Plaintiffs aver SFR paid $12,500.00 for the house, satisfying the BFP "value" requirement. Compl., 6:10. Turning to notice, the Complaint omits any allegation SFR knew FHFA refused to "consent" to Association's sale. All that is claimed is SFR purchased an interest in real property, recorded a Foreclosure Deed indicating "SFR had prevailed at an HOA lien foreclosure sale[,]" and believes it owns the house free and clear of Fannie. *Id.* at 3:19, 6:6-8, 9:1-2. Importantly, the Foreclosure Deed, which was attached to the Complaint and recounted Association's sale to SFR, stated "[a]ll requirements of law have been complied with[.]" Compl., Ex. 8. This representation means SFR neither knew nor should have known FHFA did not "consent" to Association's sale; to the contrary, Association represented to SFR it had complied with "all requirements of law," presumably including 4617(j)(3). *Id.* In sum, the Complaint lacks any allegation SFR is not a BFP. Rather, Plaintiffs' contentions demonstrate SFR is a BFP, an "alternative explanation" making Plaintiffs' claims implausible.

### E.   4617(j)(3) is Inapplicable to Private Entities

According to FHFA, 4617(j)(3) is patterned after 12 U.S.C. § 1825(b)(2), a statute involving FDIC-as-receiver's "consent." Ex. A, 5:23-24. Based on this lineage, FHFA uses

- 10 -

1825(b)(2) interpretive precedent to construe 4617(j)(3). *Id.* at 6:n.1. Such an approach reveals 4617(j)(3) is not as expansive as the Complaint suggests. Specifically, in *McFarland* the Fifth Circuit determined 1825(b)(2) is inapplicable to private entities. *FDIC v. McFarland*, 243 F.3d 876, 886 (5th Cir. 2001). Thus, under FHFA's own interpretive approach, this limitation should constrain 4617(j)(3). Here, SFR is a private entity. Compl., 2:25-27. Consequently, 4617(j)(3) is inapplicable to SFR, undermining Plaintiffs' claims.

### F. Association's Lien Attached before FHFA's Conservatorship

Similarly, the Ninth Circuit interpreted 1825(b)(2) as not extinguishing liens that attached before the FDIC's receivership. *In re Cnty. of Orange*, 262 F.3d 1014, 1020 (9th Cir. 2001). If a lien attached before FDIC's receivership, then the FDIC was not exempt from that lien. *Id.* Within the 4617(j)(3) context, and pursuant to FHFA's own interpretive approach, this means if a lien attached before FHFA's conservatorship, then FHFA cannot avoid that lien. *Id.* Here, Association's lien attached when its CC&Rs were recorded, February 20, 2003. Compl., 4:28; *SFR*, 334 P.3d at 418 (quoting *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A.*, 979 F.Supp.2d 1142, 1152 (D. Nev. 2013) (Chapter 116 and recorded CC&Rs placed banks on notice of association's lien priority)). Contrastingly, FHFA became Fannie's conservator on September 6, 2008. Compl., 2:20-21. Therefore, FHFA cannot avoid Association's lien because that lien attached before FHFA became Fannie's conservator, further proof Plaintiffs' claims are implausible.

### G. Doe Pleading is Improper

FRCP 10(a) militates against "doe pleading." *Doe v. Kamehameha Schools*, 596 F.3d 1036, 1042 (9th Cir. 2010). Additionally, "there is no provision in the Federal rules permitting the use of fictitious defendants." *Graziose v. Am. Home Prod. Corp.*, 202 F.R.D. 638, 643 (D. Nev. 2001). Here, the Complaint was improperly brought against "Does I-X" and "Roe Corporations I-X." Compl., 1:25-28, 3:2-6. In keeping with the aforementioned authorities, the claims against these "doe defendants" should be dismissed. After all, not a single concrete allegation is made against them. *Id.*

/ / /

- 11 -

### H. Fannie Lacks Standing

A litigant cannot seek redress for another's rights. *Hollingsworth v. Perry*, 570 U.S. ___, 133 S.Ct. 2652, 2663 (2013). Here, the Complaint alleges FHFA-as-conservator succeeded to all of Fannie's interests. Compl., 7:24-25. In particular, Fannie's DOT "[i]s property of the Conservator [FHFA]." *Id.* at 8:1. Because Plaintiffs allege the DOT is FHFA's property, Fannie lacks standing to sue SFR.

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint with prejudice under FRCP 12(b)(6).

RESPECTFULLY SUBMITTED this __28th__ day of January, 2015.

**HOWARD KIM & ASSOCIATES**

*/s/Jacqueline A. Gilbert_____*
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA S. CLINE, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
1055 Whitney Ranch Dr., Suite 110
Henderson, Nevada, 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool I, LLC*

- 12 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of January, 2015, pursuant to FRCP 5, I served via the CM/ECF electronic filing system the foregoing **SFR INVESTMENTS POOL 1, LLC's MOTION TO DISMISS COMPLAINT [DKT. NO. 1]** to the following parties:

Dana Jonathon Nitz, Esq.
Ryan T. O'Malley
WRIGHT, FINLAY & ZAK, LLP
5532 S. Ft. Apache Rd., Suite 110
Las Vegas, Nevada 89148
*Attorneys for Federal National Mortgage Association*

Leslie Bryan Hart, Esq.
FENNEMORE CRAIG, P.C.
300 East Second Street, Suite 1510
Reno, Nevada 89501
*Attorney for Federal Housing Finance Agency*

Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
(*Pro Hac Vice*)
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
*Attorney for Federal Housing Finance Agency*

Joseph P. Garin, Esq.
Kaleb D. Anderson, Esq.
Peter E. Dunkley, Esq.
LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, NV 89144
*Attorneys for Sun City Aliante Community Association*

Sean L. Anderson, Esq.
Ryan D. Hastings, Esq.
LEACH JOHNSON SONG & GRUCHOW
8954 W. Russell Road, Suite 330
Las Vegas, NV 89148
*Attorneys for Sun City Aliante Community Association*

/s/ *Tommie Dooley*
An Employee of Howard Kim & Associates