Dana Jonathon Nitz, Esq. (SBN 0050)
Chelsea A. Crowton, Esq. (SBN 11547)
WRIGHT, FINLAY & ZAK, LLP
5532 South Fort Apache Road, Suite 110
Las Vegas, Nevada 89148
(702) 475-7964; Fax: (702) 946-1345
*dnitz@wrightlegal.net; ccrowton@wrightlegal.net*
*Attorneys for Plaintiff Federal National Mortgage Association*

Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert, Esq. (SBN 11728)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2228   Fax: (775) 788-2229
*lhart@fclaw.com; jtennert@fclaw.com*

(Admitted *Pro Hac* Vice)
Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
ARNOLD & PORTER LLP
555 12th Street NW
Washington, DC 20004
Tel: (202) 942-5000   Fax: (202) 942-5999
*Asim.Varma@aporter.com; Howard.Cayne@aporter.com;*
*Michael.Johnson@aporter.com*
*Attorneys for Federal Housing Finance Agency*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a government-sponsored entity; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Fannie Mae,<br><br>            Plaintiffs,<br><br>vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada Limited Liability Company; SUN CITY ALIANTE COMMUNITY ASSOCIATION; a Nevada Non-Profit Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>            Defendants. | Case No.: 2:14-cv-02046-JAD-PAL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SFR INVESTMENTS POOL 1, LLC'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.      INTRODUCTION

The 2008 federal statute that created the Federal Housing Finance Agency ("FHFA" or the "Conservator") and authorized it to place Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and with Fannie Mae, the

"Enterprises") into conservatorship mandates that while in conservatorship, none of the Enterprises'

property "shall be subject to … foreclosure[] … without the consent of [FHFA]."  12 U.S.C.

§ 4617(j)(3) ("Federal Foreclosure Bar").  A Nevada statute grants homeowners' associations

("HOAs") a lien for unpaid dues that takes priority above all other private liens (commonly known

as a "superlien"), and allows superlien holders to foreclose all junior interests, including pre-

existing first deeds of trust.  *See* Nev. Rev. Stat. § 116.3116(2) ("State Foreclosure Statute").

In 2011, Fannie Mae became the beneficiary of a Deed of Trust securing a mortgage loan for

7445 Crested Quail Street in Las Vegas (the "Property").  Two years later, Defendant Sun City

Aliante Community Association ("Sun City") conducted an HOA foreclosure sale ("HOA Sale")

purportedly extinguishing Fannie Mae's property interest without the Conservator's consent and

conveying "free and clear" title to Defendant SFR Investments Pool 1, LLC ("SFR") pursuant to the

State Foreclosure Statute.  Under the Supremacy Clause, the Federal Foreclosure Bar preempts

application of the State Foreclosure Statute to Fannie Mae's interest in the Property, precluding

foreclosure upon and extinguishment of the interest without the Conservator's consent.  The

Property was at all relevant times, and remains now, subject to Fannie Mae's lien.

SFR advances no basis in law or fact to support its argument that application of the Federal

Foreclosure Bar under these circumstances would violate due process:  Any property interest

acquired by SFR pursuant to the HOA Sale was from the moment of acquisition subject to and

limited by the Federal Foreclosure Bar, and thus SFR has not suffered any deprivation to which due

process (even if applicable here, which it is not) would attach.  SFR also argues that the Conservator

acted outside its statutory powers by withholding consent and bringing this action; again SFR is

incorrect.  The Conservator's statutory power to preserve and conserve Fannie Mae's property

invests it with exclusive authority to decide whether to consent to an extinguishment of a valuable

asset—here, Fannie Mae's interest in the property.  The Court should deny SFR's Motion to

Dismiss.

## II.    BACKGROUND

On November 17, 2006, the Property was conveyed to Maureen V. Beverly.  *See* Compl.

¶ 14, Ex. 1.  A Deed of Trust securing a home loan in the amount of $233,776 was recorded on

November 22, 2006, showing Ms. Beverly as the borrower, Pulte Mortgage, LLC as the lender, and MERS as the Beneficiary.  *See* Compl. ¶ 15, Ex. 2.

Fannie Mae purchased the mortgage loan from Pulte Mortgage, LLC on or about December 1, 2006 and thereby acquired a first secured interest in the Property.  *See* Compl. ¶ 16.  On September 6, 2008, pursuant to HERA, FHFA's Director placed Fannie Mae and Freddie Mac into conservatorships.  *See* Compl. ¶ 4.  On June 28, 2011, a Corporate Assignment Deed of Trust was recorded whereby MERS assigned its beneficial interest in the Deed of Trust to Fannie Mae.  *See* Compl. ¶ 18, Ex. 4.

On August 5, 2013, a Foreclosure Deed Upon Sale was recorded, stating that SFR had prevailed at an the HOA Sale conducted on July 26, 2013 by Sun City.  *See* Compl. ¶ 31, Ex. 8. Upon information and belief, SFR paid $12,500 for the Property, though its fair market value at the time exceeded $285,000.  *See* Compl. ¶¶ 31, 33.  At no time did the Conservator grant the consent necessary for the HOA Sale to have effected a foreclosure upon and extinguishment of Fannie Mae's first lien on the Property.  *See* Compl. ¶ 34.

On June 11, 2014, SFR filed a state court Complaint (later dismissed voluntarily) in the Eighth Judicial District seeking a declaration quieting title in the Property and declaring that the HOA Sale gave SFR title to the Property free and clear of Fannie Mae's first lien.  *See* Compl. ¶ 37, Ex. 11.  On December 5, 2014, Fannie Mae and the Conservator filed the instant Complaint seeking, among other things, a declaration and determination that the HOA Sale did not convey the Property to SFR free and clear of Fannie Mae's preexisting first lien on the Property.  *See* Dkt. No. 1.  SFR filed this Motion to Dismiss, and Sun City its joinder thereto, on January 28, 2015.  *See* Dkt. Nos. 32, 34.

### III.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In the context of such a motion, "all well-pleaded allegations of material fact in the

complaint are accepted as true and are construed in the light most favorable to the non-moving party." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013) (citation omitted).

## IV.      LEGAL ARGUMENT

### A.      The Federal Foreclosure Bar Protects the Property Interests of Fannie Mae

The Federal Foreclosure Bar mandates that while Fannie Mae is in conservatorship, none of its property "shall be subject to … foreclosure[] … without the consent of [FHFA]." 12 U.S.C. § 4617(j)(3).  Nevertheless, SFR argues that an HOA foreclosure sale under the State Foreclosure Statute extinguished Fannie Mae's interest in the Property.  Under the Supremacy Clause, the Federal Foreclosure Bar preempts the State Foreclosure Statute to the extent it would authorize and effect involuntary foreclosure upon and extinguishment of this interest.  As FHFA did not consent to any foreclosure of Fannie Mae's property, the HOA Sale could not foreclose upon and extinguish Fannie Mae's interest.  The Property therefore remains subject to Fannie Mae's lien, and the Complaint states a valid claim.

