HOWARD C. KIM, ESQ. (SBN 10386)
E-mail: howard@hkimlaw.com
DIANA S. CLINE, ESQ. (SBN 10580)
E-mail: diana@hkimlaw.com
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
E-mail: jackie@hkimlaw.com
JESSE N. PANOFF, ESQ. (SBN 10951)
E-mail: jesse@hkimlaw.com
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a government-sponsored entity; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Fannie Mae, | **Case No.: 2:14-cv-02046-JAD-PAL**<br><br>**SFR INVESTMENTS POOL 1, LLC's REPLY TO PLAINTIFFS' RESPONSE [DKT. NO. 41]** |
| Plaintiffs, | |
| vs. | |
| SFR INVESTMENTS POOL 1, LLC, a Nevada Limited Liability Company; SUN CITY ALIANTE COMMUNITY ASSOCIATION, a Nevada Non-Profit Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, | |
| Defendants. | |

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs mishandle due process, distort preemption, ignore Ninth Circuit precedent, and make a host of contradictory arguments, all of which establish Plaintiffs' claims are facially implausible. The Complaint should be dismissed with prejudice.

## II.   LEGAL ARGUMENT

### A.   Nevada Law Establishes SFR's Property Rights

Plaintiffs argue SFR does not have a constitutionally protected property right (i.e. free and clear title) because Congress enacted 12 U.S.C. § 4617(j)(3) before Association's sale to

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

**HOWARD KIM & ASSOCIATES**
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

SFR. This argument fails because it ignores United States Supreme Court precedent, misunderstands the interplay between Nevada law and 4617(j)(3), and relies on inapposite cases.

### 1.   *Plaintiffs Ignore United States Supreme Court Precedent*

According to this country's highest court, property rights attain "[c]onstitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976). So, if a property right is recognized under state law, then such recognition triggers due process protections. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Paul*, 424 U.S. at 710; *Ralls Corp. v. CFIUS*, 758 F.3d 296, 316 (D.C. Cir. 2014).

Here, and pursuant to Nevada law, Association's sale to SFR extinguished Fannie's deed of trust ("DOT"), giving SFR free and clear title. *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014). This right is "recognized and protected by state law." *Paul*, 424 U.S. at 710. Even Plaintiffs concede as much, admitting "[a] properly conducted foreclosure on an HOA superpriority lien can extinguish a first deed of trust under Nevada law." Resp., 10:24-27 n.4. Because Nevada law recognizes SFR's property right, due process applies—a conclusion consistent with and in furtherance of United States Supreme Court precedent. *Paul*, 424 U.S. at 710; *Ralls*, 758 F.3d at 316. Yet Plaintiffs contend that due process does not apply merely because federal (4617(j)(3)) and state law interact in this case. Resp., 8:15-28 – 11:1-3. But even when state and federal law interact, as they do here, the Supreme Court still uses state law to determine the existence of property rights. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993) (Hawaiian property law and federal civil forfeiture statute); *Ralls*, 758 F.3d at 316 (Oregon property law and federal Defense Production Act). Thus, Plaintiffs' rejection of Supreme Court precedent defeats their due process observations.

### 2.   *Plaintiffs Mangle 4617(j)(3) & the Federal-State Law Relationship*

Plaintiffs' rejection of Supreme Court precedent is attributable to a misreading of 4617(j)(3) and a miscomprehension of how state and federal law interact in this case. Specifically, Plaintiffs insist 4617(j)(3) absolutely prohibited Association's sale from extinguishing the DOT; they reason that because 4617(j)(3) was enacted before Association's

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1   sale, SFR could not have acquired free and clear title from that sale. Resp., 8:15-28 – 11:1-3. In

2   order for these positions to be correct, 4617(j)(3) would have to read, "[n]o property of the

3   Agency shall be subjected to . . . foreclosure, or sale[.]" But 4617(j)(3) is not so absolute. To the

4   contrary, it provides "[n]o property of the Agency shall be subjected to . . . foreclosure, or sale

5   ***without the consent of the Agency***[.]" These emphasized words—which Plaintiffs erase—indicate

6   4617(j)(3) does not absolutely prohibit extinguishment. Resp., 4:17-18 (inaccurately quoting

7   4617(j)(3)). If FHFA consents, then extinguishment can occur, just as Plaintiffs admit. *Id.* at

8   2:23-24, 3:12-14, 4:10-12, 9:4-6, 17:3-4. Because 4617(j)(3) is not an absolute prohibition, the

9   date of its enactment is irrelevant in determining whether SFR has free and clear title.

10      In addition to misreading 4617(j)(3), Plaintiffs miscomprehend the interplay between

11   state and federal law. For starters, Plaintiffs believe 4617(j)(3) not only gives FHFA power to

12   eliminate state-recognized property rights, but it is also the source of SFR's rights. Resp., 11:24-

13   28 n.6, 14:19-20. At the same time, Plaintiffs claim Nevada law is the source of SFR's property

14   rights, excluding free and clear title. *Id.* at 10:22-23. Such convoluted machinations are simply

15   incorrect. In this case, federal and state law have a more straightforward relationship.

16   Particularly, and consistent with Supreme Court precedent, Nevada law is the source of SFR's

17   property rights. *Paul*, 424 U.S. at 710; *Ralls*, 758 F.3d at 316. Federal law (4617(j)(3)) is the

18   source of a government actor's (FHFA) power to nullify those *state*-recognized rights. Here,

19   Association sold a house to SFR. Commensurate with Nevada law, Association's sale

20   extinguished Fannie's DOT, giving SFR free and clear title. FHFA reviewed Association's sale

21   and decided not to consent to extinguishment. This decision nullified SFR's free and clear title,

22   depriving SFR of state-recognized property rights. *Id.* But, because 4617(j)(3) lacks a process to

23   request FHFA's consent, this deprivation was without due process of law. Mot. to Dismiss, 4:2-

24   28 – 9:1-4. Again, state law is the source of SFR's rights. Federal law is the source of FHFA's

25   power to nullify those rights. Plaintiffs' miscomprehension of these roles negates their argument

26   that 4617(j)(3)'s enactment prevented SFR from obtaining free and clear title. Essentially, that

27   which state law recognized is that which FHFA took away, doing so without due process. *Paul*,

28   424 U.S. at 710-11; *Ralls*, 758 F.3d at 316.

