Dana Jonathon Nitz, Esq. (SBN 0050)
Christina V. Miller, Esq. (SBN 12448)
WRIGHT, FINLAY & ZAK, LLP
7785 W. Sahara Ave., Suite 200
Las Vegas, Nevada 89117
Tel.: (702) 475-7964  Fax: (702) 946-1345
*dnitz@wrightlegal.net; cmiller@wrightlegal.net*
*Attorneys for Plaintiff Federal National Mortgage Association*

Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert III, Esq. (SBN 11728)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel.: 775-788-2228   Fax: 775-788-2229
*lhart@fclaw.com*; *jtennert@fclaw.com*

(Admitted *Pro Hac Vice*)
Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel.: (202) 942-5000   Fax: (202) 942-5999
*Asim.Varma@aporter.com; Howard.Cayne@aporter.com*;
*Michael.Johnson@aporter.com*
*Attorneys for Plaintiff Federal Housing Finance Agency*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOUSING FINANCE AGENCY, as Conservator of Fannie Mae, <br><br>         Plaintiffs, <br><br> vs. <br><br> SFR INVESTMENTS POOL 1, LLC, <br><br>         Defendant. | Case No.: 2:14-cv-02046-JAD-PAL <br><br><br> **FHFA AND FANNIE MAE'S OPPOSITION TO SFR'S MOTION FOR SUMMARY JUDGMENT** |

11486063.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

STATEMENT OF UNDISPUTED FACTS .......................................................................1

PROCEDURAL HISTORY................................................................................................1

ARGUMENT ......................................................................................................................2

I.      The Federal Foreclosure Bar Protected the Deed of Trust at the Time of the HOA Sale, When the Beverly Loan Was Not Securitized ...............................2

II.     Securitization Is Irrelevant to the Protection of the Federal Foreclosure Bar.........................3

        A.      Fannie Mae Is the Owner of Its Securitized Loans .......................................3

        B.      No Provision of HERA Suggests that the Conservator Does Not Succeed to Fannie Mae's Ownership of Securitized Loans ...........................5

                1.      None of SFR's "Four Reasons" for its Mantra that "Holding Is An Exception to Succession" Withstand Scrutiny ...................................6

                2.      HERA Requires Compliance with the Trust Agreements, Which Permit Removal of Mortgage Loans from the Trust for All Parties' Benefit..............9

CONCLUSION ..................................................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Defendant SFR's Motion for Summary Judgment, focusing entirely on the issue of whether the Beverly Loan was "ever" securitized, fails for two reasons.[1]  First, there is only one point in time that is relevant to determine whether Fannie Mae had a property interest protected from extinguishment by the Federal Foreclosure Bar: July 26, 2013, the date of the HOA Sale that SFR claims extinguished Fannie Mae's Deed of Trust and conveyed to SFR a free and clear interest in the Property.  But there is no genuine dispute as to whether the Beverly Loan was securitized at the relevant time of the HOA sale; it was not.  Second, as a matter of law, Fannie Mae retains ownership of a loan when it is securitized, and securitization in no way impacts the Conservator's succession to that interest or the protection of the Federal Foreclosure Bar.  Thus, both the undisputed facts and the prevailing law defeat SFR's Motion.

SFR's Motion, filed on the same day that Plaintiffs filed a motion for summary judgment pursuant to the Court's February 25 Order, ignores the Court's dissatisfaction with the multiple, duplicative filings previously filed by SFR in this case.  *See* Feb. 25 Order at 4-5 (Dkt. No. 106).  Indeed, SFR's Motion serves only to create a parallel track of additional briefs addressing a subject—the effect of securitization on the preemptive effect of the Federal Foreclosure Bar—that can be adequately briefed in the context of Plaintiffs' Motion for Summary Judgment.  Accordingly, Plaintiffs will attempt to streamline this opposition by incorporating, where possible, the arguments regarding securitization already made in their opening brief.  *See* Pls. MSJ at 9-17 (Dkt. No. 107).

