1   HOWARD C. KIM, ESQ. (SBN 10386)
    E-mail: howard@KGElegal.com
2   DIANA CLINE EBRON, ESQ. (SBN 10580)
    E-mail: diana@KGElegal.com
3   JACQUELINE A. GILBERT, ESQ. (SBN 10593)
    E-mail: jackie@KGElegal.com
4   JESSE N. PANOFF, ESQ. (SBN 10951)
    E-mail: jesse@KGElegal.com
5   KIM GILBERT EBRON
    7625 Dean Martin Drive, Suite 110
6   Las Vegas, Nevada 89139
    Telephone: (702) 485-3300
7   Facsimile:  (702) 485-3301
    *Attorneys for SFR Investments Pool 1, LLC*

8

9
                            **UNITED STATES DISTRICT COURT**
                                **DISTRICT OF NEVADA**
10

11   FEDERAL NATIONAL MORTGAGE          | **Case No.: 2:14-cv-02046-JAD-PAL**
     ASSOCIATION, a government-sponsored |
     entity; FEDERAL HOUSING FINANCE    | **SFR INVESTMENTS POOL 1, LLC's**
12   AGENCY, as Conservator of Fannie Mae, | **RESPONSE TO PLAINTIFFS' MOTION**
                                         | **FOR SUMMARY JUDGMENT [DKT. NO.**
13                      Plaintiffs,      | **107]**
     vs.
14
     SFR INVESTMENTS POOL 1, LLC, a
15   Nevada Limited Liability Company; SUN
     CITY ALIANTE COMMUNITY
16   ASSOCIATION, a Nevada Non-Profit
     Corporation; DOES I through X, inclusive; and
17   ROE CORPORATIONS I through X,
     inclusive,
18
                        Defendants.
19
                        **MEMORANDUM OF POINTS & AUTHORITIES**
20
                          **I.      INTRODUCTION**
21

22       A litigant's case is only as good as her evidence. This is especially true for summary

23   judgment because the movant's evidence must be "'so powerful that no reasonable jury would be

24   free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (internal citation

25   omitted). Here, Plaintiffs' evidence, in support of their Motion for Summary Judgment, is not so

26   "powerful." Far from it; Plaintiffs' evidence is either disputed or "blatantly contradicted by the

27   record so that no reasonable jury could believe it . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

28       For example, Plaintiffs boast that "it is undisputed" that the mortgage was not "held in

     trust" on July 26, 2013, the day that Association sold the house to SFR. Dkt. No. 107, 9:19. This

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   is wrong. Specifically, John Curcio's deposition testimony, and the "Notice of Default & Election

2   to Sell Under Deed of Trust," prove that the mortgage *was* "held in trust" when Association sold

3   the house to SFR (i.e. July 26, 2013).[1] Ex. A, 51:7-15; Ex. B, 2. During his deposition, Mr. Curcio

4   testified that the mortgage was taken out of trust approximately ninety days after the borrower

5   defaulted on her mortgage. Ex. A, 51:15. According to the Notice of Default, the borrower

6   defaulted on July 1, 2013. Ex. B, 2. Based on Mr. Curcio's testimony, the mortgage was taken out

7   of trust approximately ninety days after July 1, 2013, well after Association's July 26, 2013, sale.

8   Dkt. No. 108-4, 1 (SFR Foreclosure Deed Upon Sale).

9   - Default: July 1, 2013.

10   - Association's sale: July 26, 2013.

11   - Mortgage allegedly taken out of trust: approximately ninety days after July 1, 2013.

12   Therefore, Mr. Curcio's deposition testimony and the Notice of Default are evidence that the

13   mortgage was "held in trust" when Association sold the house to SFR. Plaintiffs' so-called

14   evidence to the contrary is "blatantly contradicted by the record . . . ." *Scott*, 550 U.S. at 380. The

15   same holds for the "cryptic" printouts that are attached to Mr. Curcio's declaration. *LN Mgmt. LC*

16   *Series 5271 Lindell v. Estate of Piacentini*, No. 2:15–cv–00131–JAD–NJK, 2015 WL 6445799, at

17   *2 (D. Nev. Oct. 8, 2015).

18   The "cryptic" printouts allegedly come from Fannie's Servicer & Investor Reporting

19   platform ("SIR"), a system that Plaintiffs revere but cannot fully explain. Though Plaintiffs have

20   yet to describe what all of the abbreviations in SIR mean, this much is clear: SIR is more

21   disappearing act than it is business record, containing several indications of "a lack of

22   trustworthiness." FRE 803(6)(E). Plaintiffs' first Motion for Summary Judgment included a

23   declaration from Mr. Curcio. Dkt. No. 69-1. Three SIR tabs were attached to his declaration:

24   Origination, Acquisition, and Property. Dkt. No. 69-1, Ex. A, 5-7. The Origination page identified

25   November 1, 2006, as the date that the Note was signed. *Id.* at 5. This date conflicted with the

26   

27   

28   

---

[1] Then again, Congress intended that if a mortgage is "held in trust," then that mortgage "shall" remain "in trust" because FHFA "shall" continue to hold that mortgage "in trust" for "the beneficial owners of such mortgage," 4617(b)(19)(B)(ii), who consist of "any person other than" Fannie. 4617(b)(19)(B)(i).

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

Deed of Trust, which indicated that the Note was signed on November 17, 2006. Dkt. No. 70-1, Ex. 1, 2:¶F. During his deposition, Mr. Curcio could not explain this discrepancy. Ex. A, 70:5-25 – 71:1. And so, Plaintiffs made the Origination Tab disappear; they did not attach it to Mr. Curcio's second declaration in support of their second Motion for Summary Judgment. Dkt. No. 107-2, Ex. A. Additional disappearing acts take place in SIR's so-called Loan Activity History ("LAH").

The LAH seemingly contains nine columns: Transaction ID, Reversal Transaction ID, Effective Date, Process Date, Activity Period, Reported UPB ($), Interest Difference ($), Action Code – Action Description, and Action Date. Dkt. No. 107-2, Ex. A, 8-17. But all is not as it seems with the LAH. On one page, the "Action Date" column disappears, and a new column materializes entitled "Applied Interest ($)." *Id.* at 11. This new column then ceases to exist on the remaining LAH pages, and "Action Date" reappears. *Id.* at 8-10, 12-17.



Also, there are hidden columns, creeping out from behind some of the visible headings. The below graphic is from the second LAH page attached to Mr. Curcio's declaration. The arrow points to a



mystery column peeking from behind the "Reported UPB ($)" column. *Id.* at 8. Worse yet, LAH pages—attached to Mr. Curcio's declarations filed in other cases—have different columns than those displayed in this case. In some Nevada state court lawsuits, four columns follow "Reported UPB ($)" that are nowhere to be found here:



Ex. C, 7; Ex. D, 8. Meanwhile, in this case, three (rather than four) different columns follow "Reported UPB ($)." Dkt. No. 107-2, Ex. A, 8.

![Reported UPB ($) ($) Interest Difference ($) Action Code - Action Description Action Date]

Ultimately, the LAH is easily manipulated, a malleable magic show where columns disappear and

sometimes reappear without explanation. Mr. Curcio's declaration has similar flaws.

Mr. Curcio's declaration contradicts statements that he made to Judge Mahan, Judge Du, and Judge Boulware. Here, Mr. Curcio's declaration claims that "had Fannie . . . ceased to own this Loan . . . information reflecting that would appear under the 'Action Code – Action Description' column on the" LAH. Dkt. No. 107-2, 3:6-8 (¶8). So, if a notation is in the "Action Code – Action Description" column, then Fannie does not own the mortgage. *Id.* One such notation is "70 – Fcl – Liq/Held for Sale." Ex. E, 6; Ex. F, 6; Ex. G, 4.



According to Mr. Curcio's declaration, this notation means that Fannie does not own a mortgage because it is "information under the" Action Code – Action Description column. Dkt. No. 107-2, 3:6-8 (¶8). Yet, Mr. Curcio told Judge Mahan, Judge Du, and Judge Boulware the opposite. In cases before these judges, Plaintiffs used LAHs that included the "70 – Fcl – Liq/Held for Sale" notation under the "Action Code – Action Description" column. Despite containing this notation, Mr. Curcio declared that Fannie still owned the mortgages in those cases. Ex. E, 3:5-8 (¶4), 6; Ex. F, 2:24-27 – 3:1 (¶4), 6; Ex. G, 2:3-5 (¶4), 4. More contradictions and inconsistencies plague Mr. Curcio's testimony, all of which are reviewed below. By way of a preview, his testimony disproves Fannie's alleged purchase and ownership of the mortgage.

At bottom, this Court should deny Plaintiffs' Motion for Summary because Plaintiffs' evidence is either disputed or "blatantly contradicted by the record so that no reasonable jury could believe it . . . ." *Scott*, 550 U.S. at 380. Besides, there is one insurmountable obstacle to Plaintiffs obtaining summary judgment, an undisputed fact that Plaintiffs have called a "silver bullet" to their claims: The mortgage was "held in trust." Dkt. No. 99-2, 15:4-7. This defeats Plaintiffs' Motion because it precludes Plaintiffs from "being entitled to judgment as a matter of law." 56(a).

## II.   LR 56-1 STATEMENT OF UNDISPUTED FACTS

**1.**   A deed of trust ("DOT") between Maureen V. Beverly ("Beverly") and Pulte Mortgage, LLC was recorded on November 22, 2006, regarding a house at 7445 Crested Quail Street, North Las Vegas, Nevada 89084. Dkt. No. 70-1, Ex. 1, 1. The house is governed by Association's CC&Rs. Dkt. No. 70-1, Ex. 1, 16:¶2.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**2.** After Beverly stopped paying her Association dues, Association sold the house to SFR at a July 26, 2013, public auction. Dkt. No. 1, 6:6-10 (¶31); Dkt. No. 108-4, 1. Association's sale was through its CC&Rs and NRS Chapter 116. Dkt. No. 108-4, 1. Pursuant to this transaction, and under Nevada law, SFR obtained state-recognized property interests. Dkt. No. 1, 6:6-10 (¶31); Dkt. No. 41, 10:24-27 (n.4). FHFA reviewed Association's sale and decided not to consent to extinguishment. Dkt. No. 1, 6:17-18 (¶34); Dkt. No. 41, 2:22-23.