### 1.      Section 4617(j)(3) Preempts Contrary State Law

A federal statute expressly preempts contrary law when it "explicitly manifests Congress's intent to displace state law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). This is the case here: the text of the statute declares that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale." 12 U.S.C. § 4617(j)(3).  The statute expressly precludes familiar state-law mechanisms for limiting or extinguishing property interests. The Federal Foreclosure Bar automatically bars any nonconsensual limitation or extinguishment through foreclosure of any interest in property held by Fannie Mae; it therefore expressly preempts the State Foreclosure Statute with respect to Fannie Mae's interest in the Property.

Section 4617(j)(3) also displaces the State Foreclosure Statute with respect to Fannie Mae's interest in the Property because "state law is naturally preempted to the extent of any conflict with a federal statute." *Valle del Sol*, 732 F.3d at 1023 (citation omitted).  Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal law" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted).  "[S]tate law that conflicts with federal law is

without effect." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  Here, the State Foreclosure Law and the Federal Foreclosure Bar are in direct conflict—the state law would extinguish Fannie Mae's lien, but the federal law precludes just that result.[1]

Indeed, courts applying the companion statute governing Federal Deposit Insurance Corporation receiverships—12 U.S.C. § 1825(b)(2), which provides that when acting as a receiver for a failed institution, "[n]o property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation"—have similarly held that it supersedes otherwise-applicable state law.  *See FDIC v. Lowery,* 12 F.3d 995 (10th Cir. 1993) (concluding that local taxing authorities could not sell property owned by FDIC to satisfy tax liens without FDIC's consent and noting that "[t]he text of section 1825(b)(2) is unequivocal and suggests no implied exception"); *GWN Petroleum Corp. v. Ok-Tex. Oil & Gas, Inc.*, 998 F.2d 853 (10th Cir. 1993) (concluding that a private judgment holder's attempt to garnish proceeds from the sale of oil and gas paid to the FDIC was barred by Section 1825(b)(2)).[2]

Any state law that would permit SFR to claim free and clear title under a theory that the HOA foreclosure extinguished Fannie Mae's interest in the Property is preempted by controlling federal law—here the Federal Foreclosure Bar.

## 2.    Section 4617(j)(3) Protects Fannie Mae's Property Interests

Federal law defines the scope of property interests protected by statutes such as the Federal Foreclosure Bar broadly.  *See Matagorda Cnty. v. Russell Law*, 19 F.3d 215, 221 (5th Cir. 1994).

---

[1]    Relatedly, another court in this District has recognized that federal law prevents an HOA sale from extinguishing a property interest in Nevada in cases relating to HUD-insured mortgages.  *See Washington & Sandhill Homeowner's Ass'n v. Bank of Am.*, No. 2:13-cv-01845, 2014 WL 4798565 (D. Nev. Sept. 25, 2014); *Collegium Fund, LLC v. Wells Fargo Bank, N.A.*, No. 2:13-cv-01550, 2014 WL 4635607 (D. Nev. Sept. 15, 2014).

[2]    When analyzing HERA's provisions, courts have frequently turned to precedent interpreting the analogous receivership authority of the FDIC.  *See, e.g.*, *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 993 (9th Cir. 2013) (referring to the FDIC's statutory authority in a related area as "analogous to 12 U.S.C. § 4617(f)"); *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009) ("the Court is persuaded by decisions that have reached the same conclusion when interpreting [FIRREA], whose provisions regarding the powers of federal bank receivers and conservators are substantially identical to those of HERA."), *aff'd sub nom. Louisiana Mun. Police Emps. Retirement Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011).

Indeed, courts have repeatedly held that mortgage liens constitute property for purposes of the analogous FDIC statute, § 1825(b)(2). "[T]he term 'property' in § 1825(b)(2) encompasses all forms of interest in property, including mortgages and other liens." *Simon v. Cebrick*, 53 F.3d 17, 21 (3d Cir. 1995); *see also S/N-1 REO Ltd. Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) ("A lien held by the FDIC as mortgagee is 'property' within the meaning of § 1825(b)(2)"); *Cambridge Capital Corp. v. Halcon Enterps., Inc.*, 842 F. Supp. 499, 503 (S.D. Fla. 1993) (same); *37 Huntington St., H, LLC v. City of Hartford*, 772 A.2d 633, 641 (Conn. 2001) (same). Likewise, Fannie Mae's interests here constitute property protected by Section 4617(j)(3).

Foreclosure bars such as Section 4617(j)(3) and Section 1825(b)(2) bar lien holders from extinguishing protected property interests through foreclosure sale. *See Simon*, 53 F.3d at 20 (Section 1825(b)(2) "protect[s] the FDIC's mortgages from being extinguished without its consent through foreclosure"); *Matagorda*, 19 F.3d at 221 ("If the taxing units were allowed to foreclose their tax lien without the consent of the FDIC, the consensual mortgage lien … acquired by the FDIC … would be extinguished. This is clearly forbidden by the plain wording of § 1825(b)(2)."); *Donna Indep. Sch. Dist. v. Balli*, 21 F.3d 100, 101 (5th Cir. 1994) (same).[3] As a result, the HOA foreclosure sale at issue here did not extinguish Fannie Mae's interest, and the Property remains subject to Fannie Mae's lien.

While the earlier-enacted FDIC provision applies only to receiverships, the more recent Federal Foreclosure Bar expressly covers FHFA conservatorships. *See* 12 U.S.C. § 4617(j)(1) ("The provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is acting as a conservator or a receiver."). Use of the phrase "conservator or receiver" in the Federal Foreclosure Bar reflects a conscious congressional decision to extend immunities to entities in conservatorship. *See 1185 Ave. of Americas Assocs. v. RTC*, 22 F.3d 494, 497 (2d Cir. 1994) ("Congress [does] not use the phrase 'conservator or receiver' loosely."). This confirms that

---

[3]   *See also Beal Bank, SSB v. Nassau Cnty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) ("The language of § 1825(b)(2) unequivocally prohibits the institution of collection techniques, including foreclosure, sale or levy with regard to property owned by the FDIC."); *Cambridge*, 842 F. Supp. at 502 ("Section 1825(b)(2) could not be more specific in prohibiting the extinguishment of an FDIC lien interest because it provides that no 'property' of the FDIC shall be subject to 'levy,' 'foreclosure,' or 'sale' without the 'consent of the FDIC.'").

Congress, in enacting HERA, intended FHFA conservatorships and FDIC receiverships to be treated in the same fashion regarding the statutory prohibition against the extinguishment of the conservator's or receiver's property interests without their consent.  *See Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1568 (Fed. Cir. 1995) ("Where Congress uses the same form of statutory language in different statutes having the same general purpose, courts presume that Congress intended the same interpretation to apply in both instances.").