### 3.      A Recent D.C. Circuit Case is Persuasive

Plaintiffs' misreading of 4617(j)(3) and failure to grasp the interplay between state and federal law caused Plaintiffs to believe SFR's rights are too contingent to implicate due process. Resp., 8:15-28 – 11:1-3. Interestingly, the D.C. Circuit recently rejected a similar argument, made in a case involving the interplay between Oregon property law and the Defense Production Act of 1950 ("DPA"), a federal statute. *Ralls*, 758 F.3d at 316. In *Ralls*, an American corporation (Ralls), owned by two Chinese nationals, purchased four Oregon LLCs. This acquisition was made over sixty years after Congress enacted the DPA. *Id.* at 304. Pursuant to the DPA, a federal agency reviewed the sale and placed it on hold because of national security concerns. The agency referred the matter to the President who ultimately nullified the sale due to national security issues. *Id.* at 306. Ralls sued the agency and President, claiming it was deprived of state-recognized property rights without due process of law. *Id.* The district court determined Ralls lacked property rights because the interplay between the DPA and Oregon law rendered Ralls's rights too contingent. *Id.* at 316. Ralls appealed. On appeal, the D.C. Circuit reversed, concluding "[t]here is nothing 'contingent' about the interests Ralls obtained under state law, and the Appellees offer no legal support . . . for the proposition that the nature of a property interest recognized under *state* law is affected by potential *federal* deprivation." *Id.* Indeed, the D.C. Circuit observed there was no "contingency built into the *state* law from which Ralls's property interests derive and to which interests due process protections traditionally apply." *Id.* at 316-17. In support of this observation the D.C. Circuit cited some of the same cases SFR used in its Motion to Dismiss. *Compare id.* (citing *Loudermill*, 470 U.S. at 538; *Paul*, 424 U.S. at 710; *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)), *with* Mot. to Dismiss, 4:20 (*Roth*), 5:7 (*Paul*), 8:13 (*Loudermill*).

Here, SFR bought the house from Association approximately five years after Congress promulgated 4617(j)(3). Compl., 6:8. FHFA reviewed the sale and decided not to consent to the extinguishment of Fannie's DOT; such a decision nullified SFR's state-recognized property rights. Nevada law does not have contingencies in place regarding SFR's acquisition of free and clear title from Association's sale. These facts (post-statute sale, agency review and negation of

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

state-recognized rights, and the absence of a contingency in state law) mirror *Ralls*. *Ralls*, 758 F.3d at 316. As in *Ralls*, SFR's *state*-recognized rights are not contingent, and it is immaterial that Association's sale came after 4617(j)(3)'s enactment. In short, SFR has property rights warranting due process protections.

### 4.    *Plaintiffs' Cases are Distinguishable*

Unlike *Ralls*, Plaintiffs' cases are unpersuasive because they are factually and legally distinguishable. To begin with, they involve "new property,"[1] a phrase encompassing government-created: benefits/entitlements,[2] licenses,[3] employment status,[4] and permits.[5] Significantly, "new property" statutes simultaneously create a "new property" right and the government's power to terminate that right,[6] a feature that prompted the Supreme Court to, beginning in the early 1970s, develop a test to evaluate whether a form of "new property" is "property" within the Fifth and Fourteenth Amendments. *Roth*, 408 U.S. at 577-78. This test stated in order for a benefit to be "property," an individual must have more than a unilateral expectation of receiving a benefit; the person needs a "legitimate claim of entitlement" to the

---

[1] The phrase "new property" is usually attributed to Charles A. Reich, *The New Property*, 73 YALE L.J. 733 (1964). This article—starting with *Goldberg v. Kelly*, 397 U.S. 254, 262 n.8 (1970)—significantly influenced United States Supreme Court "new property" jurisprudence.

[2] *Mathews v. Eldridge*, 424 U.S. 319 (1976) (social security disability benefits); *Jackson v. Sedgwick Claims Mgmt. Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (worker's compensation claims); *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323 (Fed. Cir. 2005) (government-issued peanut quota); *Russell v. Landrieu*, 621 F.2d 1037 (9th Cir. 1980) (mortgage assistance payments by government).

[3] *IDK, Inc. v. Clark Cnty.*, 599 F.Supp. 1402 (D. Nev. 1984) (county-issued license for escort service).

[4] *Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007) (Colorado Department of Corrections employees' interests in promotions and transfers); *Hardison v. Cohen*, 375 F.3d 1262 (11th Cir. 2004) (right to employment as medical resident in Department of Veterans Affairs' ("VA") residency program).

[5] *United States v. Fuller*, 409 U.S. 488 (1973) (Secretary of the Interior-issued permits to graze on federal lands pursuant to Taylor Grazing Act).

[6] *Mathews*, 424 U.S. at 335-39 (Social Security Act created right to receive social security disability benefits and government's power to eliminate benefits); *Peanut Quota*, 421 F.3d at 1334 (1996 FAIR Act created peanut quotas and government's power to extinguish quotas); *Hardison*, 375 F.3d at 1268 (U.S.C. Title 38 created employment in VA residency program and VA Secretary's power to terminate employment); *Russell*, 621 F.2d at 1040 (12 U.S.C. § 1715z-1 created right to receive mortgage assistance payments and government's power to end payments).