## STATEMENT OF UNDISPUTED FACTS

Plaintiffs incorporate the statement of undisputed facts set forth in their Motion for Summary Judgment and the documents attached thereto.  *See* Pls. MSJ at 1-3.

## PROCEDURAL HISTORY

Plaintiffs incorporate the procedural history set forth in their Motion for Summary Judgment.  *See* Pls. MSJ at 4-5.  This procedural history belies SFR's mischaracterization of Plaintiffs' efforts to limit discovery, a subject on which SFR dwells though it is has no bearing on the merits of summary judgment.  *See* SFR MSJ at 5-8.

---

[1]     Capitalized terms are defined as in Plaintiffs' Motion for Summary Judgment.

11486063.1

Contrary to SFR's contentions, Plaintiffs did not attempt to hide facts concerning securitization because they believed it harmful to their position; rather, Plaintiffs attempted—and largely succeeded—to limit discovery to avoid disproportionate discovery burdens on matters with no legal bearing on the merits.  Indeed, soon after the Court denied SFR's Motion to Dismiss and the discovery period restarted, Plaintiffs tendered an interrogatory response stating that the Beverly Loan was not securitized at the only time relevant to the merits of Plaintiffs' claims—the date of the HOA Sale.  Magistrate Judge Leen never ruled that Plaintiffs' subsequent request to limit further discovery was in bad faith; instead, she restricted the additional discovery SFR could take to a single yes-or-no supplemental interrogatory response and a single two-hour deposition.  Plaintiffs timely complied, stating that the Beverly Loan had been securitized previously but had been removed from the securitization trust before the HOA Sale at issue in the case.  As Plaintiffs anticipated, this irrelevant fact has spawned contentious discovery and unnecessary briefing relating to securitization, not only in this action but many others.

Plaintiffs' efforts to limit discovery were especially necessary within the larger context of this litigation, where FHFA, the Enterprises, and their servicers are engaged in hundreds of cases in federal and state courts where SFR and other similarly situated purchasers of property seek declarations that the Enterprises' property interests were extinguished at HOA foreclosure sales, and more are certain to follow.  Indeed, Fannie Mae and Freddie Mac each own hundreds of thousands of loans in Nevada.  Requiring that FHFA, the Enterprises, and their servicers be subject to legally irrelevant discovery in each case would increase litigation costs for all parties and add to the burden of this District and the state courts as they resolve these hundreds of cases.  That would conflict directly with the manner in which the Federal Rules of Civil Procedure are to be implemented: "to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

## ARGUMENT

### I.    The Federal Foreclosure Bar Protected the Deed of Trust at the Time of the HOA Sale, When the Beverly Loan Was Not Securitized

At the time of the HOA Sale, the Beverly Loan was not securitized.  As discussed in Plaintiffs' Motion for Summary Judgment, there is nothing in the evidence suggesting otherwise;

11486063.1

1    indeed, the undisputed evidence shows that the loan had been removed from securitization more

2    than two years before the HOA Sale occurred.  *See* Pls. MSJ at 1-2, 9.  Instead, the undisputed

3    material evidence establishes conclusively that, at the time of the HOA Sale, the Beverly Loan

4    resided in Fannie Mae's portfolio of loans.

5           SFR repeatedly trumpets the fact that it learned in discovery that the Beverly Loan "was

6    'held in trust' by Fannie."  SFR MSJ at 2, 5.  But each time SFR quotes the deposition transcript or

7    Plaintiffs' supplemental interrogatory responses, it fails to mention that those responses consistently

8    support that the time when the Loan "was 'held in trust'" was *before*, not during, the time of the

9    HOA Sale.  *See id.*  SFR provides no rationale for its omission of this fact, nor does SFR explain

10   why it is not material to its securitization argument that the Beverly Loan was *not* securitized at the

11   time when SFR claims the Deed of Trust was extinguished.[2]

12          Securitization is irrelevant to the disposition of this case because the Beverly Loan was not

13   securitized at the time of the HOA Sale.  This alone should end any inquiry into securitization.