**3.** Plaintiffs "[a]gree that they bear the burden of showing a property interest that [4617(j)(3)] could protect." *Kielty v. Fed. Home Loan Mortg. Corp.*, No. 2:15–cv–00230–RCJ–GWF (D. Nev. 2015) (Dkt. No. 44, 4:15-16) (filed Nov. 23, 2015).

**4.** On February 1, 2016, Mr. Curcio was deposed, and testified that the mortgage was "held in trust."[2] Dkt. No. 108-1, 44:15-16. Plaintiffs' supplemental interrogatory responses admitted that the mortgage was "held in trust." Dkt. No. 108-2, 2:3-6; Dkt. No. 108-3, 2:12-15.

### III.   LR 56-1 STATEMENT OF DISPUTED FACTS & SFR'S OBJECTIONS[3]

**1.** **SFR Disputes & Objects to Assertion 2:** Mr. Curcio's second declaration and the LAH contradict, and thus, dispute Assertion 2 because they establish that Fannie did not purchase the mortgage on December 1, 2006. Ex. A, 51:7-15; Ex. B, 2. And, SFR objects to Assertion 2 because it is based on hearsay. The SIR printouts do not satisfy the 803(6) exception to hearsay because: (i) Mr. Curcio is not a "qualified witness," (ii) the SIR records regarding Fannie's purported purchase of the mortgage were not made "at or near the time of the transaction" (i.e. December 1, 2006), and (iii) there is evidence that the SIR printouts are untrustworthy. 803(6)(E).

**2.** **SFR Disputes & Objects to Assertion 3:** Mr. Curcio's deposition testimony and Plaintiffs' supplemental interrogatory responses prove that the mortgage was "held in trust," thereby disputing Assertion 3's statement that FHFA supposedly "succeeded to" the mortgage. SFR objects to Assertion 3 because it lacks evidentiary support. 56(c)(1)(A); LR 56-1.

**3.** **SFR Objects to Assertions 4-5:** SFR objects to Assertions 4-5—regarding how

---

[2] Though Mr. Curcio discussed the "pooling" of the "loan," this Response uses "held in trust" and "mortgage" to be consistent with 12 U.S.C. § 4617(b)(19)(B)'s structure and text.

[3] In this section, SFR summarizes its disputes and objections. The "Legal Argument" sections present these disputes and objections in more detail.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

Fannie allegedly securitizes mortgages and a purported exemplar trust agreement—because they: (i) violate FRE 1002's Best Evidence Rule, (ii) are based on a declaration that replaces facts with legal conclusions, and (iii) are irrelevant.

  **4.**   **SFR Disputes & Objects to Assertion 6:** Mr. Curcio's deposition and the Notice of Default contradict, and hence, dispute Plaintiffs' assertion that the mortgage was "removed from" a trust. SFR objects to Assertion 6 because 12 U.S.C. § 4617(b)(19)(B) renders it irrelevant.

**IV.**   **LEGAL ARGUMENT I: THE EVIDENCE IS BLATANTLY CONTRADICTED BY THE RECORD**

  **A.**   **Summary Judgment Standard**

  Summary judgment is appropriate when the pleadings and admissible evidence show "[t]hat there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." 56(a). An inability to meet this burden precludes summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). Likewise, if admissible evidence proves that the movant is not "entitled to judgment as a matter of law," then summary judgment is inappropriate. *California v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1988); 56(a). Summary judgment is also improper when a litigant's evidence is "blatantly contradicted by the record so that no reasonable jury could believe it . . . ." *Scott*, 550 U.S. at 380.

  **B.**   **Plaintiffs have the Burden of Proving Quiet Title**

  Plaintiffs' quiet title claim requires them to prove that: (i) they have an interest in the house and (ii) that interest is superior to SFR's interests. *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal citations omitted). Evidence of a superior interest must be enough to overcome the "presumption in favor of the record titleholder" who is, in this case, SFR. *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996). Hence, if evidence shows that Plaintiffs lack an interest in the house, then they cannot prevail on their quiet title claim.[4]

  **C.**   **The Record Contradicts Plaintiffs' Evidence that Fannie Bought the Mortgage**

  As just mentioned, Plaintiffs' quiet title claim requires them to prove that they have an interest in SFR's house. Plaintiffs try to do so by claiming that Fannie purchased the mortgage on

---

[4] Similarly, a litigant cannot obtain quiet title when admissible evidence reveals that—despite possessing interests in a specific property—such interests are inferior to an adversary's interests.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

December 1, 2006. Their primary piece of evidence is an unadorned entry on the SIR Acquisition Tab: **Acquisition Date**                        **12/01/2006** . Dkt. No. 107-2, Ex. A, 6. Mr. Curcio opined that this naked notation—a mere two words without any accompanying narrative or factual context—"reflects" that Fannie purchased and began to own the mortgage on December 1, 2006. Dkt. No. 107-2, 2:20-24 (¶¶ 4-5). At the same time, Mr. Curcio declared that the SIR LAH pages **Loan Activity History** purportedly show that the servicer reported information to Fannie for every month that Fannie owned the mortgage; each month that information was reported was called an "Activity Period." (**Activity Period**). *Id.* at 2:27-28 – 3:1-5 (¶7). The following graphic is the mortgage's first "Activity Period": **01/01/2009**   :   **02/02/2009**       **01/31/2009** . Dkt. No. 107-2, Ex. A, 17. So, the LAH—based on Mr. Curcio's declaration—supposedly proves that the earliest possible date for when Fannie could have purchased or owned the mortgage is January 2009, *more than two years after Plaintiffs claim that Fannie bought the mortgage*. Mr. Curcio's sworn declaration could not be clearer, "If Fannie Mae did not own this Loan, this loan activity history information would not have been reported to Fannie Mae." Dkt. No. 107-2, 3:4-5 (¶7). Because no such information was reported to Fannie from December 1, 2006, until January 1, 2009, Mr. Curcio's declaration and the LAH "blatantly contradict" Plaintiffs' "evidence" that Fannie bought the mortgage on December 1, 2006. All told, the record blatantly contradicts Plaintiffs' evidence that Fannie bought the mortgage.[5]

**D.        FRE 803(6)'s Business Records Exception to Hearsay is Inapplicable to SIR**

Realizing that SIR is hearsay, Plaintiffs try to trigger 803(6) by telling this Court that SIR printouts are "business records" introduced by Mr. Curcio, a so-called "qualified witness." Dkt. No. 107, 8:10—12. None of this is correct; SIR is hearsay, not "business records," and Mr. Curcio—while he might be many things (i.e. Assistant Vice President when he signs a declaration, which he does approximately ten times per week without personally accessing the SIR system, or "director of the services support center within credit portfolio management")—he is most

[5] SFR objects to Assertion #2 (i.e. that Fannie's alleged purchase of the mortgage supposedly caused it to own the note and DOT) because it is a legal conclusion. 56(c)(1)(A); LR 56-1. *Wicker v. Oregon*, 543 F.3d 1168, 1177 (9th Cir. 2008).

assuredly not a "qualified witness." Dkt. No. 108-1, 28:11, 28:21-23, 34:19-25 – 35:1, 35:8-9.

**1. *Information was not Transmitted at or Near December 1, 2006***

803(6)'s Business Records Exception mandates that the records must be made or based on information that is transmitted "at or near the time of the transaction . . . ." *SEC v. Jasper*, 678 F.3d 1116, 1122 n.2 (9th Cir. 2012). Here, "the transaction" that is predominantly at issue is Fannie's supposed purchase of the mortgage on December 1, 2006. Recall that Mr. Curcio believes that a naked notation on the Acquisition Tab proves that Fannie bought the mortgage on December 1, 2006: **Acquisition Date**                                            **12/01/2006** . Dkt. No. 107-2, 2:20-24 (¶¶ 4-5). During his deposition, Mr. Curcio said, "here it says on this screen on the left-hand side, the Acquisition Date, December 1, 2006." Ex. A, 55:6-8. Then, his declaration contends that "entries into SIR are made at or near the time of the events," which in this case would be December 1, 2006. Dkt. No. 107-2, 2:13 (¶3). This is patently false, a physical impossibility. The information in the SIR printouts attached to Mr. Curcio's declaration could not have been entered into SIR "at or near" December 1, 2006. This is so because **SIR did not exist in 2006**; SIR was created more than two years later. Ex. H, 3:5-7. And this is precisely what one of Fannie's interrogatory responses proves, a response that *Mr. Curcio verified under penalty of perjury*. *Id.* at 6. The response states that "in **February 2009 information concerning the Loan was transferred from the LASER reporting platform to the <u>new</u> Servicer & Investor Reporting platform ('SIR').**" *Id.* at 3:5-7 (emphasis added). Not a single page from LASER has been produced by Fannie in this case. To make matters worse, and despite verifying the response that Fannie started using SIR in February 2009, Mr. Curcio claimed in his deposition that "I do not know" when Fannie began using SIR. Ex. A, 42:7. Respectfully, this is too much. The Mr. Curcio who was deposed did "not know" when Fannie started to use SIR, but the Mr. Curcio who signed Fannie's interrogatory responses declared "under penalty of perjury" that Fannie began to use SIR in February 2009. Either way, Plaintiffs cannot satisfy 803(6)(A) because information in SIR was not transmitted at or near December 1, 2006.