Furthermore, because the Conservator has succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges ... with respect to ... the assets of [Fannie Mae]," 12 U.S.C. § 4617(b)(2)(A)(i), Fannie Mae's interests in the assets are protected by Section 4617(j)(3) against involuntary foreclosure.  Indeed, courts uniformly have rejected arguments that the exemptions provided by Section 4617(j) do not apply to Fannie Mae (or other entities) while in FHFA conservatorship.  *See Nevada v. Countrywide Home Loans Servicing, LP,* 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("while under the conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is"); *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (argument is "meritless").  This result accords with long-standing precedent construing the privileges and exemptions extended to financial institutions under FDIC receivership.  *See In re Cnty. of Orange*, 262 F.3d 1014, 1020 (9th Cir. 2001) ("We also note that subsection (b)(2) provides 'nor shall any involuntary lien attach to the property of the Corporation.'  That language's plain meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach") (emphasis omitted) (quoting 12 U.S.C. § 1825(b)(2)); *Cnty. of Fairfax v. FDIC*, Civ. A. No. 92-0858, 1993 WL 62247, at *4 (D.D.C. Feb. 26, 1993) (rejecting contention that statutory penalty bar applicable to FDIC as receiver, 12 U.S.C. § 1825(b)(3), only "exempts the FDIC *itself* from penalty assessment but not the [financial institution] for which the FDIC assumes receivership").  Thus, Fannie Mae is protected by Section 4617(j)(3) from its property interests being foreclosed upon and extinguished without FHFA's consent.

**B.      SFR's Due Process Argument Is Without Basis in Law or Fact**

SFR does not seriously contest the preemption principles outlined above.  Instead, SFR first

7

argues that it has suffered a violation of its procedural due process rights under the Fifth Amendment.  MTD at 4-9.  This argument fails for two reasons.  *First*, it is based on a fundamental misunderstanding of the law:  SFR erroneously claims that the HOA Sale vested it with "free and clear" title to the Property, an interest of which it claims to have been subsequently deprived.  But this fundamental premise of SFR's due process argument is incorrect, as the HOA Sale did not convey to SFR a "free and clear" title.  The Federal Foreclosure Bar, part of the governing legal regime at the time, prohibited the HOA Sale from foreclosing upon and extinguishing Fannie Mae's interest in the Property and thus limited the property rights that SFR acquired.  *Second*, even assuming SFR could contend it has lost a property right, it could only ascribe that loss to the passage of Section 4617(j)(3), as it was the enactment of that law that prevented SFR from acquiring an interest unburdened by Fannie's lien in the HOA Sale.  But any challenge that the statute itself unconstitutionally deprived SFR of due process must fail because the process of Congress's enactment of legislation over property rights itself provided SFR with sufficient due process.

### 1.      SFR Has Not Suffered a Deprivation of Property

Here, the property interest of SFR, of which it allegedly has been being deprived, is "free and clear" title to the Property.  MTD at 5.  SFR contends that "FHFA has significantly altered" its property rights "by not 'consenting' to them," MTD at 3, and that the statute, "coupled with FHFA's refusal to give 'consent' … significantly altered and nullified SFR's property rights," MTD at 5.  Indeed, SFR complains that it received no "opportunity for a hearing *before* FHFA deprived SFR of its protected property interests."  MTD at 8 (emphasis added).

This language in the Motion confirms that SFR's argument is predicated on the erroneous contention that it had a "free and clear" interest in the Property that was subsequently taken away.  This contention cannot stand in light of the operation and effect of Section 4617(j)(3):  any interest in the Property acquired by SFR was, at the time of the HOA Sale, already subject to Fannie Mae's preexisting recorded lien—HERA had been enacted, Fannie Mae was under FHFA's conservatorship, and thus the Federal Foreclosure Bar applied to and limited any interest in the Property acquired by SFR.  *See supra* at 4-5.  The Federal Foreclosure Bar, and its preemptive

8

effect on state law, governed the transfer of interests in the Property at the HOA Sale. The effect of Section 4617(j)(3) on the HOA Sale was that the purchaser could acquire all interest in the Property otherwise conveyable by the HOA Sale, so long as that interest remained subject to any interest held by Fannie Mae. *Only* if the Conservator consented to the HOA Sale's extinguishment of the Fannie Mae lien would the purchaser obtain an interest in transferred property without being subject to that lien. Therefore, SFR never acquired a "free and clear" property interest and it could not be "deprived" of something it never had.

The source of SFR's misunderstanding appears to be that it presumes that the only law that mattered in defining the property right it acquired at the time of the HOA Sale was the State Foreclosure Statute. This is wrong. "Federal law, no less than state law, can provide the rules or understandings that create and define property interests." *Hardison v. Cohen*, 375 F.3d 1262, 1268 (11th Cir. 2004) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Thus, when both federal and state law bear on the scope of a property interest, courts must evaluate both in determining whether the complaining party had a property interest of which it could be deprived. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 574 (6th Cir. 2013); *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007); *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005); *see also IDK, Inc. v. Clark Cnty.*, 599 F. Supp. 1402, 1411-12 (D. Nev. 1984) (for due process purposes, a property "interest 'results from a legitimate claim of entitlement created and defined by an independent source, such as state *or federal law*'") (emphasis added) (quoting *Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir.1980)), *aff'd*, 836 F.2d 1185 (9th Cir. 1988). Indeed, "express statutory language can prevent the formation of a protectable property interest." *Peanut Quota Holders*, 421 F.3d at 1330 (citing *United States v. Fuller*, 409 U.S. 488, 494 (1973)). As described *supra* at 4-5, under the Supremacy Clause, Section 4617(j)(3) displaced the State Foreclosure Statute insofar as the two conflict. Thus, regardless of what the State Foreclosure Statute might otherwise have enabled the HOA to convey to SFR in the absence of the Federal Foreclosure Bar, the Federal Foreclosure Bar prevented the HOA from foreclosing upon

and extinguishing Fannie Mae's interest in the Property.[4]

Perhaps anticipating the above response that federal law determines the scope of SFR's property interest, SFR later argues that it did obtain a "free and clear" property interest at the time of the HOA Sale because the HOA's lien attached in 2003, *i.e.*, before Fannie Mae was placed under FHFA's conservatorship in 2008.[5]  *See* MTD at 11.  This argument misses the mark because the issue is not whether a HOA lien attached to the Property in 2003, but rather what rights SFR acquired when it purchased the Property at the HOA Sale in 2013.  Plaintiffs do not contend that the HOA lien did not attach to the Property:  SFR is mistaken in characterizing Plaintiffs' allegations to be that Section 4617(j)(3) "prohibited" Sun City from "foreclos[ing] on the house" and "selling it to SFR … without FHFA's consent."  MTD at 2.  Rather, Plaintiffs acknowledge that the HOA had the right to impose a lien and conduct a foreclosure sale to enforce that lien on the Property.  The focus of this action is instead on the Federal Foreclosure Bar's limit on what interest could be transferred to SFR as part of the HOA Sale—*i.e.*, that the transferred interest remained subject to Fannie Mae's preexisting interest.  Thus, even if Sun City had the right to transfer an interest in the Property to SFR pursuant to the State Foreclosure Law, it could not, in that process, foreclose upon and extinguish Fannie Mae's interest in the Property.  *See* Compl. ¶¶ 48-55.  Thus, it is irrelevant to Plaintiffs' claims if the HOA lien attached before the conservatorship, as the lien itself is not contested.  What is contested is that SFR acquired no free and clear property interest at the HOA Sale, which occurred on July 26, 2013, years after Congress enacted Section 4617(j)(3) and FHFA placed Fannie Mae in conservatorship.