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES

1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1   benefit. *Id.* at 577. And, "entitlements" "stem from an independent source such as state law." *Id.*

2   Notably, this "new property" test is seldom used in the "old property" context, which covers land

3   and houses—traditional conceptions of "property." *Jones v. Flowers*, 547 U.S. 220, 229, 239

4   (2006); *James Daniel Good*, 510 U.S. at 53-54; *see also Schneider v. Cal. Dep't of Corr.*, 151

5   F.3d 1194, 1200-01 (9th Cir. 1998) (discussing "new property" cases).

6           Here, SFR's right to free and clear title in the house is a core traditional property right.

7   Hence, Plaintiffs' reliance on "new property," and its test for ascertaining property rights, is ill-

8   suited for this case. The features of "new property" are also incompatible with this case's facts.

9   To repeat, the features of "new property" are: (i) government-created rights and (ii) the same

10  legal source creates an individual's rights and the government's power to terminate those rights.

11  In this case, Association (a private actor) sold the house to SFR (another private actor). This

12  exchange is different from an agency giving benefits or a county issuing licenses. And, unlike

13  the "new property" context, SFR's rights emanate from state law while FHFA's power to negate

14  those rights stem from federal law; one law did not create both.

15          Additionally, Plaintiffs assert that federal law, just as much as state law, defines property

16  rights. Resp., 9:10-11. This observation's accuracy is limited, confined to those instances when a

17  federal law actually creates property rights, thereby defining them. *Mathews*, 424 U.S. at 335-39

18  (Social Security Act created right to receive social security disability benefits and government's

19  power to eliminate benefits); *Hardison*, 375 F.3d at 1268 ("We must, therefore, examine the

20  federal laws under which Hardison was employed by a federal agency to determine whether

21  those laws reasonably could support a property interest in the residency."). In Plaintiffs' cited

22  cases, federal law defined a property right's contours because the right was attributable to and

23  created by *federal* law. *Id.*; *see also Peanut Quota*, 421 F.3d at 1334 (1996 FAIR Act created

24  peanut quotas and government's power to extinguish quotas); *Russell*, 621 F.2d at 1040 (12

25  U.S.C. § 1715z-1 created right to receive mortgage assistance payments and government's power

26  to end payments). Here, however, SFR's right to free and clear title comes from and is

27  recognized by *state* law, distinguishing Plaintiffs' cases.

28          Lastly, Plaintiffs opine that when state and federal law influence a property right's scope,

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

"courts must evaluate both in determining" a right's existence. Resp., 9:13. In support of this proposition Plaintiffs rely on six cases, all of which are distinguishable. The first case, *Jackson*, 731 F.3d at 565, contravenes Ninth Circuit precedent by using federal law to define property rights for civil RICO claims; the Ninth Circuit uses state law. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) ('Without a harm to a specific business or property interest-a categorical inquiry typically determined by reference to state law-there is no injury to business or property within the meaning of RICO."); *Miller v. York Risk Services Grp.*, No. 2:13-cv-1419-JWS, 2013 WL 6442764, at *3 (D. Ariz. Dec. 9, 2003). Inexplicably, Plaintiffs cite *Jackson*'s dissent, passing it off as the majority opinion. Resp., 9:15. *Teigen* is the second case and is inapposite because it involved "new property" (right to job promotions and transfers). *Teigen*, 511 F.3d at 1079-80. Thus, *Teigen*'s references to federal law were made out of adherence to the Supreme Court's "new property" test, discussed above. The four remaining cases are distinguishable because they concern "new property," and a single law created both a right and the government's power to nullify that right. *Fuller*, 409 U.S. at 489; *Peanut Quota*, 421 F.3d at 1334; *Russell*, 621 F.2d at 1040; *IDK, Inc.*, 599 F.Supp. at 1403, 1410. Here, this case focuses on "old property" (free and clear title in a house), and state law recognizes SFR's property rights while federal law gives FHFA power to negate those rights. All told, Plaintiffs' cases are distinguishable.

### B.   FHFA Deprived SFR of Property without Due Process of Law

Plaintiffs contend 4617(j)(3)'s enactment did not deprive SFR of property without due process of law. This contention is misguided because it responds to an argument SFR did not make and turns on a litany of inapposite cases concerning the irrelevant legislative acts doctrine.

#### 1.   *Plaintiffs Mischaracterize SFR's Arguments*

Plaintiffs accuse SFR of recognizing that Congress's enactment of 4617(j)(3) deprived it of property without due process of law. Resp., 11:5. This is incorrect; SFR explained that FHFA's decision not to consent, *in conjunction with 4617(j)(3)'s lack of a process to request consent*, deprived SFR of property without due process. Mot. to Dismiss, 3:18-19, 4:10-11, 5:8-9, 5:12-17, 8:22-24. At no point in time did SFR suggest 4617(j)(3)'s enactment or existence deprived it of property. *Id.* Rather, whenever SFR discussed its deprivation, SFR combined

4617(j)(3)'s existence with FHFA's decision not to consent. *Id.* And SFR did so for a particular reason: to establish that FHFA is a government actor via *Lugar*'s joint activity test. *Id.* at 6:5-15. After all, *Lugar*'s first prong is that a property deprivation was caused by the exercise of a government-created power (i.e. 4617(j)(3) is government-created and gave FHFA power to nullify SFR's state-recognized property rights). *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). So, SFR's references to 4617(j)(3) were made with *Lugar* in mind. Thankfully, Plaintiffs have conceded FHFA is a government actor, removing the need for this Court or SFR to further consider *Lugar* and its focus on the exercise of a government-created power.[7] Regardless, Plaintiffs' attribution of an argument to SFR that it never made enervates Plaintiffs' procedure-based arguments.[8] So too do Plaintiffs' cases.