14   **II.    Securitization Is Irrelevant to the Protection of the Federal Foreclosure Bar**

15          **A.      Fannie Mae Is the Owner of Its Securitized Loans**

16          The Federal Foreclosure Bar would prevent extinguishment of Fannie Mae's interest even if

17   the Beverly Loan had been securitized at the time of the HOA Sale, which it was not.  As described

18   in Plaintiffs' Motion for Summary Judgment, Fannie Mae does not securitize loans by conveying

19   them to a separate legal entity, but instead bundles loans into a common law trust for which Fannie

20   Mae itself is trustee.  *See* Pls. MSJ at 10-11.  This business practice is explained by the declarations

21   of Fannie Mae employees Eric Maltese and Arthur Johnson, who describe Fannie Mae's purchase

22   of loans for securitization and its securitization process, respectively.  *See* Declaration of Arthur

23   Johnson ¶¶ 3-6 (Dkt. No. 107-4); Declaration of Eric Maltese ¶¶ 5-9 (Exhibit A).  The contracts that

24   govern the sales of mortgage loans to Fannie Mae incorporate the Fannie Mae Single-Family

---

25   [2]      While SFR argues that HERA prevents the Conservator from removing mortgages from a
26   securitization trust (an argument that fails for the reasons described *infra* at 9-10), SFR does not
     contend that the Beverly Loan, in particular, was never removed from the pool in which it had been
27   securitized.  Indeed all the evidence confirms that the Beverly Loan was removed from its pool two
     years prior to the HOA Sale pursuant to Fannie Mae's obligations under the applicable trust
28   agreement.

3

1   Selling Guide ("Selling Guide"), which provides that "[e]very delivery of mortgages . . . whether

2   whole loan or for securitization, is expressly intended, by both Fannie Mae and the lender, to be the

3   lender's true, absolute, and unconditional sale *to Fannie Mae* of the mortgages."  Selling Guide at

4   A2-1-02 (Exhibit B) (emphasis added).[3]  Accordingly, the trust agreements that govern Fannie

5   Mae's management of mortgage loans in securitization trusts describe Fannie Mae's ownership of

6   those loans; those instruments detail how and when Fannie Mae has the option, and sometimes the

7   obligation, to remove those mortgage loans from the trust for the benefit of the certificate-holders,

8   borrowers, and Fannie Mae itself.  *See* Pls. MSJ at 10, 15-16; Johnson Decl. Ex. A §§ 2.4-2.7.

9   These agreements are consistent with the governing law that recognizes that the trustee of a

10  common law trusts maintains ownership of the assets in that trust.  *See* Pls. MSJ at 10-11.

11      SFR suggests that the certificate-holders of the securitization trusts, not Fannie Mae, own

12  the mortgage loans.  This would surely come as a surprise to certificate-holders, who (like owners

13  of shares in a corporation), have a claim on only the financial proceeds of the underlying assets, not

14  on the assets themselves.  In other words, SFR's argument would mean that a purchaser of MBS

15  certificates could exercise rights of ownership over the loans such as demanding direct payment

16  from the borrower, foreclosing in their own names, or selling the mortgages to another entity.  SFR

17  cites no authority suggesting that certificate-holders have such rights, because they simply do not—

18  such ownership rights remain with the trustee, *i.e.*, Fannie Mae.  To prop up its implausible

19  suggestion that the certificate holders nevertheless own the securitized loans, SFR cites to a

20  provision of HERA entitled "Holding of mortgages," which provides that:

21          [a]ny mortgage, pool of mortgages, or interest in a pool of mortgages
            described in clause (i) shall be held by the conservator or receiver appointed
22          under this section for the beneficial owners of such mortgage, pool of
            mortgages, or interest in a pool of mortgages in accordance with the terms of the agreement creating
23          such trust, custodial, or other agency arrangement.