**2. *Mr. Curcio is not a "Qualified Witness"***

803(6)(D) requires Mr. Curcio to be a "qualified witness," a phrase that Plaintiffs will undoubtedly note is "broadly interpreted" by the Ninth Circuit. *United States v. Ray*, 930 F.2d

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1368, 1370 (9th Cir. 1990). Though broad, the phrase has limits. In order to be a "qualified witness," Mr. Curcio must be familiar with SIR. *Id.* Here, Mr. Curcio's deposition testimony proved that he was not "familiar" with SIR. Ex. A, 46:15-17. When asked to explain where the loan history was located within SIR, Mr. Curcio confessed that he did not know, prompting the following exchange, "Q. Who would know how to get to that particular section? A. Someone familiar with SIR. Q. And who is that? A. Someone on my team." *Id.* at 46:13-17. When asked who was "familiar with SIR," Mr. Curcio did not respond "me." Rather, he quickly retorted, "someone on my team," a tacit acknowledgement that Mr. Curcio is *not* familiar with SIR.

Plaintiffs will try to minimize this revealing testimony by claiming that Mr. Curcio can supposedly be a "qualified witness" because he—at least in Plaintiffs' estimation—"cogently explained the SIR database" by purportedly testifying that information is "initially provided by the seller of the loan but is validated or corrected before being transmitted into SIR by Fannie Mae's acquisition system." Dkt. No. 107, 8:13. This, however, is a more than generous, and slightly misleading, depiction of Mr. Curcio's testimony; it alludes to a portion of Mr. Curcio's deposition where he testified about how he thinks SIR might work in some sort of general sense. Ex. A, 37:21-25 – 38:1-8. But later, Mr. Curcio testified about the specific mortgage involved in this case, the one that Fannie allegedly purchased on December 1, 2006. *Id.* at 53:18-20. Such testimony— including the question and Mr. Curcio's answer—is unmistakably clear, "Q. Does Fannie Mae itself input information into SIR for this loan ever? A. No." *Id.* So, for *this case's mortgage* Fannie has never put information into SIR, which contradicts Mr. Curcio's previous testimony. Speaking of contradictions, Mr. Curcio has described SIR in so many contradictory ways that he is not "knowledgeable as to the manner in which the records are made and kept," *N.L.R.B. v. First Termite Control Co., Inc.*, 646 F.2d 424, 427 (9th Cir. 1981), precluding him from being a "qualified witness." Dkt. No. 105, 18:7-28 – 19:1-21. And this makes sense; by his own account, Mr. Curcio is not "familiar" with SIR. Ex. A, 46:15-17. Thus, Mr. Curcio is not a qualified witness.

### 3.   SIR Printouts are Inadmissible because of 803(6)(E)

Under 803(6)(E), if there is evidence that a would-be business record has "a lack of trustworthiness," then that record is inadmissible; it cannot meet 803(6)'s exception to hearsay.

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   Contradictory statements pertaining to a record "indicate a lack of trustworthiness." *Chadwell v.*

2   *Koch Ref. Co., L.P.*, 251 F.3d 727, 732 (8th Cir. 2001). Here, Mr. Curcio's statements about SIR—

3   in this case and in a lawsuit pending before Chief Judge Navarro—contain contradictions. **These**

4   **contradictions are troubling because they call into question statements that Mr. Curcio has**

5   **made under penalty of perjury to federal and state judges throughout Nevada**. What Mr.

6   Curcio swore as being "true and correct" in Chief Judge Navarro's court, is somehow *in*correct in

7   cases before Judge Mahan and Judge Du.

8       Specifically, in a December 18, 2015, declaration Mr. Curcio told Chief Judge Navarro

9   that if Fannie purportedly owns a mortgage, then Fannie's databases, including SIR, describe that

10   mortgage as being "active." Active Ex. I, 2:19-21 (¶8), 3:15-18 (¶11). Conversely, when Fannie

11   "no longer maintains an ownership interest" in a mortgage, then SIR describes that mortgage as

12   "inactive." Inactive *Id.* This directly contradicts what Mr. Curcio told Judge Mahan and Judge

13   Du. In cases before Judge Mahan and Judge Du, SIR printouts indicated that their corresponding

14   mortgages were "inactive." Ex. E, 5; Ex. F, 5. The General Loan tab—which Plaintiffs have

15   conveniently kept from this Court and SFR in the instant matter—displayed the following notation:

16   Loan Status                         Inactive . *Id.* Despite being "inactive," Mr. Curcio

17   declared—under penalty of perjury—that Fannie owns the mortgages. Ex. E, 3:5-8 (¶4); Ex. F,

18   2:25-27 – 3:1-2 (¶4). This is astounding; Mr. Curcio told Judge Mahan and Judge Du that Fannie

19   owns "inactive" mortgages even though Mr. Curcio told Chief Judge Navarro that Fannie *does not*

20   *own* "inactive" mortgages. This contradiction indicates that SIR has "a lack of trustworthiness."

21   803(6)(E); *Chadwell*, 251 F.3d at 732. The same holds for a contradiction in Mr. Curcio's

22   declaration that Plaintiffs have submitted to this Court.

23       Here, Mr. Curcio's declaration asserts that if Fannie did not own the mortgage, then

24   "information reflecting that would appear under the 'Action Code – Action Description'" column.

25   Action Code - Action Description   Dkt. No. 107-2, 3:6-11 (¶8).

26   **In three other federal cases, Mr. Curcio has said the exact**

27   70 - Fcl- Liq/Held for Sale   **opposite, declaring—under penalty of perjury—that Fannie**

28   **owns mortgages even when information appears under the**

- 10 -

**Action Code – Action Description column.** Ex. E, 3:5-8 (¶4), 6; Ex. F, 2:25-27 – 3:1-2 (¶4), 6; Ex. G, 2:3-5 (¶4), 4. This "information" typically consists of the notation captured in the above graphic, "70 – Fcl – Liq/Held for Sale." Judge Mahan, Judge Du, and Judge Boulware all have cases involving SIR printouts with this notation under the "Action Code – Action Description." Ex. E, 6; Ex. F, 6; Ex. G, 4. And yet, in those cases, Mr. Curcio has stated that Fannie owns the mortgages, a representation that cannot be reconciled with his declaration in the present case. Ex. E, 3:5-8 (¶4), 6; Ex. F, 2:25-27 – 3:1-2 (¶4), 6; Ex. G, 2:3-5 (¶4), 4. This contradiction is but further proof that SIR has "a lack of trustworthiness." 803(6)(E). Regardless, any doubt that might remain about SIR's trustworthiness is put to rest by the LAH pages.

This Response's Introduction described several ways that the LAH mutates, serving as another reason why SIR has "a lack of trustworthiness." Entire columns disappear and sometimes reappear for a given mortgage. Dkt. No. 107-2, Ex. A, 11. Others merely peek out from behind visible columns. *Id.* at 8. Then there are columns that the LAH for this mortgage lacks but materialize on LAH pages for mortgages in other cases. Ex. C, 7; Ex. D, 8; Ex. J, 5 ("Other Fees Collected ($)"); Ex. K, 5 ("Other Fees Collected ($)"). The disappearing act that is LAH raises "a lack of trustworthiness" that triggers 803(6)(E). In doing so, the SIR printouts attached to Mr. Curcio's declaration are not business records for purposes of 803(6). Oh, and one final point. Originally, Plaintiffs attached a single LAH page to Mr. Curcio's declaration in support of their initial Motion for Summary Judgment. Dkt. No. 69-1, Ex. A, 8. During Mr. Curcio's deposition, he testified that this solitary piece of paper—which was limited to information ranging from February 1, 2014, through November 1, 2014—allegedly demonstrated that Fannie purchased the mortgage on December 1, 2006, "and has owned it ever since." Ex. A, 55:9-11. SFR's Motion to Supplement the Record demonstrated the temporal impossibility of this *mis*representation; the isolated LAH page attached to Mr. Curcio's first declaration could not *on its face* prove a single thing about any event that occurred before February 1, 2014. Dkt. No. 105, 19:26-28 – 21:1-4. Perhaps owing to this observation, Plaintiffs scrambled to attach nine more LAH pages to Mr. Curcio's second declaration, and deleted the phrase, "and has owned it ever since," from his declaration. Dkt. No. 107-2, 2:22 (¶4); Dkt. No. 107-2, Ex. A, 8-17. Alas, the earliest date that

KIM GILBERT EBRON

7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

appears on these LAH pages is January 1, 2009, well after Fannie's alleged December 1, 2006, purchase of the mortgage. Dkt. No. 107-2, Ex. A, 17. Consistent with Mr. Curcio's second declaration, the absence of LAH pages for December 1, 2006, proves that Fannie did not own the mortgage on that date, the very day that Mr. Curcio has repeatedly claimed as being when Fannie purchased the mortgage. Dkt. No. 107-2, 3:4-5 (¶7) ("If Fannie Mae did not own this Loan, this loan activity information would not have been reported to Fannie Mae."). In sum, the SIR printouts are inadmissible because of 803(6)(E).