Thus, by operation of the legal regime prevailing at the time of the HOA Sale, SFR *never* acquired "free and clear" title to the Property.  At the time of the HOA Sale, it acquired an interest in the Property subject to Fannie Mae's lien—an interest that Plaintiffs do not seek to disturb in this

---

[4]     In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014), the Nevada Supreme Court ruled that a properly conducted foreclosure on an HOA superpriority lien can extinguish a first deed of trust under Nevada law.  In contrast, the threshold issue in this case is whether, under federal law, the Nevada Supreme Court's decision may be applied to Fannie Mae while in conservatorship.  In any event, Fannie Mae retains the right to assert non-HERA arguments as to why the HOA Sale in this case did not, in fact, extinguish the Deed of Trust under state law.

[5]     Plaintiffs take no position concerning whether the HOA's lien actually did attach in 2003; as noted above, it makes no difference to the analysis if it did.

action.  The fact that SFR *still* does not have a "free and clear" interest, and that Plaintiffs ask this Court to declare that to be the law, does not effect a deprivation of property.  SFR was not deprived of an interest in the Property to which the protections of due process could apply.

> **2.      Any Adjustment of Property Rights By Section 4617(j)(3) Itself Does Not Constitute A Procedural Due Process Violation**

SFR's Motion recognizes that it was Section "4617(j)(3) [which] avowedly prohibit[ed] the extinguishment of Fannie [Mae]'s [interest in the Property]."  MTD at 5.  Indeed, only Congress's passage of the Federal Foreclosure Bar could arguably be characterized as the act that "adjusted" the property rights otherwise capable of being transferred under the State Foreclosure Statute— Section 4617(j)(3) switched the prevailing legal regime from one in which an HOA foreclosure sale transferred free and clear title in a property to the purchaser to one in which the sale transferred an interest that remained subject to Fannie Mae's lien.  No other event "adjusted" the prevailing property rights.[6]  Therefore, the only possible procedural due process challenge SFR could raise must be to Congress's passage of Section 4617(j)(3).  Of course, this argument fails at the outset because SFR had no interest at all in the Property when the law was enacted.  *See supra* at 8-10. But this argument also fails because general legislative acts, by definition, provide all the due process owed to those whom they affect.

A party cannot raise a procedural due process challenge "[w]hen the action complained of is legislative in nature, [because] due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law."  *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (citation omitted).  "[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by

---

[6]    Insofar as SFR intends to argue that it was *FHFA's failure to consent* that failed to satisfy due process requirements, this argument fails because SFR *never* sought FHFA's consent to the extinguishment of Fannie Mae's interest in the Property.  Even if it had, such an argument would fail because the act that changed the default allocation of property rights in an HOA foreclosure sale was the passage of Section 4617(j)(3) (and the subsequent placement of Fannie Mae into conservatorship).  *See supra* at 4-5, 8-10.  FHFA's "refusal to consent" did not alter any prevailing property rights; the absence of consent merely maintained the existing property rights as already defined by law.  *See id.*

law is sufficient." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995) (passage of legislation establishing diking system that later diverted flood waters onto plaintiffs' property did not deprive plaintiffs of procedural due process); *see, e.g.*, *Christensen v. Yolo Cnty. Bd. of Supervisors,* 995 F.2d 161, 166 (9th Cir.1993) (no individual notice and hearing required where county zoning decision had general effect on large number of people); *Harris v. Cnty. of Riverside,* 904 F.2d 497, 502 (9th Cir.1990) (same).  The rule that legislative acts comply with due process applies equally to acts of Congress as it does to acts of state or local governments.  *See, e.g.*, *Othi v. Holder*, 734 F.3d 259, 270 (4th Cir. 2013); *Seldovia Native Ass'n, Inc. v. United States*, 35 Fed. Cl. 761, 772 (1996).

At the root of this principle is the recognition that the legislative process protects plaintiffs' rights "in the only way that they can be in a complex society, by [plaintiffs'] power, immediate or remote, over those who make the rule."  *Halverson*, 42 F.3d at 1261 (quoting *Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445 (1915)).  Indeed, "even though an individual's property rights may be affected by the enactment of a general statute, 'where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.'"  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968-69 (9th Cir. 2003) (quoting *Bi–Metallic*, 239 U.S. at 445)).

This rule applies when it is plain that a statute will have a significant effect on individuals' property rights—including the extinguishment of those property rights.  Even in such an extreme circumstance, "when a legislature extinguishes a property interest via legislation that affects a general class of people," no further due process is necessary.  *Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 304-05 (5th Cir. 2007).  Courts reject the "sugges[tion] that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights."  *Texaco v. Short,* 454 U.S. 516, 536 (1982).  Thus, while the Supreme Court has acknowledged, for example, that a state statute "arguably did deprive the plaintiffs of a protected property interest" when it granted state officials immunity from certain torts, it still held that plaintiffs "were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels.  In each

1    case, the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush*

2    *Co.*, 455 U.S. 422, 432-33 (1982) (citations omitted).

3         The rule that generally-applicable legislative acts need not be accompanied with further due

4    process is reinforced by the recognition, in the related takings context, that "government

5    regulation—by definition—involves the adjustment of rights for the public good," and that

6    "[g]overnment hardly could go on if to some extent values incident to property could not be

7    diminished without paying for every such change in the general law." *Lingle v. Chevron U.S.A.*

8    *Inc.*, 544 U.S. 528, 538 (2005) (citations omitted); *see Penn Cent. Transp. Co. v. New York City*,

9    438 U.S. 104, 124 (1978).  Thus, a legislative act is unlikely to constitute a taking if it "merely

10   affects property interests through some public program adjusting the benefits and burdens of

11   economic life to promote the common good." *Lingle*, 544 U.S. at 538 (citations omitted).  In

12   particular, where a law "applies generally to a broad class of properties," rather than to specific

13   properties, even if it "prohibits a beneficial use to which individual parcels had previously been

14   devoted and thus causes substantial individualized harm," courts are unlikely to find that there has

15   been a taking where the act does not "destroy[] or severely diminish[] the value of the property."

16   *Rogin v. Bensalem Twp.*, 616 F.2d 680, 690 (3d Cir. 1980) (citation omitted).

17        These authorities require the rejection of SFR's argument that the passage of Section

18   4617(j)(3) deprived it of any property interest without due process.  Section 4617(j)(3) is legislation

19   enacted by Congress that affects the rights of any individual or entity, nationwide, who would

20   otherwise seek to extinguish the property interests of the Enterprises; it is not a specific law

21   designed to target SFR or any small group.