### 2.    *Plaintiffs' Cases are Distinguishable*

In the hopes of showing SFR received all the process it was due, Plaintiffs trot out an assortment of inapplicable cases, mostly dealing with the legislative acts doctrine.[9] Resp., 11:19-23 – 13:1-21. More precisely, in Plaintiffs' cases litigants argued they suffered due process violations because they did not receive notice about or an opportunity to attend a legislative hearing before a law's enactment. *Texaco, Inc. v. Pond*, 454 U.S. 516, 531 (1982); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *Othi v. Holder*, 734 F.3d 259, 270 (4th Cir. 2013); *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968 (9th Cir. 2003); *Seldovia Native Ass'n, Inc. v. United States*, 35 Fed. Cl. 761, 772 (Fed. Cl. 1996); *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994); *Christensen v. Yolo Cnty. Bd. of Supervisors*, 995 F.2d 161, 166 (9th Cir. 1993); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 500 (9th Cir. 1990).

---

[7] As is explained below, Plaintiffs' failure to contest SFR's government actor arguments constitutes an admission that FHFA is a government actor.

[8] Likewise, Plaintiffs' footnoted observation that SFR did not request FHFA's consent is irrelevant for due process' purposes. Resp., 11:25 n.6. This is so because "[a] party 'waives' a due process claim only if he foregoes *constitutionally adequate* procedures." *Ralls*, 758 F.3d at 317 n.18. Here, 4617(j)(3) lacks *any* procedure to request consent, a constitutional inadequacy. As a result, it is irrelevant that SFR did not seek FHFA's consent. This argument also applies to the Complaint's allegation that Association's "[f]oreclosure sale [was] without FHFA's consent[.]" Compl., 8:19.

[9] This doctrine's details are explored below.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Courts rejected this argument because the legislative process afforded litigants all the process that was due; notices about an impending new law were issued and public hearings were in fact held before a law's adoption. *Id.* And, some of the cases included a formal procedure that a litigant could use to either contest or protect her property right. *Texaco*, 454 U.S. at 529; *Othi*, 734 F.3d at 269; *Hotel & Motel*, 344 F.3d at 970; *Seldovia*, 35 Fed. Cl. at 768; *Christensen*, 995 F.2d at 164. Here, SFR did not contend that FHFA deprived it of due process because SFR never received notice about 4617(j)(3)'s promulgation or was not allowed to attend a public hearing before 4617(j)(3) became law. Instead, FHFA's decision not to consent to extinguishment, combined with 4617(j)(3)'s omission of a process to request consent, deprived SFR of state-recognized property rights without due process of law. At issue here is the fairness of the process FHFA used in deciding not to consent. Such a process is unfair, and hence contrary to due process, because SFR does not have an opportunity to request FHFA's consent. In sum, Plaintiffs' cases are distinguishable because they involved an argument SFR did not raise and procedural protections unavailable to SFR.[10]

### 3.    The Legislative Acts Doctrine does not help Plaintiffs

As just mentioned, Plaintiffs' cases dealt with the irrelevant legislative acts doctrine. Under this doctrine, due process is satisfied if a legislature properly enacts a generally applicable law, ordinance, or zoning agreement that impacts a large group of people, covers considerable

---

[10] Plaintiffs' Takings Clause cases are also unilluminating because they concentrated on developing the proper test to evaluate when a taking has occurred. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 545 (2005) (rejecting the "substantially advances" test); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124-25 (1978) (distinguishing between physical invasion by government and a public program adjusting economic burdens and benefits); *Rogin v. Bensalem Twp.*, 616 F.3d 680, 693 (3d Cir. 1980) (reviewing takings' tests and differentiating between administrative and legislative actions). *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 424 (1982) is equally unhelpful because it was a "new property" case dealing with whether a state may terminate a person's cause of action because a state official failed to comply with statutorily required procedures. *Logan* is also inapplicable because it discussed how alterations to a law can impact individuals' property interests. *Logan*, 455 U.S. at 432-33. Here, however, SFR did not contend 4617(j)(3), in and of itself, deprived SFR of property without due process. Instead, FHFA's decision not to consent, *in conjunction with 4617(j)(3)'s lack of a process to request consent*, deprived SFR of property without due process. Finally, *Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 304-05 (5th Cir. 2007) is inapposite because it explored the irrelevant legislative acts doctrine.

amounts of land, and does not target specific individuals. *Hotel & Motel*, 344 F.3d at 969. Conversely, if specific individuals are targeted and those individuals' rights are exceptionally affected (i.e. substantively changed), then due process is not satisfied. *Id.* at 970. Here, Plaintiffs opine 4617(j)(3) is a generally applicable law that applies to numerous properties and individuals. Resp., 13:18-21. Once again, Plaintiffs treat 4617(j)(3) as an absolute prohibition, deleting the words "without the consent of the Agency" from that law. Such an error overlooks FHFA's decision, the role of a government actor within 4617(j)(3). Indeed, in this case FHFA reviewed Association's sale to SFR and decided not to consent to extinguishment. This decision targeted a specific individual (SFR)—not to mention a particular transaction and piece of property. Compl., 3:18-23, 4:1-4, 6:6-10, 6:17-18, 8:18-24. Also, FHFA's refusal to consent exceptionally affected SFR's state-recognized right to free and clear title by converting what was a superior title to one purportedly inferior to Fannie's DOT. *Hotel & Motel*, 344 F.3d at 970. Consequently, the legislative acts doctrine does not help Plaintiffs.

### 4. FDIC has a Process to Request Consent

Plaintiffs have an affinity for the FDIC in general and 12 U.S.C. § 1825(b)(2) in particular. Resp., 5:4-5, 5:25-28 n.2, 7:1-3. Such an affinity is traceable to Plaintiffs' belief that 1825(b)(2) is the "companion statute" of 4617(j)(3). *Id.* at 5:4. In Plaintiffs' estimation, Congress intended FHFA conservatorships and FDIC receiverships to be treated "in the same fashion" regarding consent. *Id.* at 7:2. Plaintiffs even ask this Court to follow 1825(b)(2) interpretive precedent. *Id.* at 5:25-28 n.2. With such profound esteem for FDIC in general and 1825(b)(2) in particular, it is surprising that Plaintiffs did not mention that the FDIC, unlike FHFA, created procedures for people to request 1825(b)(2) consent. Statement of Policy on Foreclosure Consent and Redemption Rights, 57 Fed. Reg. 29491-94 (July 2, 1992). FDIC's process was published in the Federal Register, denoting when requesting consent was necessary, how consent could be requested, and to whom request for consent should be made. *Id.* In fact, FDIC created a form specifically allowing people to "Request Consent to Foreclose." *Id.* at 29493.