24  12 U.S.C. § 4617(b)(19)(B)(ii).  Notably, SFR never quotes the whole provision, leaving the false

25

26  [3]     The Selling Guide is introduced by the Declaration of Eric Maltese, and is available publicly
    in its entirety at https://www.fanniemae.com/content/guide/selling/.  Prior versions of the Selling
27  Guide, including that current at the time of the sale of the Beverly Loan to Fannie Mae in December
    2006, include similar provisions.  *See* 2006 Fannie Mae Single-Family Selling Guide § I,201.03,
28  available at the AllRegs database accessible from www.fanniemae.com/singlefamily/guides.

4

impression that all mortgages held in trust by Fannie Mae are held for third parties who are the "beneficial owners of such mortgage." As the entire provision makes clear, mortgages that Fannie Mae holds in trust may instead be held for third parties who are instead "beneficial owners" of a "pool of mortgages" or an "interest," depending on the "terms of the [trust] agreement." As described above and in Plaintiffs' Motion, Fannie Mae's securitization process ensures that it owns the mortgages it places in securitization trusts, while certificate-holders own interests by virtue of their purchase of certificates that entitle them to a contractually specified portion of the payments borrowers make on the mortgages in the pool. *See* Pls. MSJ at 10-11; Johnson Decl. ¶¶ 3-5.

SFR's interpretation also ignores the definition of "beneficial owner," which is "a person who does not have legal title … but who has an underlying interest." *Agile Software Corp. v. Merrill Lynch & Co.*, 174 F. Supp. 2d 1032, 1034 (N.D. Cal. 2001); *cf. Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1115 n.6 (9th Cir. 2015) (under copyright law, "[b]eneficial owners include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees" (citation omitted)). Thus, Section 4617(b)(19)(B)(ii)'s identification of the third parties for whom Fannie Mae holds securitized mortgage loans as "beneficial owners" is consistent with certificate-holders' interest in a pool without legal ownership of the individual mortgage loans in that pool. Thus, even if the certificate-holders were the "beneficial owners" of the mortgage loans themselves, this would not disturb Fannie Mae's legal ownership of the mortgage loans, as the cases Plaintiff cited in the Motion for Summary Judgment confirm. *See* Pls. MSJ at 10-11(citing *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 692 (7th Cir. 2010) (while trustee "has duties to the trust's beneficiaries (the investors)" it remains the "legal owner of the trust's assets")).

Because Fannie Mae maintains ownership of the pooled mortgage loans as trustee, the loans remain property of Fannie Mae and the Federal Foreclosure Bar protects them from extinguishment.

### B. No Provision of HERA Suggests that the Conservator Does Not Succeed to Fannie Mae's Ownership of Securitized Loans

In enacting HERA, Congress created FHFA and authorized the conservatorship to protect and stabilize Fannie Mae and Freddie Mac in order to lessen the severity of the housing crisis. But

SFR implausibly argues that HERA gives no protection at all to the mortgage loans Fannie Mae holds in securitization trusts, which are a very significant portion of Fannie Mae's assets and central to its statutory purpose of creating and supporting the nationwide secondary mortgage market. Equally implausible is SFR's contention that its state-law enabled extinguishment of Fannie Mae's property interests is facilitated by a particular provision of HERA, 12 U.S.C. § 4617(b)(19)(B), that was plainly intended to give even greater protection to Fannie Mae's securitized mortgage loans by preventing them from being used to satisfy the claims of the Enterprises' creditors or in other ways not contemplated by the trust agreements.

As Plaintiffs discussed in their opening brief, SFR's argument fails not only as a matter of common sense, but also as a matter of statutory interpretation. SFR's interpretation assumes that when HERA provides that the Conservator will "hold" mortgage loans that are in trust pursuant to the terms of the relevant trust agreements entered into by Fannie Mae, the Conservator has not or cannot "succeed" to the ownership of such mortgage loans. SFR repeats the mantra that "holding is an exception to succession" without any plausible basis for construing those two words as opposites. As Plaintiffs argued in their opening brief, they are not. *See* Pls. MSJ at 11-18.