### E.   Plaintiffs' "Evidence" about Securitization is Inadmissible

Plaintiffs' professed "evidence" about securitization is inadmissible. **First**, Plaintiffs rely on a six-paragraph-declaration from another case. Dkt. No. 107-4. Unsurprisingly, this declaration provides no insights about the mortgage that Fannie purportedly purchased on December 1, 2006; the declaration is irrelevant. Also, its conclusory assertions about Fannie securitization are impermissible legal conclusions. *Wicker v. Oregon*, 543 F.3d 1168, 1177 (9th Cir. 2008). **Second**, Plaintiffs try to use provisions in an "exemplar" trust agreement to prove when mortgages "held in trust" supposedly can or must be removed *out* of trust. Dkt. No. 107-4, Ex. A. Plaintiffs' attempts to prove the contents of this "exemplar" violate FRE 1002's Best Evidence Rule because Plaintiffs did not produce an "original." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1987). And, Mr. Curcio's testimony indicates that the mortgage was securitized in 2006, three years before the "exemplar" was supposedly created. Ex. A, 44:18. So, the "exemplar" is irrelevant. No wonder Plaintiffs told this Court that the exemplar does not have "any specific relationship to the loan at issue in this case." Dkt. No. 107, 10:27-28 n.4. **Third**, and as is explained below, the six-paragraph-declaration and "exemplar" are irrelevant because of 4617(b)(19)(B).[6]

### F.   Plaintiffs have Made Judicial Admissions about Recorded DOT Assignments

The June 28, 2011, DOT assignment is unilluminating because of judicial admissions that Plaintiffs have made in other cases and Plaintiffs' belief that this assignment's "limited interest

---

[6] Plaintiffs' reliance on one of Fannie's Guides is bewildering because Plaintiffs believe such Guides do "not have the force of law." Dkt. No. 41, 15:12.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

was merged with" the mortgage that Fannie allegedly purchased on December 1, 2006. Dkt. No. 107, 8:5. Plaintiffs have told judges in this district that a recorded DOT assignment is irrelevant to whether Plaintiffs had an "interest" in a house at the time of an association sale. *LN Mgmt., LLC Series 5664 Divot v. Dansker*, No. 2:13–cv–01420–RCJ–GWF (Dkt. No. 54, 6:15-17); *Kielty v. Fed. Home Loan Mortg. Corp.*, No. 2:15–cv–00230–RCJ–GWF (Dkt. No. 44, 5:16-17); *LN Mgmt., LLC Series 7937 Sierra Rim v. Pfeiffer*, No. 2:13–cv–01934–JCM–PAL (D. Nev. 2015) (Dkt. No. 76, 11:3-4) (filed Oct. 27, 2015). Plaintiffs admit that, "[r]ecording is irrelevant to the existence of a property right or [4617(j)(3)'s] protection." *LN Mgmt., LLC Series 7937 Sierra Rim v. Pfeiffer*, No. 2:13–cv–01934–JCM–PAL (Dkt. No. 76, 11:3-4). In fact, Plaintiffs maintain that language in an assignment is nothing more than "form language" that courts should ignore. *Dansker*, No. 2:13–cv–01420–RCJ–GWF (Dkt. No. 54, 12:22-28 – 13:1-17); *Pfeiffer*, No. 2:13–cv–01934–JCM–PAL (Dkt. No. 76, 9:10-14).[7] Consequently, Plaintiffs have made judicial admissions about recorded DOT assignments.

## V. LEGAL ARGUMENT II: 4617(b)(19)(B) PRECLUDES SUMMARY JUDGMENT

It is undisputed that the mortgage was "held in trust." Dkt. No. 108-1, 44:15-16; Dkt. No. 108-2, 2:3-6; Dkt. No. 108-3, 2:12-15. As a result, and pursuant to 4617(b)(19)(B), this Court should deny Plaintiffs' Motion for Summary Judgment because they are not "entitled to judgment as a matter of law." 56(a). Sadly, when it comes to 4617(b)(19)(B), Plaintiffs cannot bring themselves to "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). This is so because Plaintiffs are too scared of 4617(b)(19)(B)'s text, its plain meaning. It is out of fear that Plaintiffs replace one word ("held") with another ("managed"). It is out of fear that Plaintiffs claim "in" actually means "out," and that "general" is synonymous with "limited." And it is out of fear that Plaintiffs strip away entire phrases from the United States Code, forgetting that Congress's

---

[7] For purposes of summary judgment, courts have discretion to treat a litigant's representations in briefs as judicial admissions. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 2008). Courts exercise this discretion when a party "tried to benefit" from a representation. *Bonavito v. Nev. Prop. 1, LLC*, No. 2:13–cv–417–JAD–CWH, 2013 WL 5707197, at *2 (D. Nev. Oct. 21, 2013). Here, Plaintiffs "tried to benefit" from the aforementioned DOT-assignment-representations in cases where an assignment was not recorded before an association's sale.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   words are not as easily manipulated as SIR printouts; 4617(b)(19)(B) is a duly enacted law, not an

2   LAH column, or a declaration from Mr. Curcio. Textualphobia, a rare though pernicious fear of

3   and aversion to textualism, is at it once again, haunting Plaintiffs at every heading, and cursing

4   them at every clause from 4617(b)(19)(B)(i) through 4617(b)(19)(B)(iii). Thankfully,

5   Textualphobia has a cure: The plain meaning rule. It is this rule that defeats Plaintiffs' arguments

6   about 4617(b)(19)(B), 4617(j)(3), and so-called securitization.

7   The plain meaning rule also establishes why this Court should deny Plaintiffs' Motion for

8   Summary Judgment. 4617(b)(19)(B)—as written and enacted by *Congress*—makes plain that if a

9   mortgage is "described in" 4617(b)(19)(B)(i), then that mortgage "shall be held by" FHFA "in

10  trust." "Holding" is not succeeding, or transferring, or selling, or removing, or taking over. And

11  "holding in" is not "removing from." Instead, and as is established by the very text that scares

12  Plaintiffs so much, ***holding is an exception to succession***. Little else explains why *Plaintiffs*

13  described evidence that the mortgage was "held in trust" as a "silver bullet." Dkt. No. 99-2, 15:4-

14  7. As such, FHFA did not "succeed to" the mortgage through 4617(b)(2)(A)(i). Without

15  succession, the mortgage is not "property of" FHFA for purposes of 4617(j)(3), or for so-called

16  "preemption." Without so-called "preemption," Plaintiffs cannot prove their quiet title claim

17  because they cannot show that they have a supposed interest in the house, let alone an interest that

18  is superior to SFR's interests. 4617(b)(19)(B) defeats Plaintiffs' Motion.

19      **A.**    **Plaintiffs Rewrite 4617(b)(19)(B)(ii) by Replacing "Held" with "Managed"**

20  Plaintiffs *de*construct 4617(b)(19)(B)(ii) by claiming that the phrase "in accordance with

21  the terms of the agreement creating such trust"—when read in isolation from the rest of

22  4617(b)(19)(B)(ii)'s surrounding text, 4617(b)(19)(B)'s other clauses, and 4617(b)'s structure—

23  supposedly establishes that FHFA "succeeds to" mortgages "held in trust." Plaintiffs assert that "it

24  would be absurd for HERA to mandate that the Conservator manage mortgages held in trust in any

25  particular way if . . . the Conservator never succeeded to any interest in those mortgages and

26  therefore had no power to manage them at all." Dkt. No. 107, 15:13-16. This argument fails

27  because 4617(b)(19)(B)(ii) does not use the word "manage."[8] Instead, Congress selected the word

28  ――――――――――――――――――
[8]  Plaintiffs' reference to "absurdity" is another reason why their *de*construction of

"held." Notably, the word "**held**" plays a significant role in 4617(b)(19)(B)(ii) because it modifies "by the conservator," "for the beneficial owners of such mortgage," and "in accordance with the terms of the agreement creating such trust." To replace "held" with "manage"—as Plaintiffs inexplicably do—is to reject Congress's linguistic link between "held" and nearly every textual phrase within 4617(b)(19)(B)(ii), an interpretive blunder of the highest order. *Badaracco v. Comm'r Internal Revenue*, 464 U.S. 386, 398 (1984); *In re Borba*, 736 F.2d 1317, 1320 (9th Cir. 1984) (courts do not omit language from statute). By swapping "held" for "manage," Plaintiffs also change 4617(b)(19)(B)'s heading from "Mortgages held in trust" to "Mortgages managed in trust." They also alter 4617(b)(19)(B)(ii)'s heading from "Holding of mortgages" to "Management of mortgages." Congress's and Plaintiffs' versions of 4617(b)(19)(B)(ii) appear below.

| Congress's Version | Plaintiffs' Version |
|---|---|
| **(19) General exceptions** | **(19) General exceptions** |
| **(B) Mortgages held in trust** | **(B) Mortgages ~~held~~ *managed* in trust** |
| **(ii) Holding of mortgages** | **(ii) ~~Holding~~ *Management* of mortgages** |
| Any mortgage . . . described in clause (i) shall be held by the conservator . . . in accordance with the terms of the agreement creating such trust . . . . | Any mortgage . . . described in clause (i) shall be *managed* by the conservator . . . in accordance with the terms of the agreement creating such trust . . . . |

Ultimately, Plaintiffs rewrite 4617(b)(19)(B)(ii) by replacing "held" with "manage," defying Congress's intent and rudimentary tenets of statutory construction.

### B.   "Holding in" is not Synonymous with "Removing from"

Similarly, Plaintiffs replace "**held in**" with "removed from" and swap "shall" for "may." Dkt. No. 107, 15:13-21. They opine that it would allegedly be "absurd" if FHFA lacked the power to "remove from" a trust "a mortgage held in trust." *Id.* Under Plaintiffs' argument, FHFA has the power to take a mortgage that is "held **in** trust" and remove it **out** of a trust—the exact opposite of what Congress intended. 4617(b)(19)(B)(ii). Talk about absurd. A mortgage cannot be held **in** a trust, when it has been removed **from** a trust; removing a mortgage causes it to be *out* of, not *in*, a trust. The laws of physics—never mind those enacted by Congress—do not even support Plaintiffs.