22   **C.    FHFA Acted Within Its Powers As Conservator**

23        SFR also claims that FHFA "acted beyond its statutory powers," arguing that FHFA has a

24   statutory obligation to "ensure compliance" with a document entitled "Selling Guide: Fannie Mae

25   Single Family."  MTD at 9 & Ex. O.  SFR asserts that invoking the Federal Foreclosure Bar in this

26   case conflicts with the statements in the Selling Guide that Fannie Mae "allows a limited amount of

27   regular common expense assessments (typically known as HOA fees) to have priority over [Fannie

28   Mae's] mortgage lien," and that the purported conflict means FHFA acted beyond its statutory

13

powers.  MTD at 9-10.  Congress granted FHFA broad authority to preserve Fannie Mae's assets, and nothing in HERA or the Selling Guide—which lacks the force of law in any event—prevents FHFA from withholding consent to the extinguishment of a valuable asset.

    **1.**    **SFR's Claim that FHFA Acted Beyond its Authority Ignores the Expansive Powers that Section 4617(j)(3) Grants FHFA**

SFR's claim that FHFA "acted beyond its statutory powers," MTD at 9, ignores both FHFA's statutory mandate to protect the Enterprises' property and HERA's broad delegation of authority.  HERA directs FHFA to "preserve and conserve the assets and property" of the Enterprises.  *See* 12 U.S.C. § 4617(b)(2)(D)(ii).  "In granting the conservator broad, sweeping authority over [the Enterprises'] assets, Congress made it clear that it left to the FHFA . . . the discretion to decide how best to manage the assets of [the Enterprises]."  *In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 798 (E.D. Va. 2009).  At no time did FHFA consent to the HOA Sale; to have done otherwise would have been to agree to forfeit an asset of Fannie Mae without compensation, inconsistent with FHFA's statutory mandate to "preserve and conserve [Fannie Mae's] assets and property."  *See* 12 U.S.C. § 4617(b)(2)(D)(ii).  FHFA thus acted within its statutory powers.

Furthermore, HERA provides that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver."—"except … at the request of [FHFA]."  12 U.S.C. § 4617(f).  This language forecloses judicial review of FHFA's exercise of its powers, including its power under Section 4617(j)(3) not to consent to the imposition of a "levy, attachment, garnishment, foreclosure, or sale without [its] consent."  *See Cnty. of Sonoma*, 710 F.3d at 990 (HERA "substantially limits judicial review of FHFA's actions as conservator.").  SFR claims that "FHFA's invocation of [Section] 4617(j)(3) is not an 'appropriate' action."  MTD at 10.  But SFR is unable even to advance a plausible argument that FHFA has acted outside its statutory powers; indeed, its argument is premised on FHFA actually following the letter of the statute.  As the Ninth Circuit recognized in *County of Sonoma*, FHFA's powers as conservator certainly included the management of the mortgage assets of the Enterprises.  *See Cnty. of Sonoma*, 710 F.3d at 993.  In short, the Court cannot second-guess FHFA's actions, which are not

subject to judicial review.

**2.      A "Selling Guide" Has No Legal Force**

SFR nevertheless argues that FHFA acted beyond its statutory powers because the Plaintiffs' claims conflict with supposed requirements of a document entitled "Selling Guide: Fannie Mae Single Family" (the "Selling Guide"), MTD, Ex. O, an announcement concerning revisions to the Selling Guide, MTD, Ex. P, and an announcement concerning revisions to a "servicing guide," MTD, Ex. Q.[7]  SFR notes that FHFA is mandated to ensure that Fannie Mae "complies with [HERA] and the rules, regulations, guidelines, and orders issued under [HERA] and the authorizing statutes," 12 U.S.C. § 4513(a)(1)(B)(iii), and contends that the Selling Guide is a guideline for purposes of Section 4513.  SFR argues that purported "inconsistenc[ies]" between the Selling Guide and Plaintiffs' claims indicate that FHFA acted beyond its statutory powers.  MTD at 9-10.

This argument fails because the Selling Guide does not have the force of law.  The Selling Guide does not constitute a "rule[], regulation[], guideline[], or order[] issued under [HERA] and the authorizing statutes," per Section 4513(a)(1)(B)(iii).  If SFR intends to imply that a Selling Guide is a guideline per Section 4513(a)(1)(B)(iii) because of similarities between the two terms, the implication is wrong.  Courts treat Fannie Mae guides not as policy pronouncements akin to rules, regulations, or orders, but instead as contractual documents between Fannie Mae and loan servicers, sellers, and other entities.  *See Hinton v. Fed. Nat'l Mortg. Ass'n*, 945 F. Supp. 1052, 1057-1059 (S.D. Tex. 1996) *aff'd.*, 137 F.3d 1350 (5th Cir. 1998).  Other courts have held that third parties have no standing to enforce the guides.  *See, e.g.*, *Ishee v. Fed. Nat'l Mortg. Ass'n*, No. Civ. A. No. 2:13-cv-234, 2015 WL 518682, at *14 (S.D. Miss. Feb. 6, 2015) ("Plaintiff is not a third-party beneficiary of Fannie Mae's servicing guides and has no standing to enforce them.").

---

[7]     The Selling Guide and the two announcements that SFR relies upon are not properly before this Court on a motion to dismiss.  *See* MTD Exs. O-Q.  SFR contends that these documents may be considered "because they were referenced in an exhibit attached to Plaintiffs' Complaint."  SFR Req. for Judicial Notice at 3.  But a document is only "integral to" or "incorporated by reference" in the Complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) (quotation omitted).  This test is not met by allegations made *in SFR's* state court complaint—a complaint since voluntarily dismissed— that did no more than imply the existence of these documents.

Even if the Selling Guide were incorrectly deemed a "guideline" under HERA, it would qualify as an interpretative rule, and thus lack legal force.  Agency policy contained in "opinion letters, … policy statements, agency, manuals, and *enforcement guidelines … lack the force of law.*" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (emphasis added).  *See also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 97, 99 (1995) (using the terms "guideline" and "interpretative rule" interchangeably, and stating that the latter "do[es] not have the force and effect of law and [is] not accorded that weight in the adjudicatory process").  Because the Selling Guide lacks legal force, SFR's contention—which is wrong in any event—that FHFA acted beyond its statutory powers by taking a position in this litigation that is purportedly "at odds with" the Selling Guide, MTD at 9, also fails.

### 3.   Plaintiffs' Position Is Entirely Consistent with the Selling Guide

Finally, SFR's argument fails because Plaintiffs' position does not conflict with the Selling Guide.  As described *supra* at 10, Plaintiffs do *not* contend that the HOA lien could not have attached to the Property, and consistent with the Selling Guide, Plaintiffs acknowledge the superpriority of the HOA lien for purposes of payment of up to six months of past-due HOA assessments.  Instead, what Plaintiffs challenge is the *effect* of the HOA Sale—while the HOA could enforce its lien by selling the Property to SFR, it could not in that process foreclose, and thus extinguish, Fannie Mae's interest in the Property in violation of federal law.  *See* Compl. ¶¶ 48-55.