Importantly, all of Plaintiffs' FDIC cases were issued *after* FDIC developed its procedure to request consent and the "Request for Consent to Foreclose" form. Resp., 5:9, 5:12, 5:20, 5:25-

HOWARD KIM & ASSOCIATES

1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

28 n.2, 6:3-7, 6:15, 6:26-28 n.3, 7:12-22, 19:7, 20:8, 20:22, 20:26, 21:10, 21:20-23. Perhaps this is why none of Plaintiffs' FDIC cases analyzed a litigant's inability to request consent; there was no need to do so because FDIC had a procedure to request consent, the very deficiency plaguing 4617(j)(3) and FHFA's refusal to consent to extinguishment. Tellingly, FDIC's process was neither cumbersome nor costly, a rudimentary and fair opportunity for someone to ask the FDIC to consent to extinguishment. 57 Fed. Reg. at 29491-94. In light of the significant property rights that were at stake, the FDIC's consent procedures fit nicely within the *Mathews* due process construct because they help FDIC avoid erroneous deprivations without minimizing FDIC's governmental interests or unduly burdening FDIC. *Mathews*, 424 U.S. at 335. All told, FDIC's consent procedures bolster SFR's procedural due process arguments and expose the inaccuracy of Plaintiffs' position that SFR was afforded all the process it was due. Given Plaintiffs' affinity for the FDIC and their insistence that Congress intended FHFA conservatorships and FDIC receiverships to be treated "in the same fashion," it is troubling that FHFA has yet to create consent procedures. Resp., 7:2.

## C.   Federal Law does not Preempt Nevada Law

Hoping to avoid constitutional deficiencies, Plaintiffs raise express and implied preemption arguments. Unfortunately for Plaintiffs, if a federal statute is unconstitutional, then it cannot preempt a purportedly conflicting state law. *Alden v. Maine*, 527 U.S. 706, 731 (1999); *S.J. Groves & Sons, Co. v. Fulton Cnty.*, 920 F.2d 752, 763 (11th Cir. 1991). This reflects the Supremacy Clause's command that "This Constitution and the Laws of the United States ***which shall be made in Pursuance thereof*** . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2 (emphasis added). If a law is not "made in Pursuance" of the Constitution, then it is not "supreme." As detailed herein and in SFR's Motion, 4617(j)(3) is unconstitutional, preventing it from preempting Nevada law. This proposition advances the dual principles that unconstitutional laws are legal nullities and judicial enforcement of unconstitutional laws is against public interest. *Ex Parte Siebold*, 100 U.S. 371, 376 (1879); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Journigan v. Duffy*, 552 F.2d 283, 289 (9th Cir. 1977). Besides, Plaintiffs' express and implied preemption contentions are simply incorrect.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

### 1.     Express Preemption

Plaintiffs' express preemption positions begin by misquoting 4617(j)(3), a most inauspicious move. Resp., 4:17-18. In particular, Plaintiffs erase the words "without the consent of the Agency" from 4617(j)(3). *Id.* These words are eliminated so Plaintiffs can sidestep several express preemption principles, such as: (i) Congress's intent controls a court's preemption analysis and is determined by a law's text,[11] (ii) if Congress has legislated in an area traditionally occupied by state law, then there is a presumption against preemption,[12] (iii) this presumption is overcome only by showing Congress's intent to preempt is "clear and manifest,"[13] (iv) courts construe express preemption clauses narrowly,[14] and (v) if there is more than one way to read a preemption provision, then courts will select the reading that does not preempt state law.[15]

Here, 4617(j)(3)'s text conveys Congress's intent *not to preempt* Nevada law. This is so because the phrase "without the consent of the Agency" contemplates instances when FHFA can consent to extinguishment; 4617(j)(3) does not "automatically bar[]" extinguishment. Resp., 4:20. Next, the presumption against preemption applies because 4617(j)(3) implicates Nevada property law, an area traditionally occupied by state law. Plaintiffs cannot, however, overcome this presumption because they lack evidence that Congress had a "clear and manifest" intent to preempt state property law. *McClellan*, 776 F.3d at 1039. Sadly, the only evidence Plaintiffs proffer is a misquoted version of 4617(j)(3). Resp., 4:17-18. As for the next express preemption principle, 4617(j)(3) should be construed narrowly, something Plaintiffs refuse to do. Finally, assuming *arguendo* 4617(j)(3) could be read in more than one way, courts adopt the construction that avoids preemption. *McClellan*, 776 F.3d at 1039. In this case, Plaintiffs contend 4617(j)(3) "automatically bars" extinguishment. Resp., 4:20. SFR offers another reading, noting 4617(j)(3) envisions instances when FHFA consents to extinguishment, an interpretation that avoids

---

[11] *CTS Corp. v. Waldburger*, 573 U.S. ___, 134 S.Ct. 2175, 2185 (2014) ("Congressional intent is discerned primarily from the statutory text."); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013).
[12] *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015).
[13] *Id.*
[14] *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005).
[15] *McClellan*, 776 F.3d at 1039.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

preemption. Moreover, Plaintiffs are simply wrong to describe 4617(j)(3) as an express preemption clause. A cursory comparison between 4617(j)(3) and true express preemption statutes demonstrates that 4617(j)(3) lacks the requisite specificity and definitiveness to be an express preemption clause. *Nat'l Meat Ass'n v. Harris*, 565 U.S. ___, 132 S.Ct. 965, 969 (2012) (21 U.S.C. § 678's statement that requirements "which are in addition to, or different from those made under [the Federal Meat Inspection Act] may not be imposed by any State."); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1117 (9th Cir. 2013) (21 U.S.C. § 360k(a)'s pronouncement that "[n]o State . . . may establish or continue in effect with respect to a device . . . any requirement which is different from, or in addition to, any requirement applicable under this chapter[.]").