SFR's Motion for Summary Judgment mostly repeats the arguments SFR asserted in its prior briefing, and thus is therefore mostly addressed by Plaintiffs' Motion for Summary Judgment. But SFR adds two elaborations on its securitization argument, neither of which support its interpretation of HERA as a vehicle to facilitate SFR's extinguishment of the Enterprises' property.

### 1. None of SFR's "Four Reasons" for its Mantra that "Holding Is An Exception to Succession" Withstand Scrutiny

SFR's elaboration on the "four reasons" why Section 4617(b)(19)(B)'s provisions should be read as preventing FHFA's succession to Fannie Mae's ownership of mortgages held in trust largely relies on the creation of false parallels and opposites. *See* SFR MSJ at 22-26.

*First*, SFR postulates that the sections of HERA concerning the Conservator's succession to Fannie Mae's assets and the management of mortgages held in trust were intended by Congress to be read together and as opposites because they mirror each other with a parallel structure. But a plain reading of these provisions confirms that they are not parallel, opposite, or even related.

Section 4617(b)(2)(A) reads, in its entirety:

> The Agency shall, as conservator or receiver, and by operation of law, immediately succeed to—(i) all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity; and (ii) title to the books, records, and assets of any other legal custodian of such regulated entity.

Section 4617(b)(19)(B)(i) reads, in its entirety:

> Any mortgage, pool of mortgages, or interest in a pool of mortgages held in trust, custodial, or agency capacity by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors generally, except that nothing in this clause shall be construed to expand or otherwise affect the authority of any regulated entity.

Finally, Section 4617(b)(19)(B)(ii) reads, in its entirety:

> Any mortgage, pool of mortgages, or interest in a pool of mortgages described in clause (i) shall be held by the conservator or receiver appointed under this section for the beneficial owners of such mortgage, pool of mortgages, or interest in accordance with the terms of the agreement creating such trust, custodial, or other agency arrangement.

There is no way to read Section 4617(b)(2)(A), regarding succession, and the two later provisions, regarding mortgages held in trust, to be parallel. SFR's argument that Congress drafted these as parallel provisions with three similar "structural characteristics" is so broad that it could be applied to most sentences in the English language: just because one can replace the subject of a sentence with another subject, the verb of a sentence with another verb, and the object of that verb with another object, does not make those sentences parallel or related. Indeed, each of these provisions is more complex that a simple subject-verb-object sentence, and in different ways, further undermining SFR's proposed structural parallels.

*Second*, as discussed in Plaintiffs' Motion for Summary Judgment, the use of the word "general" in the header of Section 4617(b)(19) is not more indicative of actual statutory meaning than the words of the provision themselves, which articulate specific, limited "exceptions," and never suggest a general negation of all FHFA's powers. *See* Pls. MSJ at 12-13. Further undermining SFR's sweeping argument that the "General Exceptions" of Section 4617(b)(19) expansively cancel the "General Powers" articulated in Section 4617(b)(2), *see* SFR MSJ at 23-34, is the fact that dozens of provisions on a variety of issues related to receiverships and

conservatorships are placed in between and around these provisions. Many of the intervening provisions—specifically, Section 4617(b)(3) through Section 4617(b)(9)—detail how FHFA, if appointed as receiver, should handle and resolve claims of Fannie Mae's creditors. *See, e.g.*, 12 U.S.C. § 4617(b)(3) (entitled "Authority of receiver to determine claims"), § 4617(b)(9) (entitled "Payment of claims"). As the focus of Section 4617(b)(19)(b) is on preventing mortgages held in trust from being used to satisfy creditor claims or in other ways incompatible with Fannie Mae's obligations under the trust agreements, it is more plausible that the "exceptions" articulated therein are exceptions to the receiver's powers and duties in handling creditor claims. There is no support for reading those specific suggestions to eliminate any rights of FHFA as Conservator in the mortgages in securitization trusts.