4617(b)(19)(B)(ii) fails. Particularly, the absurd results doctrine—which Plaintiffs ineptly invoke—is inapplicable to unambiguous laws, such as 4617(b)(19)(B)(ii). *Peabody Coal Co. v. Navajo Nation*, 75 F.3d 457, 468 (9th Cir. 1996). Along similar lines, by misreading the phrase "in accordance with the terms of the agreement creating such trust," in isolation, Plaintiffs have committed yet another interpretive indiscretion, which in and of itself defeats Plaintiffs' *de*construction of 4617(b)(19)(B)(ii). *Smith v. United States*, 508 U.S. 223, 233 (1993).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   *Dean v. United States*, 556 U.S. 568, 572 (2009) (Courts resist reading words into a law) (internal

2   citation omitted). Essentially, "holding in" is not synonymous with "removing from."

| Congress's Version | Plaintiffs' Version |
|---|---|
| **(19) General exceptions** | **(19) General exceptions** |
| **(B) Mortgages held in trust** | **(B) Mortgages ~~held in~~ *removed from* trust** |
| **(ii) Holding of mortgages** | **(ii) ~~Holding~~ *Removing* of mortgages** |
| Any mortgage . . . described in clause (i) shall be held by the conservator . . . in accordance with the terms of the agreement creating such trust . . . . | Any mortgage . . . described in clause (i) ~~shall~~ *may* be ~~held~~ *removed* by the conservator . . . in accordance with the terms of the agreement creating such trust . . . . |

7   **C.   Plaintiffs' *De*construction creates a Loophole around 4617(b)(19)(B)(i)**

8         The plain meaning of 4617(b)(19)(B)(ii) textually links the word "**held**" with the word

9   "**terms**," as in any mortgage held in trust "shall be **held** by the conservator . . . in accordance with

10   the **terms** of the agreement creating such trust . . . ." This link reveals that when FHFA is "holding"

11   a mortgage "described in clause (i)," it does not have carte blanche access to *all* of the terms in the

12   "agreement creating such trust." Rather, the textual link between "shall be *held*" and "in

13   accordance with the *terms*" conveys Congress's intent to confine FHFA to a trust agreement's

14   "terms" that concern "holding" mortgages "in trust." 4617(b)(19)(B)(ii). These "**terms**" inform

15   FHFA about how it shall "**hold**" any mortgage "described in clause (i)" "**in** trust." If FHFA has

16   the power to remove or take a mortgage *out* of trust, then after FHFA does so, it can make that

17   mortgage "available to satisfy the claims of creditors generally," a consequence that will render

18   4617(b)(19)(B)(i) superfluous. Congress did not intend for "the terms of the agreement creating

19   such trust" to allow FHFA to take or remove mortgages *out* of trust in order to make them

20   "available to satisfy the claims of creditors . . . ." 4617(b)(19)(B)(i). And yet, that is what Plaintiffs'

21   isolated *mis*reading of a single phrase in 4617(b)(19)(B)(ii) contemplates. Hence, Plaintiffs'

22   statutory *de*construction creates a loophole around 4617(b)(19)(B)(i); "held in" is swapped for

23   "removed from," "a regulated entity" becomes "the conservator," and "may" replaces "shall not."[9]

24   _____

25   [9] Plaintiffs nearly give away this point by incorrectly stating that 4617(b)(19)(B)(ii) supposedly means that "**while** a mortgage is held in trust, the Conservator's power over that asset remains

26   constrained by the terms of the relevant trust agreement." Dkt. No. 107, 13:20-22 (emphasis added). The use of the word "*while*" announces a loophole to 4617(b)(19)(B)(i)'s prohibition that

27   mortgages "held in trust" by Fannie **shall not be available to satisfy the claims of creditors generally** . . . ." If FHFA has the power to remove or take a mortgage *out* of trust, then after FHFA

28   does so, it can make that mortgage "available to satisfy the claims of creditors generally," a

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| Congress's Version | Plaintiffs' Version |
|---|---|
| **(19) General exceptions**<br>**(B) Mortgages held in trust**<br>**(i) In general**<br>Any mortgage . . . held in trust . . . by a regulated entity . . . shall not be available to satisfy the claims of creditors generally . . . . | **(19) General exceptions**<br>**(B) Mortgages ~~held in~~ *removed from* trust**<br>**(i) In general**<br>Any mortgage . . . ~~held in~~ *removed from* trust . . . by ~~a regulated entity~~ *the conservator* . . . ~~shall not~~ *may* be available to satisfy the claims of creditors generally . . . . |

### D.     4617(b)(19)(B)(ii) does not Confirm FHFA's Power of Succession

Plaintiffs suggest that 4617(b)(19)(B)(ii)—despite lacking confirmatory language—recognizes that FHFA can exercise the trustee's alleged right to remove a mortgage. Dkt. No. 107, 12:22-28 – 14:1-20. So, when FHFA is purportedly removing a mortgage from a trust, it is acting as a *trustee*. But this is a barrier to 4617(j)(3)'s applicability. Pursuant to 4617(j)(1), "the provisions of this subsection shall apply with respect to the Agency ***in any case in which the Agency is acting as a conservator*** or a receiver." Thus, when FHFA purportedly removes a mortgage "held in trust," 4617(j)(3) is inapplicable because FHFA—according to Plaintiffs—is "acting as a" trustee, not "as a conservator."

Furthermore, Plaintiffs erroneously insist that 4617(b)(19)(B)(ii)'s isolated phrase, "in accordance with the terms of the agreement creating such trust," reveals that FHFA succeeded to mortgages "held in trust," which Plaintiffs inaccurately believe are owned by Fannie. Dkt. No. 107, 12:22-8 – 14:1-20. This position, however, erases an important phrase from 4617(b)(19)(B)(ii): "The beneficial owners of such mortgage." Plaintiffs erased this phrase because it disproves that FHFA "succeeds to" a mortgage "held in trust" and that Fannie owns a mortgage "held in trust." Indeed, 4617(b)(19)(B)(ii) states that any mortgage held in trust "**shall be held by** the conservator . . . **for** the beneficial **owners** of such mortgage . . . ." Thus, FHFA does not "succeed to" a mortgage "held in trust." Rather, FHFA "shall hold" such a mortgage, and it shall do so for that mortgage's "owners." 4617(b)(19)(B)(ii). And, Fannie is not the "owner" of

---

consequence that will render 4617(b)(19)(B)(i) superfluous. Plaintiffs' *mis*reading is as wrong as it is transparent: Supposedly, "*while*" a mortgage is "held in trust," FHFA is allegedly "constrained"; to elude these constraints, FHFA—according to Plaintiffs—need only remove a mortgage *out* of trust. Dkt. No. 107, 13:20-22. Once this occurs, and a mortgage is *out* of trust, FHFA is—in keeping with Plaintiffs' atextual musings—*un*constrained from making that mortgage "available to satisfy the claims of creditors," working an end-run around 4617(b)(19)(B)(i).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

a mortgage "held in trust." 4617(b)(19)(B)(i); 4617(b)(19)(B)(ii). Rather, the "owners" consist of

"any person other than" Fannie. 4617(b)(19)(B)(i).

| Congress's Version | Plaintiffs' Version |
|---|---|
| **(19) General exceptions** | **(19) General exceptions** |
| **(B) Mortgages held in trust** | **(B) Mortgages held in *removed from* trust** |
| **(ii) Holding of mortgages** | **(ii) ~~Holding~~ *Removing* of mortgages** |
| Any mortgage . . . described in clause (i) ~~shall~~ be ~~held~~ by the conservator . . . for the beneficial owners of such mortgage . . . in accordance with the terms of the agreement creating such trust . . . . | Any mortgage . . . described in clause (i) ~~shall~~ *may* be ~~held~~ *removed* by the conservator . . . ~~for the beneficial owners of such mortgage~~ . . . in accordance with the terms of the agreement creating such trust . . . . |

All told, 4617(b)(19)(B)(ii) does not confirm FHFA's power of succession.

### E.   Plaintiffs *Mis*read a Phrase from 4617(b)(19)(B)(i) in Isolation

Plaintiffs mistakenly believe that 4617(b)(19)(B)(i)'s phrase, "any mortgage . . . held in

trust . . . shall not be available to satisfy the claims of creditors," proves that Fannie "(and therefore

the Conservator) *do* maintain a property interest in securitized mortgages." Dkt. No. 107, 14:13-

15. Yet, Plaintiffs' isolated *mis*reading of this phrase forgets that 4617(b)(19)(B)(i) "describes" a

mortgage "held in trust" as: "Any mortgage . . . held in trust . . . by a regulated entity **for the**

**benefit of any person other than the regulated entity** . . . ." And, 4617(b)(19)(B)(ii)—when

construed in conjunction with 4617(b)(19)(B)(i)—emphasizes that FHFA shall "hold" a mortgage

"described in" 4617(b)(19)(B)(i) "**for the beneficial owners of such mortgage,**" who consist of

"any person other than" Fannie. These words, which Plaintiffs conveniently erase from HERA,

refute Plaintiffs' atextual assertion that Fannie and FHFA "have a property interest" in mortgages

"held in trust." Plaintiffs' statutory *de*construction of an isolated phrase from 4617(b)(19)(B)(i) is

untenable. Pursuant to 4617(b)(19)(B)(i) and 4617(b)(19)(B)(ii), Congress intended that the

"owners" of "any mortgage . . . held in trust" consist of "any person other than the regulated entity

[Fannie]." The below chart shows how Plaintiffs rewrote 4617(b)(19)(B)(i). Ultimately, and as the

below graphic illustrates, Plaintiffs *mis*read a phrase from 4617(b)(19)(B)(i) in isolation.

| Congress's Version | Plaintiffs' Version |
|---|---|
| **(19) General exceptions** | **(19) ~~General~~ *Limited* exceptions** |
| **(B) Mortgages held in trust** | **(B) Mortgages held in trust** |
| **(i) In general** | **(i) In ~~general~~ *limited*** |
| Any mortgage . . . held in trust . . . by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors | Any mortgage . . . held in trust . . . by a regulated entity ~~for the benefit of any person other than the regulated entity~~ shall not be available to satisfy the claims of creditors |

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| generally . . . . | generally . . . . |
|---|---|

### F.     **Plaintiffs Rewrite 4617(j)(3) by Replacing "Conservator" with "Fannie"**[10]

Plaintiffs' Textualphobia is not confined to 4617(b)(19)(B). Regrettably, Plaintiffs also abandon 4617(j)(3)'s text. For instance, Plaintiffs state that 4617(j)(3) "provides that no property of Fannie Mae in conservatorship 'shall be subject to . . . foreclosure . . . without the consent of [FHFA.'" Dkt. No. 107, 5:24-25. This is inaccurate; 4617(j)(3) expressly provides that "no **property of the Agency** shall be subject to . . . foreclosure, or sale without the consent of the Agency . . . ." That provision does not read "no property of [Fannie] shall be subject to . . . foreclosure, or sale without the consent of [Fannie] . . . ." Congress defined the "Agency" as FHFA, not Fannie. 12 U.S.C. § 4502(2).