### D.   Nevada's Bona Fide Purchaser Law Is Preempted by Section 4617 and Is Inapplicable Based on SFR's Constructive Notice of Fannie Mae's Interest

SFR further argues that as a purported bona fide purchaser for value without notice of a superior interest in the Property, it acquired the Property free and clear of Fannie Mae's lien.  *See* MTD at 10.  The Federal Foreclosure Bar preempts whatever rights a bona fide purchaser might otherwise have acquired under Nevada law, and SFR is not a bona fide purchaser in any event.

### 1.   Section 4617(j)(3) Preempts State Law Concerning Bona Fide Purchasers

A federal statute preempts state law "when [the] state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995).  Here, SFR claims that Nevada's bona fide purchaser doctrine extinguishes Fannie Mae's interest; SFR's claimed "powers of a bona

16

fide purchaser of real property are defined by *state* law." *See In re Seaway Express Corp.*, 912 F.2d 1125, 1128 (9th Cir. 1990) (emphasis in original); *see also* Nev. Rev. Stat. § 111.180.  At the same time, Section 4617(j)(3) provides that Fannie Mae's property interests cannot be extinguished without the consent of the Conservator.  In these circumstances, Nevada's bona fide purchaser statute comes into an "actual conflict with federal law," and the state law must yield.  *See Freightliner*, 514 U.S. at 287; *see supra* at 4-5.

> **2.  SFR Cannot Claim to Be a Bona Fide Purchaser Because SFR Had Constructive Notice of Plaintiffs' Interest in the Property**

Bona fide purchaser status exists only where the purchaser "does not have actual knowledge, *constructive notice of*, or reasonable cause to know* that there exists … adverse rights, title or interest to, the real property." Nev. Rev. Stat. § 111.180 (emphasis added).  A party is not "a bona fide purchaser [where] the facts within the official records for the Property put [that party] on constructive notice of [another party's] interest." *Freedom Mortg. Corp. v. Trovare Homeowners Ass'n*, No. 2:11-CV-01403-MMD, 2014 WL 712664, at *3 (D. Nev. Feb. 21, 2014) ("*Freedom II*") (emphasis omitted).  In addition, facts in the purchaser's possession outside the official records might give rise to the purchaser's duty to investigate even unrecorded rights.  *Freedom Mortg. Corp, v. Trovare Homeowners Ass'n*, No. 2:11-CV-01403-MMD, 2012 WL 5986441, at *5 (D. Nev. Nov. 28, 2012) ("*Freedom I*").

Here, the fact that Fannie Mae had a recorded interest in the Property demonstrates that SFR had constructive notice of Plaintiffs' adverse interest in the Property, thereby disallowing SFR from claiming bona fide purchaser status.  Under Nevada law, documents properly recorded and "deposit[ed] … with the county recorder of the proper county for record, provides notice to all persons of the contents thereof, and all third parties shall be deemed to purchase and take with notice." Nev. Rev. Stat. § 247.190(1); *see also Adaven Mgmt., Inc. v. Mountain Falls Acquisition Corp.*, 191 P.3d 1189, 1195 (Nev. 2008) (The "existence of [a] deed of trust within the chain of title was sufficient to require [a subsequent purchaser] to make further inquiry, and therefore, [the purchaser] was charged with notice of what would have been revealed.").  Here, "a Corporate Assignment Deed of Trust was recorded"—with the Clark County recorder—"whereby MERS

1   assigned its beneficial interest in the 2006 Deed of Trust to Fannie Mae." Compl. ¶ 18.  Because

2   "official records for the Property … put [SFR] on constructive notice" of Fannie Mae's interest,

3   SFR is not a bona fide purchaser.  *See Freedom II*, 2014 WL 712664, at *3.

4          Whether SFR knew about Section 4617(j)(3) or properly understood how it works is of no

5   moment.  "The rule that 'ignorance of the law will not excuse' is deep in our law."  *United States v.*

6   *Pasillas-Gaytan*, 192 F.3d 864, 867 (9th Cir. 1999); *see also Jerman v. Carlisle, McNellie, Rini,*

7   *Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010) (holding that this maxim applies in both civil and

8   criminal law).  SFR had constructive notice of Fannie Mae's interest in the Property, and as a matter

9   of law that interest is protected by Section 4617(j)(3).

10         The gross inadequacy of the consideration SFR paid for what is alleges is "free and clear"

11  title to the Property put SFR on constructive notice of Fannie Mae's interest.  "[A]n extremely

12  discounted price given the fair market value of the [p]roperty … suggests that buyers were aware or

13  should have been aware of other encumbrances," putting buyers on constructive notice of a prior

14  interest.  *Freedom I*, 2012 WL 5986441, at *6 (D. Nev. Nov. 28, 2012) (interpreting Nevada law);

15  *see also United States v. West*, 299 F. Supp. 661, 668 (D. Del. 1969) ("a person who purchases

16  property for grossly inadequate consideration is not a bona fide purchaser.").  Although the Property

17  had a fair market value of over $285,000 at the time of the HOA Sale, SFR paid only $12,500.

18  Compl. ¶¶ 30-31, 33.[8]  Plainly, this price was too good to be true, and "[a] purchaser has

19  constructive notice …. when the available facts indicate that the purchaser may not be getting all he

20  expected."  *See Freedom II*, 2014 WL 712664, at *4.  In light of this grossly inadequate

21  consideration, SFR cannot claim to be a bona fide purchaser and the Court cannot grant a motion to

22  dismiss on that basis.[9]

23

24

25  _____

    [8]     For purposes of a 12(b)(6) motion the allegations of material fact in the Complaint are taken as
26  true and viewed in the light most favorable to the non-moving party.  *See Iqbal*, 556 U.S. 662, 678.

    [9]     SFR's claimed reliance on the Foreclosure Deed is no substitute for SFR's responsibility to
27  conduct adequate inquiry.  MTD at 9.  "[R]eliance upon a vendor, or similar person with reason to
    conceal a prior grantee's interest, does not constitute 'adequate inquiry' for purposes of rebutting
28  the presumption of notice."  *Berge v. Fredericks*, 591 P.2d 246, 249-50 (Nev. 1979) (emphasis
    omitted).

1

2

**E.      The Protection of Section 4617(j)(3) Is Not Limited to Foreclosures Conducted by Government Entities**

SFR briefly argues that Section 4617(j)(3) does not bar the extinguishment of Fannie Mae's interest in the Property because the statute applies only to actions taken by government entities in the context of levying and enforcing tax liens.  SFR contends that this Court should consider persuasive a Fifth Circuit decision that held that the FDIC property protection clause that is similar to Section 4617(j)(3), 12 U.S.C. § 1825(b)(2), "is inapplicable to private entities."  MTD at 10-11 (citing *FDIC v. McFarland*, 243 F.3d 876, 886 (5th Cir. 2001)).  This argument fails because the context of HERA supports a plain-language reading of the text of Section 4617(j)(3) to apply to foreclosures and other actions taken by private and public entities alike outside the tax context. *McFarland* is thus inapplicable here, and, in any event, it was decided incorrectly.