### 2.    *Implied Preemption*

Plaintiffs' treatment of implied preemption is as flawed as their handling of express preemption. Initially, Plaintiffs summarily rely on impossibility and obstacle preemption, grounding both in the following avowed conflict: extinguishment occurs under Nevada law but federal law precludes extinguishment. Resp., 4:15-28 – 5:1-17. As discussed above, this proposition is wrong because of 4617(j)(3)'s text, its phrase "without the consent of the Agency[.]" Nevertheless, impossibility preemption occurs when compliance with federal and state law is a physical impossibility. *Greater Los Angeles Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 429 (9th Cir. 2014). In this case, and as Plaintiffs acknowledge, FHFA can consent to extinguishment, removing any conflict with Nevada law. Resp., 2:23-24, 3:12-14, 4:10-12, 9:4-6, 17:3-4. This acknowledgement reveals that compliance with 4617(j)(3) and Nevada law is not a physical impossibility. Next, obstacle preemption necessitates conflicts that "necessarily arise." *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007). Mere tension is insufficient and the conflict must be "sharp" if the presumption against preemption applies. *Chapman v. Westinghouse Elec. Corp.*, 911 F.2d 267, 269 (9th Cir. 1990). Here, conflict between 4617(j)(3) and Nevada law does not "necessarily arise" because of FHFA's ability to consent. At most, there is "tension" between Nevada law and 4617(j)(3) but this is not enough to trigger obstacle preemption. *Incalza*, 479 F.3d at 1010. This is especially so when the presumption against preemption applies, demanding Plaintiffs to identify a "sharp" conflict,

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

- 13 -

something they failed to do. In the end, 4617(j)(3) does not impliedly preempt Nevada law.

### 3.   Plaintiffs' FDIC Cases are Unavailing

Briefly, Plaintiffs profess that two FDIC 1825(b)(2) cases illustrate 4617(j)(3)'s preemption of Nevada law. Resp., 5:9-12 (citing *FDIC v. Lowery*, 12 F.3d 995 (10th Cir. 1993); *GWN Petroleum Corp. v. OK-Tex. Oil & Gas, Inc.*, 998 F.2d 853 (10th Cir. 1993)). Yet, the word "preemption" does not appear in either case, both of which were released *after* the FDIC published its consent procedures. 57 Fed. Reg. at 29491. Along similar lines, these cases explicitly refrained from addressing constitutional arguments because such positions were not raised below. *Lowery*, 12 F.3d at 997 n.14; *GWN*, 998 F.2d at 858 n.5. It is quite perplexing that Plaintiffs believe these cases provide insight into preemption when they: (i) lack a single reference to "preemption," (ii) unambiguously declined to assess constitutional arguments, and (iii) were issued after the FDIC adopted its consent procedures. As a result, Plaintiffs' FDIC cases are unavailing.

### 4.   Plaintiffs' Preemption Arguments Overlook Ninth Circuit Precedent

To recap, Plaintiffs opine that Association's lien cannot be superior to Fannie's DOT, Association's foreclosure of its lien cannot cause negative consequences for the DOT (i.e. extinguishment), and Nevada law is preempted. All three of these positions conflict with three determinations the Ninth Circuit made in *County of Sonoma*, a case involving the scope of FHFA's conservatorship powers. *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 993-94 (9th Cir. 2013). In *County of Sonoma*, FHFA instructed Fannie to refrain from buying mortgages that were subjected to property-assessed clean energy ("PACE") liens. *Id.* at 992. After confirming FHFA's power, the Ninth Circuit explained PACE liens are "superior to the mortgages owned and securitized by [Fannie]." *Id.* at 993. Additionally, foreclosure of PACE liens can have negative consequences for Fannie, all of which are dictated by non-preempted state law. *Id.* at 993-94. These three determinations—there can be liens superior to Fannie-owned mortgages, foreclosure of these superior interests can have negative consequences for Fannie, and all of this is controlled by state law—stand in stark contrast to Plaintiffs' present preemption protestations. And so, Plaintiffs' preemption arguments overlook Ninth Circuit precedent.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

### D.    FHFA Exceeded its Statutory Powers

SFR's Motion delineated how—based on the Complaint's allegations—FHFA exceeded its statutory authority. First, FHFA acted beyond its constitutionally permitted powers when it deprived SFR of its property without due process of law. Mot. to Dismiss, 9:6-13. Second, and based on the Complaint's averments, FHFA's refusal to "consent" gave Fannie's DOT priority over SFR's interests in the house and over Association's lien. *Id.* at 9:26-27. This recalibration of priority departed from Fannie's "guidelines" (i.e. Fannie's Selling Guide) and contravened one of FHFA's Director's "principal dut[ies]": ensuring compliance with Fannie's guidelines. 12 U.S.C. § 4513(a)(1)(B)(iii). Such friction with this "principal duty" meant FHFA had not taken "[a]ction as may be . . . appropriate to . . . preserve and conserve the assets and property of [Fannie]." 12 U.S.C. § 4617(b)(2)(D)(ii). Interestingly, FHFA's Director, in prepared testimony for a congressional hearing, embraced SFR's intra-textual reading of 4617(j)(3) and 4513(a)(1)(B)(iii). Statement of Melvin L. Watt, *Sustainable Housing Finance: An Update from the Director of the Federal Housing Finance Agency*, http://www.fhfa.gov/Media/PublicAffairs/Pages/Statement-of-Melvin-L-Watt-Director-FHFA-Before-the-US-House-of-Representatives-Committee-on-Financial-Services-1272015.aspx (last visited Apr. 3, 2015) ("As conservator, FHFA must also fulfill the responsibilities enumerated above in 12 U.S.C. § 4513(a)(1).").