*Third*, the word pairs in the provisions regarding succession and mortgages held in trust that SFR contends are opposites are in fact complementary. As described above, a mortgage loan may be an asset of Fannie Mae while a third party is concurrently the beneficial owner of (1) an interest in the associated mortgage loan pool; (2) the associated mortgage loan pool itself; or even (3) the mortgage loan itself.[4] *See supra* at 4-5. Under Fannie Mae's trust agreements, certificate-holders own interests in the mortgage loan pools, which is compatible with Fannie Mae retaining ownership of the mortgage loans themselves. *See id.*

*Fourth*, it is unclear how SFR's discussion of Section 4617(b)(19)(B)(iii) furthers its argument that FHFA as Conservator does not succeed to the mortgages held in trust. *See* SFR MSJ at 25-26. After all, if the Conservator does not succeed to the mortgages held in trust, as SFR contends, then how can it be subject for damages relating to those mortgages? In any event, this limited provision, which merely instructs the Conservator to "estimate[]" its liability *in damages* related to the mortgages held in trust, in accordance with the FHFA Director's regulations, does not

---

[4]     Similarly, it is well established that "owning" and "holding" a negotiable instrument are two separate concepts under the UCC and Nevada law: "the status of holder merely pertains to one who may enforce the debt and is a separate concept from that of ownership." *Thomas v. BAC Home Loans Servicing, LP*, No. 56587, 2011 WL 6743044, at *3 n.9 (Nev. Dec. 20, 2011) (quoting Nev. Rev. Stat. 104.3301(2) and citing UCC § 3-203 cmt. 1). Thus, provisions of HERA discussing how the Conservator should *hold* mortgage loans in securitization are discussing a separate status than the Conservator's role as *owner* of the mortgage loans as successor to Fannie Mae's assets.

11486063.1

support SFR's extrapolation that it also exposes the Conservator's property to foreclosure, attachment, or the other actions that the Federal Foreclosure Bar prevents.  Liability for damages, on the one hand, and foreclosure, attachment, garnishment, etc. on the other, are not the same.[5]

### 2.  HERA Requires Compliance with the Trust Agreements, Which Permit Removal of Mortgage Loans from the Trust for All Parties' Benefit

As discussed in Plaintiffs' Motion for Summary Judgment, SFR's interpretation of Section 4617(b)(19)(B) to require the Conservator to keep mortgages in securitization trusts indefinitely misreads the statute.  *See* Pls. MSJ at 11-17.  SFR's Motion for Summary Judgment further reveals how its interpretation relies on adding words to the statute that are not there, as SFR adds the words "remain" and "continue" in quoting the phrase "mortgages held in trust," although neither word, nor anything similar, appears in the statute itself.  *See* SFR MSJ at 26-27.  SFR's entreaty that the Court look to the surrounding provisions for context also fails.  *See id.*  None of the provisions of Section 4617(b)(19)(B) direct that mortgages held in trust remain in trusts indefinitely, but rather direct that those mortgage loans not be used to satisfy creditor claims and require that the Conservator abide by the trust agreements governing the securitization trusts.

SFR argues that the practical effect of Plaintiffs' plain reading of HERA would create a "loophole" through which mortgage loans previously held in trust could be removed and then used to satisfy creditor claims.  *See* SFR MSJ at 27.  But it does not contravene the congressional aim of preserving the value of the certificate-holders' interests if mortgages held in trust are removed under the terms of the trust agreements.  The trust agreements provide that mortgage loans may be removed from trusts only under certain conditions, and only if Fannie Mae makes a corresponding infusion of cash into the trust or substitutes that mortgage loan with another that satisfies certain criteria.  *See*, *e.g.*, Johnson Decl. Ex. A §§ 2.5(4), 2.6 -2.7.  After that exchange has been made, it is irrelevant to the certificate-holders if Fannie Mae offers a loan modification to the borrower of that

---

[5]     Contrary to SFR's arguments, Plaintiffs do not contend that 12 U.S.C. § 4617(f) protects the Conservator from monetary damages.  Rather, that provision limits a court's ability to "restrain or affect the exercise of powers or functions of the Agency"—in other words, it bars claims against the Conservator for injunctive relief, mandamus, and other judicial actions that would require some action of the Conservator.  Section 4617(b)(19)(B)(iii), which only discusses damages, has no bearing on that Section 4617(f).