Significantly, Plaintiffs' mishandling of 4617(j)(3)'s text belies an overarching interpretive error that they repeatedly make: In ascertaining whether a mortgage is "property of the Agency"—for purposes of 4617(j)(3)—Plaintiffs incorrectly assume that the only pertinent fact is whether that mortgage is an "asset of" Fannie, displaying a fixation on 4617(b)(2)(A)(i). This is why Plaintiffs drone on about the purported nuances of Fannie securitization, the subtleties supposedly animating trust jurisprudence, and what they believe is District of Columbia law. Dkt. No. 107, 10:1-24 – 11:1-22. Indeed, Plaintiffs erroneously assert that if a mortgage is an "asset of" Fannie, then 4617(j)(3) "applies fully." *Id.* at 11:21. Assuming *arguendo* that a "mortgage . . . held in trust" is an "asset of" Fannie—which it is not[11]—such a determination does not mean that FHFA has the power to "succeed to" that mortgage. Instead, 4617(b)(19)(B) establishes that if a mortgage is "held in trust," then that mortgage "shall be held"—not "succeeded to"—by FHFA. *Id.* Again, **_holding is an exception to succession_**. 4617(b)(19)(B). By fixating on whether a mortgage is an "asset of" Fannie, for purposes of 4617(b)(2)(A)(i) and 4617(j)(3), Plaintiffs: (i) read 4617(b)(19)(B) out of HERA, (ii) render all three of 4617(b)(19)(B)'s clauses superfluous, and

---

[10] Plaintiffs' concerns about the length of time that a mortgage can remain "in trust" are misguided; as with most aspects of FHFA's conservatorship, 4617(b)(19)(B)'s provisions are confined to the duration of FHFA's conservatorship or receivership.

[11] *See*, *e.g.*, Dkt. No. 108, 25:24-28 n.16 (explaining that 4617(b)(19)(B) also indicates that mortgages "held in trust" are not "assets of the regulated entity.").

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   (iii) nullify Congress's intent. Because Plaintiffs rewrite, and ultimately erase 4617(b)(19)(B) from

2   HERA, they inaccurately insist that "securitization in no way impacts the Conservator's succession

3   to [a mortgage held in trust] or the protection of [4617(j)(3)]." Dkt. No. 107, 9:7-8. This is entirely

4   contrary to 4617(b)(19)(B)'s plain meaning and Congress's intent.[12] Either way, Plaintiffs rewrite

5   4617(j)(3) by replacing "conservator" with "Fannie." 4617(b)(19)(B)'s text precludes Plaintiffs

6   from obtaining summary judgment; it is the "silver bullet" to their claims. Dkt. No. 99-2, 15:4-7.

## VI.   LEGAL ARGUMENT III: DEPRIVATION IS NOT PREEMPTION

8       This Court should deny Plaintiffs' Motion for Summary Judgment because this case's due

9   process violations prevent Plaintiffs from "being entitled to judgment as a matter of law." 56(a).[13]

### A.   The Supreme Court's Analytical Approach to Due Process

11      The Supreme Court's analytical approach to due process uses three principles to determine

12   whether a "property" interest exists and whether a "deprivation" has occurred. **The first principle**

13   is that due process "[i]mposes constraints on governmental *decisions* which deprive individuals

14   of" property. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (emphasis added). **The second**

15   **principle** is that "property" interests attain "constitutional status by virtue of the fact that they have

16   been initially recognized and protected by state law . . . ." *Paul v. Davis*, 424 U.S. 693, 710 (1976).

---

[12]   Plaintiffs argue that 4617(b)(19)(B)'s plain meaning—i.e. holding is an exception to succession—is "absurd" because Congress knew that Fannie's charter allows it to securitize mortgages. Dkt. No. 107, 16:12. This is wrong. Plaintiffs' reliance on Fannie's charter fails because the charter is neither the product of nor exclusively deals with the conservatorship context. Contrastingly, 4617(b)(19)(B) is the product of and exclusively pertains to the conservatorship context. More precisely, Fannie's charter primarily contemplates an independent Fannie, a non-defaulted "regulated entity." 12 U.S.C. § 4502(8)(A) (defining a "defaulted regulated entity"). Not so with 4617(b)(19)(B); that provision governs instances when Fannie is in default and under FHFA-conservatorship or receivership. In reality, what Plaintiffs describe as "absurd" is a policy decision that Congress made and enacted into law. The same can be said about Plaintiffs' public policy pronouncements, not a single one of which is supported by admissible evidence.

[13]   SFR has already detailed this case's due process violations. Dkt. No. 32. First, Plaintiffs acknowledge that *under Nevada law*, SFR has interests in the house, including free and clear title. Dkt. No. 41, 10:24-25 n.4. Second, Plaintiffs tacitly conceded that FHFA is a government actor. *Compare* Dkt. No. 32, 5:19-28 – 7:1-28, *and* Dkt. No. 48, 19:3, *with* Dkt. No. 41. Third, FHFA's decision not to consent deprived SFR of "property." Fourth, this deprivation occurred without due process because 4617(j)(3) is bereft of any procedures for SFR to request FHFA's consent or an opportunity for SFR to contest FHFA's decision not to consent. And, because no procedures for requesting FHFA's consent are publicly available, due process required FHFA to provide notice of such procedures. As no such notice was given, due process was violated.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   State law's recognition of an interest establishes the existence of "property." *Id.* If state law

2   recognizes an interest, then due process is triggered. *Ralls Corp. v. CFIUS*, 758 F.3d 296, 316

3   (D.C. Cir. 2014). **The third principle** is that "deprivation" occurs when a government actor's

4   decision alters or nullifies a state-recognized interest. *Paul*, 424 U.S. at 711.

5   **B.      Plaintiffs Violate the Supreme Court's Second Principle**

6   Plaintiffs try to transform deprivation into preemption by attacking the Supreme Court's

7   second principle: If state law recognizes an interest, then it is "property." They do so by insisting

8   that *federal law* (i.e. 4617(j)(3)), and not state law, purportedly establishes whether SFR has any

9   interests—such as free and clear title—in SFR's house. According to Plaintiffs, 4617(j)(3)

10  "governed the transfer of interests" when Association sold the house to SFR. Dkt. No. 107, 18:7.

11  **This repudiates the Supreme Court's second principle**. *Paul*, 424 U.S. at 710. Consider that

12  even in cases where state and federal law interact—like this lawsuit—courts assess whether state

13  law recognizes property interests. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43,

14  53-54 (1993) (Hawaiian property law and federal civil forfeiture statute); *Ralls*, 758 F.3d at 316

15  (Oregon property law and federal Defense Production Act). If the answer is "yes," then due process

16  applies. *Paul*, 424 U.S. at 710. Here, Nevada law recognizes SFR's interests, thereby triggering

17  due process. Hence, Plaintiffs violate the Supreme Court's second principle.

18  **C.      The Supreme Court's Third Principle Defeats Plaintiffs' Arguments**

19  Plaintiffs try to transform deprivation into preemption by targeting the Supreme Court's

20  third principle: "Deprivation" occurs when a government actor's decision nullifies state-

21  recognized interests. *Paul*, 424 U.S. at 711. In Plaintiffs' misguided estimation, this principle is

22  inapplicable because 4617(j)(3) is purportedly an absolute prohibition, an allegedly "absolute bar."

23  Dkt. No. 107, 6:11. Plaintiffs' position fails because it rewrites 4617(j)(3) as follows: "No property

24  of the Agency shall be subject to . . . foreclosure or sale, without the consent of the Agency . . . ."

25  Plaintiffs' treatment of 4617(j)(3) as an absolute prohibition impermissibly deletes language from

26  a statute. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 805 (6th Cir. 2012); *Hesperos v.*

27  *Sandaa*, 265 F. 921, 923 (4th Cir. 1920). The deleted words, "without the consent of the Agency,"

28  prevent 4617(j)(3) from being an absolute prohibition because they authorize a government actor

("the Agency") to make a decision concerning consent ("the consent"). Indeed, Congress knows how to draft absolute prohibitions, as it did in 4617(j)(4), "[t]he Agency shall not be liable for . . . penalties or fines . . . ." If Congress wanted 4617(j)(3) to be an absolute prohibition, then it would have drafted it in the same way that it drafted 4617(j)(4). But Congress did not so intend, and thus drafted 4617(j)(3) differently from 4617(j)(4). Lastly, even in cases with true absolute prohibitions, due process still applies. *James Daniel Good*, 510 U.S. at 47 n.1; *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258 (1987); *Pillsbury Co. v. FTC*, 354 F.2d 952, 953 (5th Cir. 1966). In the end, the Supreme Court's third principle defeats Plaintiffs' arguments.

### D.    The Decision Due Process Context shows why Deprivation is not Preemption

This case involves a particular due process context: the Decision Due Process Context. *James Daniel Good*, 510 U.S. 43; *Brock*, 481 U.S. 252; *Ralls*, 758 F.3d 296; *United States v. Bacon*, 546 F. App'x 496 (5th Cir. 2013); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001); *Pillsbury*, 354 F.2d 952. This context concerns: (i) state-recognized property interests, (ii) a federal law that authorizes a government actor to make decisions that nullify those interests, and (iii) a government actor's decision nullifies those interests without due process. *Id.* Such *decisions* do not "preempt" state law; they *deprive* individuals of property. *Id.*

For example, in *Ralls* an American corporation (Ralls Corp.), owned by two Chinese nationals, purchased four Oregon LLCs and their assets, including easements and several contracts; Oregon property law recognized and protected these interests. Pursuant to the Defense Production Act of 1950 ("DPA"), a federal agency analyzed the sale and referred it to the President due to national security concerns. The DPA authorized the President to nullify Ralls's property interests if the President decided there was a threat to national security. After reviewing the transaction, the President decided a threat to national security existed, thus nullifying Ralls's interests. *Ralls*, 758 F.3d at 306. Yet, the DPA did not afford Ralls constitutionally sufficient notice or an opportunity to be heard before the President made his decision; the statute had a dearth of procedural participation and protections. *Id.* at 320. The D.C. Circuit determined "[t]his lack of process constitutes a clear constitutional violation, notwithstanding the Appellees' substantial interest in national security and despite our uncertainty that more process would have led to a

- 22 -

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  different presidential decision." *Id.* The same deficiencies plague 4617(j)(3), which does not afford

2  SFR notice or an opportunity to be heard before FHFA decided not to consent.

3        Like *Ralls*, there are other cases where a government actor's decision deprived—not

4  "preempted"—state-recognized property interests without due process. In *Brock*, the Secretary of

5  Labor decided a trucking company fired one of its drivers for whistleblowing in violation of the

6  Surface Transportation Assistance Act of 1982. This decision deprived the trucking company of

7  its state-recognized interest in being able to fire employees. Due process was violated because the

8  trucking company did not receive sufficient notice before the Secretary's decision. *Brock*, 481 U.S.