**1.      Text and Structure of HERA**

The plain terms of the statute contradict SFR's contention that the Federal Foreclosure Bar applies only in the tax-lien context.  Section 4617(j) bears the general heading "[o]ther Agency exemptions."  The first subsection, which defines the applicability of the following three, is also not specific to the tax context—it does not restrict its applicability or even refer to taxation, providing instead that the following subsections "shall apply with respect to [FHFA] in any case in which [FHFA] is acting as a conservator or a receiver."  12 U.S.C. § 4617(j)(1).  Each of the remaining subsections confers a different protection—one provides an exemption from "Taxation" (Section 4617(j)(2)), one grants "Property Protection" (Section 4617(j)(3)), and one creates immunity from "Penalties and fines" (Section 4617(j)(4)).  Nor does the text of Section 4617(j)(3) support an implication that it is limited to the tax context.  The statutory text does not even mention the word "tax," "taxation," or any analog.  By contrast, when Congress intended to limit a statutory protection to the tax context, it did so expressly—Section 4617(j)(2) confers an "exempt[ion] from all taxation imposed by any State … or local taxing authority."

Section 4617(j)(4), which confers immunity from penalties and fines, further confirms that Section 4617(j) as a whole is *not* limited to taxation.  The paragraph immunizes conservatorships from "penalties or fines, *including* those arising from the failure of any person to pay [certain kinds

19

of] tax or … fees when due." 12 U.S.C. § 4617(j)(4) (emphasis added).  That Section 4617(j)(4) references taxes only as an *example* in an "including" clause confirms that the more general operative words of the provision are not limited to the tax context.  "Including" clauses such as Section 4617(j)(4) are universally recognized as "illustrative and not limitative."  *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 577 (1994).  Indeed, a court evaluating the identical "including" clause in the FDIC's penalty bar held that "the referenced taxes and fees present a nonexhaustive list of examples of the types of penalties or fines for which FDIC–Receiver shall not be liable."  *Alexander v. Wash. Mut., Inc.*, Civ. A. No. 07-4426, 2011 WL 2559641, at *2 (E.D. Pa. June 28, 2011) (analyzing 12 U.S.C. §1825(b)(3)).  Thus, the structure and context of Section 4617(j)(3) confirm the plain-text reading of the provision, and do not support SFR's attempt to subject operation of this provision to a limitation not imposed by Congress.

### 2.     *McFarland* Was Incorrectly Decided

SFR cites *McFarland*, which held that elements of the structure and text of the FDIC's property protection clause, 12 U.S.C. § 1825(b)(2), restricted the protection afforded by Section 1825(b)(2) to actions by government entities in the tax-lien context.  FHFA and Fannie Mae respectfully submit that the Fifth Circuit's analysis, which is obviously not controlling in this Court, was incorrect.  *McFarland*'s holding cannot be squared with a Tenth Circuit's opinion where the court applied the FDIC's property protection provision to bar a *private judgment creditor* from attempting to garnish proceeds from the sale of oil and gas paid to the FDIC.  *GWN Petroleum*, 998 F.2d at 855-56.  Indeed, the Fifth Circuit acknowledges that *McFarland* creates a circuit split with *GWN Petroleum*.  243 F.3d at 886 n.40.  Nor is the Tenth Circuit the only court to apply Section 1825(b)(2) to bar the actions of private entities. *See also Trs. of MacIntosh Condo. Ass'n v. FDIC*, 908 F. Supp. 58, 65-66 (D. Mass. 1995) (holding that attempt of private condo association—much like the HOA at issue here—to obtain a priority lien for unpaid condo fees after the FDIC-receiver had foreclosed on the condo and retained possession of the condo violated § 1825(b)(2)); *Midlantic Nat'l Bank/North v. Fed. Reserve Bank*, 814 F. Supp. 1195, 1197 (S.D.N.Y. 1993) (private judgment creditor "could not take action against [failed bank's] assets after the FDIC was appointed receiver").

1    Indeed, the *only* decision to hold that the protection for FDIC receiverships under Section

2    1825(b)(2) is limited to the tax-lien context is *McFarland*.  The conclusion that *McFarland* was

3    incorrectly decided is confirmed by the bevy of decisions analyzing 12 U.S.C. § 1825(b)(3), the

4    subsection immediately following the FDIC property protection provision, which bars penalties

5    from being imposed on FDIC receiverships in non-tax contexts.  In a case predating *McFarland* by

6    several years, the Ninth Circuit drew the opposite conclusion from the statutory history as did the

7    Fifth Circuit in *McFarland*, noting that "under a heading *formerly referring to 'Taxation' but later*

8    *broadened by deletion*, § 1825(b)(3) states that FDIC 'shall not be liable for any amounts in the

9    nature of penalties or fines'" and holding that the immunity applied to "late payment penalties"

10   unrelated to taxation.  *Monrad v. FDIC*, 62 F.3d 1169, 1175 (9th Cir. 1995) (emphasis added).

11   *McFarland* conspicuously ignores *Monrad*'s point that the heading "Other Exemptions" (which

12   omits the word "taxation") was added to the operative provision, Section 1825(b), long before the

13   events at issue in *McFarland* took place.[10]

14   Similarly, the Eastern District of Pennsylvania specifically rejected the argument that

15   Section 1825(b)(3) was limited to the tax context, holding that private plaintiffs seeking penalties

16   pursuant to their RESPA claims were barred from doing so.  *Alexander*, 2011 WL 2559641, at *3-4.

17   Indeed, SFR's argument and *McFarland*'s holding would require that Section 1825(b)(3)'s penalty

18   bar also be limited to the tax context, a result at odds with *Monrad*, *Alexander*, and the many cases

19   holding that the statute barred *private parties'* claims (such as claims for punitive damages).  *E.g.*,

20   *Nials v. Bank of Am.*, No. 13 Civ. 5720, 2014 WL 1174504, at *7 (S.D.N.Y. Mar. 21, 2014); *Horn*

21   *v. FDIC*, Civ. A. No. ELH-11-2127, 2011 WL 6132309, at *1 (D. Md. Dec. 8, 2011); *Poku v.*

22   *FDIC*, Civ. A. No. RDB-08-1198, 2011 WL 1599269, at *4 (D. Md. Apr. 27, 2011); *King v. Long*

23   *Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246 (D. Mass. 2009).

24   **3.    *McFarland* Does Not Apply**

25   In any event, *McFarland* provides no basis for limiting the protections of Section 4617(j)(3)

26

27   ───────────────────────

28   [10]   *Monrad* is even more persuasive today, as Section 1825 has since been amended and its overall
      title no longer refers to "taxation."  *See* 12 U.S.C. § 1825 (Supp. I 2014).  This removes one of the
      bases for *McFarland*'s holding that Section 1825(b) should be limited to the tax-lien context.

to tax liens because *McFarland* focused on elements not present in Section 4617(j)(3).  First, *McFarland* put great weight on the fact that, at the time, the title of 12 U.S.C. § 1825 was "Exemption from taxation; limitations on borrowing."  *See McFarland*, 243 F.3d at 886.  The analogous section title in HERA, in contrast, is "Other Agency Exemptions."  12 U.S.C. 4617(j).  There is no reference to tax or taxation in the relevant section title.