#### 1.   FHFA cannot use 4617(f) to Avoid Judicial Review

Undaunted by the Director's prepared remarks, Plaintiffs attempt to justify FHFA's recalibration of priority, first by insisting this Court cannot review FHFA's actions. In support of this contention Plaintiffs cite 12 U.S.C. § 4617(f). Resp., 14:16-28. But the Ninth Circuit has already determined 4617(f) is incapable of insulating FHFA from constitutional-based attacks, such as SFR's due process positions. *Cnty. of Sonoma*, 710 F.3d at 992. And, the Ninth Circuit stressed that if FHFA's actions exceed "statutorily prescribed" powers, then 4617(f) does not prohibit judicial review. *Id.* In this case, FHFA's readjustment of lien priority runs afoul of FHFA's "statutorily prescribed" power to "take such action as may be . . . appropriate[.]" 12 U.S.C. § 4617(b)(2)(D)(ii). A recent Freddie Mac Bulletin confirms SFR's positions. The

- 15 -

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1   Bulletin provides, in light of a Nevada Supreme Court decision and consistent with Freddie's

2   "guideline," servicers must pay "[H]OA and PUD regular assessments that are, or may become,

3   superior to our lien and pose a risk to our interest in the Mortgage Premises if left unpaid."

4   Freddie        Mac,        *Nov.        17,        2014,        Bulletin*,

5   http://www.freddiemac.com/singlefamily/guide/bulletins/pdf/bll1420.pdf  (last visited Apr. 3,

6   2015). The Bulletin's discussion of "superiority" calls into question Plaintiffs' efforts to defend

7   FHFA's alteration of priority.

8             *2.*      *The Plain Meaning of "Guideline" Includes Fannie's Selling Guide*

9          Next, Plaintiffs offer a smattering of mistaken missives, beginning with the

10  unsubstantiated statement that the word "guidelines" in 4513(a)(1)(B)(iii) does not encompass

11  Fannie's Selling *Guide*. Resp., 16:1. Yet, the plain meaning of "guideline" is "**any guide** or

12  indication of a future course of action[.]" RANDOM HOUSE WEBSTER'S UNABRIDGED

13  DICTIONARY 849 (2d ed. 2001) (emphasis added). This definition includes Fannie's Selling

14  Guide. And, several cases have equated Fannie's guides with "guidelines," including one

15  involving FHFA. *Giles v. Wells Fargo Bank, N.A.*, No. 12-15567, 519 Fed. Appx. 576, 577 n.2

16  (11th Cir. May 23, 2013) (unpublished); *FHFA v. City of Chicago*, 962 F.Supp.2d 1044, 1060

17  (N.D. Ill. 2013).

18            *3.*      *Plaintiffs' Remaining Insights are Unfounded*

19         Plaintiffs then opine Fannie's Guide lacks the force of law and cannot be enforced by

20  third-parties. Resp., 15:2-22 – 16:1-10. But SFR is not seeking to enforce Fannie's Guide; rather,

21  the Guide identifies the boundaries of FHFA's powers, marking a line beyond which FHFA

22  cannot cross. As for the force of law, 4513(a)(1)(B)(iii)'s incorporation by reference of the Guide

23  readily disposes of Plaintiffs' misplaced protestations. Lastly, Plaintiffs assert that: (i) this Court

24  cannot take judicial notice of Fannie's Guide and (ii) FHFA complied with the Guide because

25  federal law prohibited it from consenting to extinguishment. Resp., 15:24-28 n.7, 16:11-18. The

26  judicial notice contention was made in a footnote, an improper place for substantive arguments.

27  *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003). Regardless, and as SFR previously

28  explained, this Court can take judicial notice of Fannie's Guide because of the incorporation by

reference doctrine. SFR's Req. for Judicial Notice, 3:23-28 [Dkt. No. 33]. Turning to Plaintiffs'

belief that 4617(j)(3) prohibited FHFA from consenting to extinguishment, this supposition once

again ignores 4617(j)(3)'s text, its phrase that contemplates and allows FHFA to consent to

extinguishment. Ultimately, FHFA exceeded its statutory powers.

### E.   Nevada's Bona Fide Purchaser Law is not Preempted

On the one hand, the Complaint avers that if SFR sells the house to a bona fide purchaser

("BFP"), then Fannie will suffer "[i]rreparable harm of the loss of title to a bona fide purchaser

or loss of the first position priority status secured by the Property." Compl., 9:8-10. On the other

hand, Plaintiffs now maintain that 4617(j)(3) preempts Nevada's BFP law, which is directly

contrary to their Complaint. Resp., 16:24-27. At any rate, Plaintiffs believe Nevada's BFP law is

preempted because of obstacle preemption, a position that fails because a conflict does not

"necessarily arise." *Incalza*, 479 F.3d at 1010. This is so because Plaintiffs admit that if FHFA

consents, then Fannie's DOT can be extinguished, reconciling federal law with Nevada law.

Resp., 2:23-24, 3:12-14, 4:10-12, 9:4-6, 17:3-4. Plaintiffs also allude to SFR's inability to be a

BFP because Association had a reason to conceal Fannie's interest. *Id.* at 18:26-28 n.9. Not a

single allegation in the Complaint bolsters this assertion. In reality, Plaintiffs' BFP ramblings are

nothing more than a last-minute attempt to amend their Complaint, something they cannot do

through a response. *Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123, 1145 (N.D. Cal.

2010). In the end, Nevada's BFP law is not preempted.

### F.   Plaintiffs Mishandle *McFarland*

Taking yet another departure from their penchant for following 1825(b)(2) precedent,

Plaintiffs disagree with the Fifth Circuit's *McFarland* case. Resp., 19:1-27 – 23:1-3. This is

regrettable because *McFarland* provides this Court with a construction of 4617(j)(3) that

promotes the constitutional avoidance doctrine. *McFarland* does so by determining that

1825(b)(2) is inapplicable to private entities, such as Association and SFR. *FDIC v. McFarland*,

243 F.3d 876, 886 (5th Cir. 2001). Notably, *McFarland*'s construction of 1825(b)(2) is

consistent with that law's legislative history, something Plaintiffs ignore entirely. *Id.* Such a

move is bewildering in light of Plaintiffs' contention that Congress "[i]n enacting HERA,

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

intended FHFA conservatorships and FDIC receiverships to be treated in the same fashion[.]" Resp., 7:2.