11486063.1

mortgage loan, or if Fannie Mae forecloses on that mortgage loan.  Indeed, that is the reason why the trust agreements permit or require mortgage loans to be removed from the trust under certain conditions.  Similarly, after an exchange has been made to remove a mortgage loan from a trust, it is irrelevant to the certificate-holders if that mortgage loan is then used to satisfy creditor claims, as the pool's value is maintained with an infusion of cash or a substitute mortgage loan.  SFR's purported "loophole" is just the trust agreements managing the rights and interests of Fannie Mae, the certificate-holders, and the borrowers.

It is SFR's interpretation, not Plaintiffs', that would lead to absurd results; requiring mortgage loans to remain in trusts indefinitely without regard to the performance of those mortgage loans or the duties of the trustee, would diminish the value of the securitization trusts to certificate-holders, hamper Fannie Mae's ability to manage the mortgage loans, and harm borrowers who would not be able to take advantage of loan modification opportunities only available when their mortgages are not securitized.  *See* Pls. MSJ at 15-17.  SFR's interpretation would harm all those entities that HERA was designed to protect, and instead benefit entities like SFR that the Federal Foreclosure Bar guards against—entities seeking a windfall by using state law to extinguish the Enterprises' property interests.  SFR's argument fails both as a matter of law and a matter of policy.

///
///
///
///
///
///
///
///
///
///
///
///

11486063.1

## CONCLUSION

For the foregoing reasons and those discussed in Plaintiffs' Motion for Summary Judgment, Plaintiffs respectfully request that the Court deny SFR's Motion for Summary Judgment

DATED this 4th day of April, 2016.

**WRIGHT, FINLAY & ZAK, LLP**

_____/s/ Dana Jonathon Nitz_____
Dana Jonathon Nitz, Esq. (SBN 0050)
Christina V. Miller, Esq. (SBN 12448)
7785 W. Sahara Ave., Suite 200
Las Vegas, Nevada 89117
Tel.: (702) 475-7964  Fax: (702) 946-1345
*dnitz@wrightlegal.net*;
*cmiller@wrightlegal.net*

*Attorneys for Plaintiff Federal National Mortgage Association*

**FENNEMORE CRAIG, P.C.**

_____/s/ Leslie Bryan Hart_____
Leslie Bryan Hart, Esq. (SBN 4932)
John D. Tennert III, Esq. (SBN 11728)
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel.: 775-788-2228   Fax: 775-788-2229
*lhart@fclaw.com; jtennert@fclaw.com*
and
ARNOLD & PORTER LLP
(Admitted *Pro Hac Vice*)
Asim Varma, Esq.
Howard N. Cayne, Esq.
Michael A.F. Johnson, Esq.

*Attorneys for Plaintiff Federal Housing Finance Agency*

11486063.1

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on the 4th day of April, 2016, a true and correct copy of **FHFA AND FANNIE MAE'S OPPOSITION TO SFR'S MOTION FOR SUMMARY JUDGMENT** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case.  If electronic notice is not indicated through the court's e-filing system, then a true and correct paper copy of the foregoing document was delivered via U.S. Mail.

Diana S. Cline Ebron     diana@KGElegal.com,

Jacqueline A. Gilbert   Jackie@KGElegal.com

Jason G. Martinez     jmartinez@weildrage.com

Jesse Panoff jesse@KGElegal.com

Neil B Durrant ndurrant@weildrage.com

Ryan T. O'Malley     ryan.omalley@buckleymadole.com

              /s/ Pamela Carmon
              An Employee of Fennemore Craig, P.C.

11486063.1