9  at 257, 268. *National Council of Resistance of Iran* ("*NCRI*") dealt with the Secretary of State's

10  decision to designate an entity as an alias of a foreign terrorist organization consistent with the

11  Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This decision deprived the

12  entity of an interest in a bank account without due process of law because the AEDPA did not

13  provide notice or an opportunity to be heard before the Secretary's decision. *NCRI*, 251 F.3d at

14  208. In *Pillsbury*, the Federal Trade Commission ("FTC") decided that the Pillsbury Company's

15  acquisition of two companies and their assets "lessen[ed] competition" under the Clayton Act. This

16  decision nullified Pillsbury's state-recognized property interests in the companies. Due process

17  was violated because a United States Senate subcommittee hearing had improperly intruded into

18  the FTC's then still-pending review of Pillsbury's acquisitions. *Pillsbury*, 354 F.2d at 963. *James*

19  *Daniel Good* concerned the United States' decision to *ex parte* seize a house and land that belonged

20  to a person who had pled guilty to drug charges; at the time, the house was being rented. The

21  government's decision—made pursuant to civil forfeiture laws—deprived the owner of state-

22  recognized property interests. Due process was violated because the owner was not given notice

23  or an opportunity to be heard. *James Daniel Good*, 510 U.S. at 46. A similar set of circumstances

24  occurred in *Bacon*, where the United States Customs and Border Protection decided to destroy

25  electronics that belonged to an individual convicted of possessing child pornography. This decision

26  ran afoul of due process because Customs did not give the owner of the electronics constitutionally

27  sufficient notice. *Bacon*, 546 F. App'x at 501.

28        *Ralls*, *Brock*, *NCRI*, *Pillsbury*, *James Daniel Good*, and *Bacon* are due process cases where

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

a government actor's decision deprived individuals of state-recognized interests. Plaintiffs seek to change all of this, mutating due process *deprivation* cases into "preemption" precedent, where a government actor's decision "preempts" state-recognized interests. No longer will decisions *deprive* people of property; they will, instead, "preempt" rights from materializing in the first place—effectively doing away with due process. Significantly, the Supreme Court has already rejected a similarly bloated version of "preemption" in the Taking Clause context. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984). The Environmental Protection Agency ("EPA") claimed it had "preempted"—instead of taken—a pesticide registration applicant's state-recognized interests. The Supreme Court determined EPA's argument "proves too much" because "[i]f Congress can 'pre-empt' state property law in the manner advocated by EPA, then the Taking Clause has lost all vitality." *Id.* The same holds here; if FHFA can "preempt" state-recognized interests as Plaintiffs allege, then due process "[h]as lost all vitality." *Id.* At bottom, the Decision Due Process Context shows why deprivation is not preemption.

## E.    4617(j)(3) is not Self-executing

Plaintiffs claim that 4617(j)(3) is self-executing, possessing a purportedly "automatic preemptive effect." Dkt. No. 107, 6:4. Supreme Court cases and 4617(j)(3)'s text refute this claim. To begin with, self-executing laws function on their own, without the involvement of a government actor; they uniformly impact all citizens by articulating the circumstances under which property interests will lapse. *Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 486 (1988); *Texaco, Inc. v. Short*, 454 U.S. 516, 530, 533-37 (1982). Meanwhile, a statute is not self-executing when it authorizes a government actor—other than the legislature—to make individualized decisions that nullify property interests, ensuring that "[t]he property interest was taken only after a specific determination that the deprivation was proper." *Texaco*, 454 U.S. at 537. Within non-self-executing laws, government actors have a "role to play beyond enactment" of the statute. *Tulsa*, 485 U.S. at 486. Here, 4617(j)(3) is not self-executing because: (i) 4617(j)(3)'s reference to "the Agency" means a government actor (i.e. FHFA)—other than Congress—is involved, (ii) 4617(j)(3) authorizes FHFA to make a "specific determination" (i.e. whether to "consent"), and

/ / /

(iii) that determination nullifies state-recognized interests.[14] Thus, 4617(j)(3) is not self-executing.

## F.     The Legislative Acts Doctrine is Inapplicable

Under the legislative acts doctrine, due process is satisfied if a legislature properly enacts a generally applicable law that impacts a large group of people, covers considerable amounts of land, and does not target specific individuals. *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003). The doctrine is limited to "a legislatively mandated substantive change in the scope of [an] entire program." *Atkins v. Parker*, 472 U.S. 115, 129 (1985); *Ortiz v. Eichler*, 794 F.2d 889, 894 (3d Cir. 1986). It does not apply to "the procedural fairness of individual eligibility determinations." *Id.* Here, FHFA's decision not to consent is individualized; 4617(j)(3)'s phrase "*the* consent" connotes an individualized decision.[15] Thus, the legislative acts doctrine is inapplicable because FHFA's decision is an "individual . . . determination[,]" the "fairness" of which is dictated by due process. *Atkins*, 472 U.S. at 129.[16]

## G.     4617(j)(3)'s Unconstitutionality Bars Preemption

An unconstitutional law cannot preempt state law. *Alden v. Maine*, 527 U.S. 706, 731 (1999); *S.J. Groves & Sons, Co. v. Fulton Cnty.*, 920 F.2d 752, 763 (11th Cir. 1991). As this Response details, 4617(j)(3) is unconstitutional, preventing it from preempting Nevada law.

## H.     4617(j)(3) does not Expressly Preempt Nevada Law

If a law's "plain wording" does not reveal that Congress had a "clear and manifest"

---

[14] *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981) and *Beal Bank, SSB v. Nassau Cnty.*, 973 F. Supp. 130 (E.D. N.Y. 1997) do not prove that 4617(j)(3) is self-executing. According to Plaintiffs, *Bollow* determined that a reserve bank's discretion "did not affect the federal law's preemptive effect . . . ." Dkt. No. 107, 6:18. In reality, *Bollow* concluded that a **reserve bank lacked discretion**, not that its discretion was incapable of "affect[ing] the federal law's preemptive effect . . . ." *Bollow*, 650 F.2d at 1097-98. *Beal Bank* dealt with whether the FDIC had implicitly consented under 12 U.S.C. § 1825(b)(2); the words "decision" or "decide" do not appear in *Beal Bank*. *Beal Bank*, 973 F. Supp. at 133-34.

[15] Congress's use of the word "the" demonstrates that FHFA's decision is individualized. *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (definite article "the" connotes individualization).

[16] *Halverson* and *Samson* are distinguishable. *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1259-60, 1263 (9th Cir. 1994) involved a county's "legislatively mandated substantive change in the scope" of their flood program by adopting a 25-year flood plan. In *Samson*, a city adopted several ordinances that imposed a moratorium on "shoreline substantial development [permit] applications." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1053-54 (9th Cir. 2012). Neither case implicated "the procedural fairness" of individual determinations.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 25 -

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    preemptive intent, then courts refuse to preempt state law. *Sprietsma v. Mercury Marine*, 537 U.S.

2    51, 62 (2002). Here, the "plain wording" of 4617(j)(3) is "[n]o property of the Agency shall be

3    subject to . . . foreclosure, or sale without the consent of the Agency . . . ." These words reveal

4    Congress's purpose in enacting 4617(j)(3) and describe how 4617(j)(3) functions. Congress's

5    **purpose** was to authorize a government actor (FHFA) to make individualized decisions regarding

6    consent. Plaintiffs concede that 4617(j)(3) gives FHFA "authority to decide whether to consent to

7    an extinguishment . . . ." Dkt. No. 41, 2:22-24. FHFA's decision is at the heart of how 4617(j)(3)

8    functions. The law **functions** as follows: If FHFA decides not to consent to extinguishment, then

9    that decision nullifies state-recognized property interests; FHFA's decision causes *deprivation*, not

10   "preemption." 4617(j)(3)'s purpose and function establish that Congress did not have a "clear and

11   manifest" intent for 4617(j)(3) to "preempt" Nevada law. Rather, Congress intended 4617(j)(3) to

12   be a provision that authorizes FHFA to make individualized decisions (4617(j)(3)'s **purpose**) that

13   nullify state-recognized property interests (how 4617(j)(3) **functions**). This is confirmed by

14   comparing 4617(j)(3)'s purpose and function with two self-executing laws, both of which surround

15   and hence comprise 4617(j)(3)'s statutory context—4617(j)(2) and 4617(j)(4).

16        Pursuant to 4617(j)(2), "[t]he Agency . . . shall be exempt from all taxation . . . ." As for

17   4617(j)(4), "[t]he Agency shall not be liable for . . . penalties or fines . . . ." Both 4617(j)(2) and

18   4617(j)(4) **function** on their own; they are self-executing. No government-actor-decision occurs

19   within these subsections. Put differently, the way in which 4617(j)(2) and 4617(j)(4) function does

20   not depend on a government actor's individualized decision. Contrastingly, the way in which

21   4617(j)(3) functions does depend on a government actor's individualized decision. Ultimately, the

22   difference between how 4617(j)(3) functions and how 4617(j)(2) and 4617(j)(4) function

23   establishes that Congress did not have a "clear and manifest" intent for 4617(j)(3) to "preempt"

24   Nevada law. *See generally Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 340

25   (1994) (previous subsections help construe subsequent subsection).