Second, *McFarland* relies heavily on the structure and history of FIRREA.  The court noted that until Congress enacted FIRREA, Section 1825 had no subsections, and its one paragraph provided a tax exemption for FDIC when acting in its corporate capacity.  *See McFarland*, 243 F.3d at 886.  This section, however, was later amended to include subsections, the first of which is subsection 1825(a), entitled "General rule" and which deals expressly with FDIC's tax exemption when acting in its corporate capacity.  *See id.*  The court continued to note that FIRREA created a new subsection 1825(b) entitled "Other exemptions."  Based on this history of the prior section and the structure of the new subsections, the court concluded that all of subsection 1825(b)—including FDIC's property exclusion provision—is merely an extension of the general rule of tax exemption and thus is limited to tax liens.  *See id.*

The statutory and historical rationale used by *McFarland* to interpret FIRREA simply is inapposite in the context of HERA's Federal Foreclosure Bar.  Section 4617, in which that clause is found, did not exist before HERA.  Unlike the *McFarland*-era version of the FDIC statute, neither the title of Section 4617(j) or the content of the introductory subsection 4617(j)(1) mentions or references taxation.  Section 4617(j) of HERA does not purport to establish a "General rule" that addresses only taxation.  Section 4617's overall purpose—as evidenced both by its title, "Authority over critically undercapitalized regulated entities," and its content—is not to narrowly articulate tax exemptions, as the Fifth Circuit concluded was the case for the FDIC's statute, but rather to define the broad general powers and immunities of FHFA conservatorships and receiverships in response to the worst housing crisis since the Great Depression.  *See Cnty. of Sonoma*, 710 F.3d at 989 (holding that Section 4617 enumerates the "broad powers FHFA has as conservator," and noting that it also provides the conservatorship with broad immunities and exemptions); *Leon Cnty., Fla. v. FHFA*, 700 F.3d 1273, 1279 (11th Cir. 2012) (similar); *Hager*, 812 F. Supp. 2d at 1217 (similar).

1    Put simply, *none* of the factors that *McFarland* relied upon to hold that the FDIC's property

2    protection provision was limited to the tax context are present in Section 4617(j)(3).  *See supra* at

3    19-20.  *McFarland* is inapplicable here.

4    **F.**      **Fannie Mae Has Standing to Bring These Claims**

5            The Court need not address SFR's argument that Fannie Mae lacks standing.  SFR does not

6    contest FHFA's standing, and any one plaintiff's standing is jurisdictionally sufficient.  *See*

7    *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (because union members had standing, court did

8    not have to consider standing of other plaintiffs); *Village of Arlington Heights v. Metro. Hous. Dev.*

9    *Corp.*, 429 U.S. 252, 264 (1977) (same).

10           In any event, SFR's argument that Fannie Mae lacks standing is incorrect.  During

11   conservatorship, Fannie Mae continues to exist as a private entity that can litigate in its own right.

12   *See* Statement of Edward J. DeMarco, Acting Director, FHFA, Before the U.S. House of

13   Representatives Subcommittee on Capital Markets, Insurance, and Government-Sponsored

14   Enterprises, *Transparency, Transition and Taxpayer Protection: More Steps to End the GSE*

15   *Bailout*, at 8-9 (May 25, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-

16   112hhrg66871/html/CHRG-112hhrg66871.htm ("Fannie Mae and Freddie Mac . . . are still private

17   companies operating in conservatorship.  They did not cease to be private legal entities when they

18   were placed into conservatorship, nor did they become part of FHFA."); *Fed. Nat'l Mortg. Ass'n v.*

19   *Bell*, 576 Fed. App'x 196 (4th Cir. 2014) (addressing judgment granted Fannie Mae in case arising

20   after conservatorship and where FHFA was not a party).  Fannie Mae and FHFA have a shared

21   interest in protecting Fannie Mae's assets during conservatorship; each has standing to protect those

22   interests here.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

## V.     CONCLUSION

2       Fannie Mae and FHFA respectfully request that the Court deny SFR's Motion to Dismiss.

3       DATED this 3rd day of March, 2015.

4                                           WRIGHT, FINLAY & ZAK, LLP

5                                           By:     /s/ Dana Jonathon Nitz
6                                           Dana Jonathon Nitz, Esq. (SBN 0050)
                                            Chelsea A. Crowton, Esq. (SBN 11547)
7                                           5532 South Fort Apache Road, Suite 110
                                            Las Vegas, Nevada 89148
8                                           *dnitz@wrightlegal.net*
                                            *ccrowton@wrightlegal.net*
9
                                            Attorneys for Plaintiff Federal National Mortgage
10                                          Association

11                                          By:     /s/ Leslie Bryan Hart
                                            Leslie Bryan Hart, Esq. (SBN 4932)
12                                          John D. Tennert, Esq. (SBN 11728)
                                            FENNEMORE CRAIG, P.C.
13                                          300 E. Second St., Suite 1510
                                            Reno, Nevada 89501
14                                          Tel: (775) 788-2228   Fax: (775) 788-2229
                                            *lhart@fclaw.com; jtennert@fclaw.com*
15
                                                                and
16
                                            (Admitted *Pro Hac Vice*)
17                                          ARNOLD & PORTER LLP
                                            Asim Varma, Esq.
18                                          Howard N. Cayne, Esq.
                                            Michael A.F. Johnson, Esq.
19                                          555 12th Street NW
                                            Washington, DC 20004
20                                          Tel: (202) 942-5000   Fax: (202) 942-5999
                                            *Asim.Varma@aporter.com*
21                                          *Howard.Cayne@aporter.com*
                                            *Michael.Johnson@aporter.com*
22
                                            Attorneys for Plaintiff Federal Housing Finance
23                                          Agency

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2          Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on the 3rd

3   day of March, 2015, a true and correct copy of the **PLAINTIFFS' OPPOSITION TO**

4   **DEFENDANT SFR INVESTMENTS POOL 1, LLC'S MOTION TO DISMISS,** was

5   transmitted electronically through the Court's e-filing electronic notice system to the attorney(s)

6   associated with this case.  If electronic notice is not indicated through the court's e-filing system,

7   then a true and correct paper copy of the foregoing document was delivered via U.S. Mail.

8

9   Joseph P. Garin NVECF@lipsonneilson.com, snutt@lipsonneilson.com

10   Kaleb D. Anderson kanderson@lipsonneilson.com

11   Jacqueline A. Gilbert jackie@hkimlaw.com

12   Ryan T. O'Malley romalley@wrightlegal.net

13

14

15

16

17          /s/ *Pamela Carmon*
            Pamela Carmon

18

19

20

21

22

23

24

25

26

27   10128400.1/038236.0001

28