Instead, Plaintiffs claim *McFarland* departs from decisions that avowedly extended 1825(b)(2) to private entities. This is false. For example, in *GWN*, garnishment of FDIC funds occurred through Oklahoma's *courts*, *GWN*, 998 F.2d at 855, and as *McFarland* aptly noted *GWN* did not "address whether the scope of section 1825(b)(2) was restricted to liens held by state and local taxing authorities." *McFarland*, 243 F.3d at 886 n.40. Similarly, *Trustees of MacIntosh* concerned a homeowners' association's *judicial* foreclosure of FDIC property. *Trustees of MacIntosh v. FDIC*, 908 F.Supp. 58, 61 (D. Mass. 1995). *MacIntosh* also discussed a letter from the FDIC to the association. The correspondence stated that if the association had initiated judicial foreclosure before the FDIC foreclosed, then the association would have had "a lien superior to" the FDIC. *Id.* Suffice it to say, this observation rejects Plaintiffs' current positions. Regardless, a government actor (i.e. courts) was involved in *GWN* and *MacIntosh*. Contrastingly, the instant case involves a private entity's sale (Association) of a house to another private entity (SFR). In sum, Plaintiffs mishandle *McFarland*.

### G.   Fannie Lacks Standing

The Complaint avers FHFA "has succeeded by law to all of Fannie Mae's [property]," including the DOT. Compl., 7:24. Thus, Fannie lacks standing because it does not have a cognizable interest. In response, Plaintiffs quip Fannie "continues to exist as a private entity that can litigate in its own right." Resp., 23:11. Not so according to FHFA's regulations. Pursuant to 12 C.F.R. § 1237.3(a)(7), FHFA has "the **exclusive authority** to investigate and prosecute claims of any type on behalf of [Fannie], or to delegate to management of [Fannie] the authority to investigate and prosecute claims." Neither the Complaint nor Response indicates FHFA has "delegate[d] to management of [Fannie] the authority to . . . prosecute" the Complaint's claims. As a result, FHFA's own regulations reveal Fannie lacks standing.

### H.   Four Arguments are Unopposed

If arguments in a motion to dismiss are not contested, then they are conceded. *United States v. Castillo-Marin*, 684 F.3d 914, 922 (9th Cir. 2012) ("The government, again, did not

contest this argument and, thus, apparently concedes it."); *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (argument not addressed in answering brief waived). Here, Plaintiffs did not contest four of SFR's arguments: (i) FHFA is a government actor, (ii) doe pleading is improper, (iii) 4617(j)(3) is bereft of a procedure for requesting FHFA's consent, and (iv) FHFA deprived Association of property without due process of law. Mot. to Dismiss, 5:19-28 – 7:1-28, 7:26-28, 8:1-28 – 9:1-4, 9:25-27, 11:20-27; Association's Partial Joinder [Dkt. No. 34]. Consequently, these four arguments are conceded. *Castillo-Marin*, 684 F.3d at 922; *Clem*, 566 F.3d at 1182.

### III.   CONCLUSION

For the foregoing reasons and those articulated in SFR's Motion to Dismiss [Dkt. No. 32], this Court should dismiss the Complaint with prejudice under FRCP 12(b)(6).

RESPECTFULLY SUBMITTED this ___3rd___ day of April, 2015.

**HOWARD KIM & ASSOCIATES**

*/s/Jesse N. Panoff*_____
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA S. CLINE, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
1055 Whitney Ranch Dr., Suite 110
Henderson, Nevada, 89014
Telephone: (702) 485-3300
Facsimile:  (702) 485-3301
*Attorneys for SFR Investments Pool I, LLC*

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1

### CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that on this 3rd day of April, 2015, pursuant to FRCP 5, I served

3  via CM/ECF filing system, the foregoing Reply, to the following parties.

4  Asim Varma, Esq.

5  Asim_Varma@aporter.com
   Howard N. Cayne, Esq.

6  Howard.Cayne@aporter.com
   Michael A.F. Johnson, Esq.

7  michael.johnson@aporter.com
   Arnold & Porter LLP
   555 12th Street NW

8  Washington, DC 20004
   *Attorney for Federal Housing Finance Agency*

9

10  Leslie Bryan Hart, Esq.
    lhart@fclaw.com

11  Fennemore Craig, P.C.
    300 East Second Street, Suite 1510

12  Reno, Nevada 89501
    *Attorney for Federal Housing Finance Agency*

13
    Dana Jonathon Nitz, Esq.

14  dnitz@wrightlegal.net
    Ryan T. O'Malley

15  romalley@wrightlegal.net
    Wright, Finlay & Zak, LLP

16  5532 S. Ft. Apache Rd., Suite 110
    Las Vegas, Nevada 89148

17  *Attorney for Federal National Mortgage Association*

18  Ryan D Hastings, Esq.
    rhastings@leachjohnson.com

19  Leach Johnson Song & Gruchow
    8945 W. Russell Road

20  Las Vegas, NV 89148
    *Attorney for Sun City Aliante Community Association*

21
    Joseph P Garin, Esq.

22  NVECF@lipsonneilson.com
    Kaleb D. Anderson, Esq.

23  kanderson@lipsonneilson.com
    Lipson Neilson Cole Seltzer & Garin, P.C.

24  9900 Covington Cross Drive, Suite 120
    Las Vegas, NV 89144

25  *Attorney for Sun City Aliante Community Association*

26              */s/ Jesse N. Panoff*
                An Employee of Howard Kim & Associates

27

28

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301