26        Plaintiffs disagree, insisting 4617(j)(3) expressly preempts Nevada law. They attribute

27   preemption to 4617(j)(3)'s **initial phrase** "[n]o property of the Agency shall be subject to . . .

28   foreclosure . . . ." Assuming *arguendo* that 4617(j)(3)'s initial phrase is preemptive, 4617(j)(3)'s

**subsequent phrase** ("without the consent of the Agency") would, at a minimum, limit the "preemptive" scope of 4617(j)(3)'s initial phrase because any decision concerning consent must be "appropriate." 4617(b)(2)(D)(ii); *Mid-Con Freight Sys., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 440, 447-49 (2005) (subsequent phrase limited scope of preceding phrase). Therefore, under Plaintiffs' distorted version of "preemption," if FHFA's decision is not "appropriate," then there is no so-called "preemption"; FHFA has not satisfied a predicate to preemption.[17] Here, FHFA's decision was not "appropriate" because it violated due process, meaning that under Plaintiffs' flawed reading of 4617(j)(3), "preemption" cannot occur because FHFA's decision was not "appropriate." Ultimately, a preemptive intent is at odds with 4617(j)(3)'s "plain wording."

## I.      Obstacle Preemption is Inapplicable

Implied conflict preemption occurs when a state law is "'an obstacle to the . . . purposes and objectives of Congress.'" *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 61 (1941)). Here, Plaintiffs incorrectly believe that NRS 116 "stands as an obstacle" to FHFA's power to "preserve and conserve" Fannie's alleged assets, a power that supposedly gives FHFA "exclusive authority to decide whether to consent to an extinguishment . . . ." Dkt. No. 41, 2:22-24. Because Plaintiffs connect FHFA's decision regarding consent with FHFA's 4617(b)(2)(D)(ii) power to "preserve and conserve," Congress's intent about the limits of this power dictates 4617(j)(3)'s "preemptive" meaning and scope. As will now be explained, Congress intended to and did impose limits on FHFA's power to "preserve and conserve." If these limits are exceeded, then so-called "preemption" cannot occur. For starters, the Ninth Circuit determined that FHFA's conservatorship powers "[a]re not limitless." *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 994 (9th Cir. 2013). FHFA must follow the Constitution and 4617(b)(2)(D)(ii)'s mandate that FHFA's decision must be "appropriate." Violations of due process prevent FHFA's decision from being an "appropriate" "preemption" of Nevada law.

The relationship between 4617(j)(1) and 4617(b)(2)(J)(ii) reveals an additional statutory

---

[17] This analysis is consistent with cases where the Supreme Court refused to preempt state law because a government actor's decision did not satisfy a predicate to preemption. *Spriestma*, 537 U.S. at 63-64; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 289 (1995).

- 27 -

KIM GILBERT EBRON

7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

limit on FHFA's power to "preserve and conserve." Pursuant to 4617(j)(1), "[t]he provisions of this subsection [4617(j)] shall apply with respect to the Agency in any case in which the Agency is **acting as** a conservator . . . ." The scope of the phrase "acting as" is limited by 4617(b)(2)(J)(ii), which provides that FHFA "may, as conservator . . . take any action **authorized** by this section [4617] . . . ." As a result, Congress limited FHFA to "authorized" action. Thus, FHFA's decision to "preserve and conserve"—even when that decision is mischaracterized as being one of "preemption"—must be "authorized." Here, FHFA's decision was not "authorized" because it violated due process; Congress cannot authorize FHFA to act unconstitutionally. Consequently, FHFA's decision, and any so-called "preemption" of Nevada law, are "*un*authorized."

Another statutory limit on FHFA's power to "preserve and conserve" is the balance that Congress struck between state and federal law within HERA. Several HERA provisions incorporate or rely on state law, illustrating Congress's intent to perpetuate rather than "preempt" state law. Topics include: fraudulent transfer, 4617(b)(15), contracts, 4617(d), torts, 4617(b)(13)(B), standard of care for officer liability, 4617(g)(2), bona-fide purchaser defense, 4617(b)(15)(C), and existing private rights of action, 4638. As such, characterizing FHFA's decision as "preempting" Nevada law will upset this balance. *Bond v. United States*, 572 U.S. ___, 134 S.Ct. 2077, 2088 (2014) (Congress legislates against background principles including presumption against preemption). Contrastingly, recognizing that FHFA's decision not to consent nullifies state-recognized property interests will maintain that balance because it will necessitate that such nullification must comport with due process.

History also limits FHFA's power to "preserve and conserve." Particularly, courts consider how government actors have approached a federal law in the past; legal positions taken in appellate briefs, for instance, are reviewed. *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. ___, 131 S.Ct. 1968, 1986 (2011). Here, FHFA's briefing in the Ninth Circuit *Sonoma* case demonstrates Nevada law is not an "obstacle to . . . the full purposes and objectives of Congress.'" *Mortier*, 501 U.S. at 605 (quoting *Hines*, 312 U.S. at 61)). In *Sonoma*, FHFA instructed Fannie to refrain from buying mortgages that were subjected to property-assessed clean energy ("PACE") liens. *Sonoma*, 710 F.3d at 992. The Ninth Circuit noted PACE liens were "superior" to Fannie mortgages and

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1 "[s]peaking generally, foreclosure of a higher-priority—senior—lien on property (*e.g.*, a PACE

2 lien) terminates" Fannie's liens. *Id.* at 990. And this is precisely what FHFA contended in its briefs,

3 "in the event of a foreclosure, the PACE lender will be paid first from the proceeds of the

4 foreclosure sale, and [Fannie] will, in all likelihood, be the party that suffers the loss." Ex. L, 6

5 (internal document pagination). This *historical* understanding of extinguishment disproves

6 Plaintiffs' *present* arguments that 4617(j)(3) "preempts" Nevada law, thereby serving as an

7 historical limit on FHFA's power to "preserve and conserve."

8       Finally, the Ninth Circuit determined that FIRREA does not preempt state contract law, a

9 conclusion that should apply to HERA. *Bank of Manhattan, N.A. v. FDIC*, 778 F.3d 1133, 1136

10 (9th Cir. 2015). Here, Association's CC&Rs is a contract. Association's sale to SFR occurred, in

11 part, via its CC&Rs. Dkt. No. 70-1, Ex. 3, 1:¶2. As a result, Nevada contract law informs SFR's

12 purchase of the house. This means that SFR's interests are not obstacles to Congress's "purposes

13 and objectives." *Mortier*, 501 U.S. at 605. Obstacle preemption is inapplicable.

### VII.    CONCLUSION

15       For the foregoing reasons, this Court should deny Plaintiffs' Motion for Summary

16 Judgment. **First**, Plaintiffs' evidence is not "'so powerful that no reasonable jury would be free to

17 disbelieve it.'" *Shakur*, 514 F.3d at 890. **Second**, it is undisputed that the mortgage was "held in

18 trust." **Third**, Plaintiffs ask this Court to transform due process deprivations into preemption.

19       Notably, Mr. Curcio's deposition testimony and Plaintiffs' supplemental interrogatory

20 responses are evidence that proves that the mortgage was "held in trust." Dkt. No. 108-1, 44:15-

21 16; Dkt. No. 108-2, 2:3-6; Dkt. No. 108-3, 2:12-15. Such evidence negates the most essential

22 element of Plaintiffs' quiet title claim: The allegation that FHFA supposedly "succeeded to" the

23 mortgage. This is so because if the mortgage was "held in trust," then FHFA did not—and

24 cannot—"succeed to" the mortgage. Instead, Congress intended and commanded FHFA to "hold"

25 the mortgage "in trust." ***Holding is an exception to succession***. This Court should deny Plaintiffs'

26 Motion for Summary Judgment and instead grant SFR's Motion for Summary Judgment.

### VIII.    REQUEST FOR JUDICIAL NOTICE

28       Pursuant to FED. R. EVID. 201, SFR Investments Pool 1, LLC ("SFR") respectfully requests

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

this Court to take judicial notice of **EXHIBITS B**, **C**, **D**, **E**, **F**, **G**, **I**, **J**, **K**, and **L**. **EXHIBIT B** is the publicly recorded March 10, 2014, Notice of Default and Election to Sell Under Deed of Trust. **EXHIBITS C**, **D**, **E**, **F**, **G**, **I**, **J**, **K**, and **L** were filed in federal or state courts. *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (taking judicial notice of matters of public record).

RESPECTFULLY SUBMITTED this ___4th___ day of April, 2016.

**KIM GILBERT EBRON**

*/s/Jesse N. Panoff*_____
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA CLINE EBRON, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
*Attorneys for SFR Investments Pool 1, LLC*

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of April, 2016, pursuant to FRCP 5, I served via the CM/ECF filing system the foregoing Response to the following parties:

Asim Varma, Esq.
Asim_Varma@aporter.com
Howard Cayne, Esq.
Howard.Cayne@aporter.com
Michael A.F. Johnson, Esq.
michael.johnson@aporter.com
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
*Attorneys for Federal Housing Finance Agency*

Leslie Bryan Hart, Esq.
lhart@fclaw.com
John D. Tennert, Esq.
jtennert@fclaw.com
FENNEMORE CRAIG, P.C.
300 East Second Street, Suite 1510
Reno, Nevada 89501
*Attorneys for Federal Housing Finance Agency*

Dana Jonathon Nitz, Esq.
dnitz@wrightlegal.net
Chelsea A. Crowton, Esq.
ccrowton@wrightlegal.net
WRIGHT, FINLAY & ZAK, LLP
5532 S. Ft. Apache Rd., Suite 110
Las Vegas, Nevada 89148
*Attorneys for Federal National Mortgage Association*

Neil B. Durrant, Esq.
ndurrant@weildrage.com
WEIL & DRAGE, APC
2500 Anthem Village Drive
Henderson, NV 89052
*Attorney for Sun City Aliante Community Association*

*/s/Andrew M. David*_____
An Employee of KIM GILBERT EBRON

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301